FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

**IN THE UNITED STATES BANKRUPCTY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA** MAR 16 PM 12: 03
**ATLANTA DIVISION**

M. REGINA THOMAS
CLERK
Richard Smith

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| MARK A. RICHARDS, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | **DOCKET NO: <u>11-51844-WLH</u>** |
| MARK A. RICHARDS, | * | |
| | * | Hon. Wendy L. Hagenau, Judge |
| Debtor / Movant, | * | |
| | * | |
| vs. | * | **MEMORANDUM OF LAW AND** |
| | * | **AFFIDAVITS FILED IN SUPPORT** |
| BANK OF AMERICA, N.A., | * | |
| CARRINGTON MORTGAGE | * | |
| SERVICES, LLC., and | * | |
| BANKUNITED, N.A., | * | |
| | * | |
| Respondents. | * | |

---

## <u>MOTION FOR CONTEMPT, RETURN OF DEBTOR'S FUNDS AND</u>
## <u>TO SET ASIDE CERTAIN REAL ESTATE TRANSACTIONS</u>

**COMES NOW, MARK A. RICHARDS,** the Debtor and Movant and hereby

files his motion for contempt under **11 U.S.C. § 105(a)**; the return of debtor's funds

paid and an Order setting aside certain real estate transactions, due to Respondents'

violations of the discharge injunction under **11 U.S.C. § 524(a)** by showing:

### I. GROUNDS FOR GRANTING MOTION FOR CONTEMPT

1. The Respondents has violated and or, is still violating this Court's discharge

permanent injunction pursuant to **11 U.S.C. § 524(b)**, by enforcing the terms of a

debt that has been properly discharged by this Court on July 19th, 2011. See, **Appx.**

**1, Exh. "A"**. Therefore, the Respondents are in contempt of this Court.

2. Secondly, the Respondents has violated the discharge permanent injunction under **11 U.S.C. § 524(b)**, by coercing and forcing the Debtor and Movant, to enter into loans modification agreements and forcing the Debtor to convey a Security Deed over to HUD through the threats of foreclosure, fraud, willful misconduct and or misrepresentations to the Debtor and Movant. This was done by the Respondents in order to reaffirm the discharged debt and by not complying with mandatory conditions set forth under **11 U.S.C. § 524(b)**. See, **Appx. 2, 3, Exh. "B" & "C"**.

3. That because the Security Deed and the loan modification agreement did not comply with reaffirmation's statute under Federal law, the security deed and loan agreements are void, which are made in clear violation of the discharged injunction. See, **11 U.S.C. § 524(b)**. See, **Appx. 2, 3 & 4, Exh. "B" "C" & "D"**.

4. Finally, the Movant show, that the loan modification agreements and the Security Deed are also void, as they were prepared by non-attorneys, not authorized to practice law in the State of Georgia in violation of **O.C.G.A. § 15-19-51(a)**.

5. Therefore, modification agreements and the Security Deed are void as a matter of Georgia law. The Debtor and Movant hereby move this Court to set aside the modification agreements and the Security Deed as void contracts pursuant to **O.C.G.A. § 13-8-1** and **O.C.G.A. § 13-8-1(1)**. See, **Appx. 2, 3, Exh. "B" & "C"**.

6. The Debtor and Movant further show the Court that the Respondents, BOA and Carrington lead Movant to believe, that the only way he could keep his home, was to pay and reaffirm the debt through a loan modification agreement and to convey a Security Deed over to HUD. See, **Appx. 2, 3 & 4, Exh. "B" "C" & "D"**.

7. Finally, BOA could have entered into a new mortgage loan based upon the current market value or it could have allowed Debtor time to take out a second mortgage in order to pay off any lien upon property, after the deduction of the Debtor's prior payments to BOA and Carrington after Debtor's bankruptcy's discharged.

8. Moreover, BOA and Carrington knew or should have known that they could not enter into the loan modification agreements with the Debtor and or to require Movant to convey a Security Deed over to HUD, when in fact, no consideration was paid to HUD in violation of the bankruptcy's injunction. See, **11 U.S.C. § 524(c)(d).**

9. The Respondents, BOA and Carrington both committed fraud and made false representations to Debtor, stating that Debtor had to reaffirm the discharged debt by entering into: (1) loan modification agreements; (2) Debtor had to convey a Security Deed over to HUD without consideration, based upon the prior discharged debt; and (3) Respondent, BOA required Debtor to make such agreements in order to pay off the discharged debt in spite of the bankruptcy's discharge injunction.

## II. RESPONDENTS' ACTS VIOLATES THE DISCHARGE INJUNCTION

1. First, the Respondents' acts clearly violate the discharge injunction pursuant to **11 U.S.C. § 524(a)(2)**, because Respondents' actions are a continuation for the collection of Debtor's discharged debts, though the employment of a process known as loan modification. The Respondents, BOA and Carrington violated the discharged injunction, by collecting and modifying the prior discharged debt, by coercing and pressuring the Debtor to sign the loan modification agreements and the Security Deed over to HUD through acts of threats of foreclosure and eviction.

2. Secondly, the Respondent, BOA did offset the debt by requiring the Debtor to sign a Security Deed over to HUD as personal liability to the Debtor. The Security Deed is therefore void, because no actual consideration was made to HUD. Moreover, the Security Deed is void because, cannot be legally used to offset Debtor's discharged debt as a matter of Federal law. See, **11 U.S.C. § 524(a)(2)**. See, **Appx. 2, Exh. "B"**.

3. Third, the Respondents are in clear violation of the discharge injunction under **11 U.S.C. § 524(a)**, because the loan modification agreements and the Security Deed as given to HUD, did not comply with the requirements of **11 U.S.C. § 524(c)**.

4. Finally, the loan modification agreements and the Security Deed given to HUD was: (1) not made before the granting of the discharge under section **727, 1141, 1192, 1228**, or **1328** of the Bankruptcy's Code; (2) the debtor never received any disclosures as described in subsection **(k)** of the Bankruptcy's code, before the time at which the Debtor signed the loan modification agreements and the Security Deed over to Hud; and (3) such loan modifications agreements and Security Deed given to HUD was never been filed with the Court accompanied by the appropriate declaration or an affidavit of Debtor's attorney who represented the Debtor and Movant during the course of any negotiating of agreement. See, **11 U.S.C. § 524(c)**.

### III. DEBTOR AND MOVANT'S REQUEST FOR RELIEF

1. First, the Debtor as the Movant, hereby request that this Court enter an order, declaring and holding the Respondents in contempt of Court pursuant to its' contempt powers under **11 U.S.C. § 105(a),** for their violations of the discharge injunction under **11 U.S.C. § 524(a)**. See, _In re Hardy_, 97 F.3d 1384 (11th Cir. 1996).

2. Secondly, the Debtor as the Movant, hereby request that this Court enter an order, declaring that the loan modification agreements signed by the Debtor, as the Movant, filed with the Superior Court of Rockdale County, Georgia recorded in Deed Book, 5729, page 188; Deed Book 6210, page 244 and the Security Deed given to HUD recorded in Deed Book, 5358, page 86 are null and void, because they violate Federal law under **11 U.S.C. § 524(c)(1)(2)(3)**. See, **Appx. 2, 3 & 4, Exh. "B" "C" & "D"**.

3. Third, the Debtor and Movant, hereby request that this Court enter an order requiring the Respondents to refund and return all void mortgage payments that was made by the Debtor and Movant, from the time the automatic stay was in place when the Debtor filed this bankruptcy's case according to **11 U.S.C. § 362(a)(6)** and while the discharged injunction is still in effect under **11 U.S.C. § 524(a).**

4. Forth, the Debtor and Movant, hereby request that this Court enter an order, declaring that the loan modification agreements signed by the Debtor filed with the Superior Court of Rockdale County, recorded in Deed Book, 5729, page 188; Deed Book 6210, page 244 and Security Deed given to HUD recorded in Deed Book, 5358, page 86 are all void, because the deeds was prepared by non-attorneys, not license to practice law in Georgia, in clear violation of **O.C.G.A. § 15-19-51(a)**.

5. The Debtor and Movant, hereby request that the Debtor be awarded punitive damages three times the amount of all payments sent to the Respondents for violation of the bankruptcy's discharge injunction under **11 U.S.C. § 524(a)** and or for Respondents' frauds, misrepresentations, willful misconduct and bad faith in accordance with Georgia law pursuant to **O.C.G.A. § 51-12-5.1(b)(c).**

## IV. COURT'S INHERENT POWER TO SANCTION

1. Each Respondent named in this motion is subject to sanction by the Court due to their violation of the discharged injunction by collecting and attempting to collect on a discharged debt in clear violation of **11 U.S.C. § 524(a).**

2. Finally, notwithstanding this Bankruptcy's Court statutory power to hold Respondents in contempt, this Court also have the inherent power to police those appearing before them. See, *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). A court's inherent power is: *"governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."* Id. at 43, 111 S.Ct. at 2132 (citing *Link* v. *Wabash R.R.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). This power *"must be exercised with restraint and discretion"* and used *"to fashion an appropriate sanction for conduct which abuses the judicial process."* Id. at 44-45. See, **Appx. 2, 3 & 4, Exh. "B" "C" & "D".**

3. A court may exercise this power *"to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."* See, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, ___, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013). See, **Appx. 2, 3, Exh. "B" & "C".**

4. The dual purpose of this power is to vindicate judicial authority of this Court, without limiting this Court's contempt power to sanction and to make the prevailing party whole. See *Chambers*, 501 U.S. at 46, 111 S.Ct. at 2133. The key to unlocking a Court's inherent power is a finding of bad faith. See *Sciarretta*, 778 F.3d at 1212.

## V. JURISDICTION OVER MOTION

1. This Court has subject-matter jurisdiction to hear Debtor and Movant's motion for contempt pursuant to **11 U.S.C. § 105(a)** and based upon this Court's inherent powers. See, *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). A court's inherent power is: *"governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."* Id. at 43, 111 S.Ct. at 2132 (citing *Link* v. *Wabash R.R.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). The Movant avers that this Court also have personal jurisdiction over the Respondents in this case with respect to Movant's motion as each Respondent having been personally served with a copy of this motion by U.S. Certified Mail pursuant to the law of the State of Georgia under **O.C.G.A. § 14-2-1510(b)** as incorporated to the **Federal Rules of Civil Procedure, Rule 4**.

2. Section 524(a)(2) of the bankruptcy code provides that a discharge of debt in a bankruptcy proceeding *"operates as an injunction against the commencement or continuation of ... an act ... to collect ... any such [discharged] debt."* See, **11 U.S.C. § 524(a)(2).** This injunction is enforced through section **105**, whereby this bankruptcy Court has jurisdiction and *"may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."* See, **11 U.S.C. § 105(a).**

3. Finally, Section 105 *"grants statutory contempt powers in the bankruptcy context."* See, *In re Hardy*, 97 F.3d 1384, 1389-90 (11th Cir. 1996). Therefore, the Movant conclude that this Court has jurisdiction over the subject-matter of this case.

## VI. CONCLUSION

1. Based upon the foregoing reasons stated in this motion, the evidence and Movant's affidavits filed in support hereof, the Debtor is entitled to his motion.

2. Movant also concludes that this Court must set aside the real estate transactions, as they violate the discharge injunction under **11 U.S.C. § 524(a)(b)(c)** and Georgia law pursuant to **O.C.G.A. § 15-19-51(a)** due to the unauthorized practice of law.  Moreover, because the automatic stay was in place at the time Debtor filed this bankruptcy's case according to **11 U.S.C. § 362(a)(6)** and due to the discharged injunction in effect under **11 U.S.C. § 524(a),** all funds paid by Debtor to the Respondents must be returned.  The Respondent's actions are in clear violation of the discharge injunction pursuant to **11 U.S.C. § 524(a)(b)(c).**  Therefore, the Movant is entitled to such relief based upon the evidence attached to this motion and affidavits.

**WHEREFORE,** the Debtor and Movant move this Court to GRANT his Motion for Contempt for: (1) setting aside the loan modification agreements; (2) the Security Deed given to HUD; (3) ordering the return of mortgage payments; and (4) award any damages sustained by the Debtor as a result of Respondents' violation of the automatic stay and discharge injunction pursuant to **11 U.S.C. § 524(a)(b)(c).**

**Respectfully submitted this** ___16th___ **, day of March 2020.**

_Mark A. Richards_
**Mark A. Richards, PRO SE**
**Attorney for the Debtor / Movant**

**1861 Windsor Creek Drive, S.W.**
**Conyers, Georgia 30094**
**(770) 688-4247 (Phone)**
**Email: mcrichards88@gmail.com**

## CERTIFICATE OF SERVICE

**COMES NOW, MARK A. RICHARDS,** the Debtor and Movant in the above-styled action and certify that I have served the following creditors and its' counsels of record in this action with his MOTION FOR CONTEMPT, RETURN OF DEBTOR'S FUNDS AND TO SET ASIDE REAL ESTATE TRANSACTIONS by U.S. Certified Mail pursuant to **O.C.G.A. § 14-2-1510(b)** upon the following to wit:

Bank of America, N.A.
P.O. Box 31785
Tampa, Florida 33631-3785

Carrington Mortgage Services, LLC.
P.O. Box 5001
Westfield, Indiana 46074

Mr. S. Lindsay Carrington, Esq.
c/o BankUnited, N.A., Creditor
Bell Carrington Price & Gregg, LLC.
339 Heyward Street, 2nd Floor
Columbia, South Carolina 29201

**Respectfully submitted this** ___16th___ **, day of March 2020.**

Mark A. Richards, ~~PRO SE~~
**Attorney for the Debtor / Movant**

**1861 Windsor Creek Drive, S.W.**
**Conyers, Georgia 30094**
**(770) 688-4247 (Phone)**
**Email: mcrichards88@gmail.com**

## IN THE UNITED STATES BANKRUPCTY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| MARK A. RICHARDS, | * | |
| | * | |
|       Debtor. | * | |
| | * | |
| _____ | * | **DOCKET NO:** <u>11-51844-WLH</u> |
| | * | |
| MARK A. RICHARDS, | * | Hon. Wendy L. Hagenau, Judge |
| | * | |
|       Debtor / Movant, | * | |
| | * | |
| vs. | * | MEMORANDUM OF LAW AND |
| | * | AFFIDAVITS FILED IN SUPPORT |
| BANK OF AMERICA, N.A., | * | |
| CARRINGTON MORTGAGE | * | |
| SERVICES, LLC., and | * | |
| BANKUNITED, N.A., | * | |
| | * | |
|       Respondents. | * | |

---

## <u>MEMORAMDUM OF LAW IN SUPPORT OF MOTION FOR CONTEMPT</u>

COMES NOW, **MARK A. RICHARDS,** the Debtor and Movant and hereby

files his motion for contempt under **11 U.S.C. § 105(a)**; the return of debtor's funds

paid and an Order setting aside certain real estate transactions, due to Respondents'

violations of the discharge injunction under **11 U.S.C. § 524(a)** by showing:

### I. FACTUAL BACKGROUND

1. On January 24th, 2011, Mr. Mark A. Richards, as the debtor, voluntary

filed a petition (Chapter 7). Mr. Richards was represented by Ronica R. Scales of

Robert J. Semrad & Associates on behalf of Mark A. Richards, Debtor. See, _In re_

_Richard_, Debtor Civil Action No. 11-51844-WLH (N.D. Ga. 2011).

2. On March 1st, 2011, the Chapter 7 Trustee in the above-styled case and reported that the Trustee was investigating the possibility of the recovery of assets in this case for the benefit of the creditors.  No party in interest, in Mr. Richards' case filed a request for an order of dismissal pursuant to **11 U.S.C. § 521(i)(2).**

3.  During the automatic stay, the Respondent, Bank of America, hereinafter referred to in this proceeding as "BOA" continued to collect payments from the Debtor and Movant in clear violation of the automatic stay. See, **11 U.S.C. § 362(a).**

4. Respondent, BOA was given an opportunity to allow the Debtor to reaffirm the debt during Debtor's bankruptcy's proceedings and prior to any discharged, but BOA failed to pursuit an agreement with the Debtor.  See, **ECF Docket # 10.**

5. On July 19th, 2011, the Honorable Wendy L. Hagenau, Bankruptcy's Judge for the United States Bankruptcy's Court for the Northern District of Georgia entered a final order, discharge injunction pursuant to **11 U.S.C. § 524**.  See, *In re Richard*, Debtor Civil Action No. 11-51844-WLH (N.D. Ga. 2011).  See, **ECF Docket # 17**.

6. Respondent, BOA was given notice and a copy of the discharged order as with all parties who appeared in this case. See, **ECF Docket # 18.**

6. From On January 24th, 2011 until June 22nd, 2011, BOA continued to pursue, harass, intimidate and threaten the Debtor with foreclosure by collect illegal mortgage payments from the Debtor in clear violation of the automatic stay pursuant to **11 U.S.C. § 362(a)** and violation of the discharge injunction according to **11 U.S.C. § 524(b)**. See, Debtor's **Appx. 3-2, Exh. "B" & "C"**.  Also see **Appx. 7, Exh. "G"**.

7. After Debtor's bankruptcy's discharge, Bank of America, through its' officers, agents, servants, employees and attorneys, began harassing and coercing me to repay the discharged debt. BOA made threats of foreclosure and eviction to evict me and my family from our home. As a result of these threats, Debtor was under extreme stress and duress when Bank of America, herein after referred to as "BOA", began demanding repayments concerning my discharged debt in bankruptcy.

8. Moreover, BOA kept increasing the debt and the mortgage payments, even though the debt was discharged. Debtor repeatedly told BOA's officers, agents and employees over the phone, that my debt had been discharged in bankruptcy.

9. BOA told Debtor, despite my discharge, I still had to repay the discharged debt, or they would foreclose on Debtor and his family would be immediately evicted.

10. BOA's officers, agents and employees, informed Debtor, that the only way he could stay in his home, was for him to sign a loan modification agreement and convey a Security Deed over to HUD, without any actual consideration given by HUD.

11. Debtor did not understand why he had to sign loan modification agreement to modify a debt that has been discharged in bankruptcy. Debtor believes this was fraud. This fraud is shown by the Security Deed given to HUD. Debtor received no actual consideration from HUD in exchanged for the Security Deed and BOA appears to have assigned a portion of my debt over to HUD without my knowledge.

12. Debtor communicated this fact with BOA and Carrington Mortgage. Neither of their representatives was able to explain to Debtor, why Debtor had to reaffirm a debt that has been discharged in bankruptcy. See, **Appx. 1, Exh. "A".**

13. The Debtor also explain to BOA, that under Federal law, his debt cannot be reaffirmed. BOA's employees had no idea what Debtor was talking about.

14. BOA made it clear, that if Debtor did not sign the loan modification agreements, the Security Deed for HUD and agree to make the monthly payments every month, Debtor and his family would be immediately foreclosed and evicted.

15. BOA prepared all documents pertaining to the loan modification and the Security Deed. That process became overwhelming, as Debtor was not clear as to what was really occurring. BOA kept changing representatives, who appeared to not know what the prior representative claim to have done. To no avail, Debtor was coerced and forced into signing the loan modification agreement, the Security Deed to HUD and to make monthly mortgage payments concerning the discharged debt under duress and the fear of me being foreclosed upon and evicted from my home.

16. As stated above, on June 22nd, 2017, Respondent, BOA transferred its' servicing rights concerning Debtor's prior mortgage loan over to over to Carrington Mortgage Services, LLC. on June 11th, 2017. See, **Appx. 5, Exh. "E"**.

17. Upon Carrington receiving such rights, Carrington took the same position as BOA did and began harassing and coercing Debtor to repay the discharged debt.

18. Carrington's officers, agents, employees, harassed me through the telephones calls as collections practices and by using the United States Mails with collection letters. Again, Debtor told Carrington that his debts were discharged in bankruptcy. Carrington informed Debtor he still had to repay the debt, or they would foreclose on him and have the Sheriff Department to evict him from his home.

19. Debtor had no choice at this point, but to comply with Carrington's request and keep paying on a discharged debt.  See, **Appx. 8, 9, Exh. "H" & "I".**

20.  Carrington coerced, forced and pressured the Debtor to sign a new loan modification agreement prepared by non-attorneys against his will and under duress.

21. On January 12th, 2018, Ms. Monica Vela, a non-attorney who was acting on behalf of Carrington Mortgage Services, prepared a Loan Modification Agreement for me to sign.  At the time Debtor signed the agreement, Debtor was pressured by Carrington's other officers, agents, employees and attorneys.

22. The Debtor did not know at the time that Ms. Vela was not a licensed attorney authorized to prepare deed, nor authorized to practice law in this State.

23. Had Debtor known that Ms. Vela was not an attorney, who prepared the Loan Modification Agreement and Security Deed, he would have never signed them.

24. Debtor had no prior notice, that the loan documents and security deed was prepared by a non-lawyer, not unauthorized practice of law in Georgia.

25. The original Security Deed was recorded on July 8th, 2007 with the Clerk of Superior Court of Rockdale County in Deed Book 4569, page 321 for the total of $289,164.00.   The Court discharged this debt on July 19th, 2011.   The loan modification agreement attempts to reaffirm this debt in the amount of $176,410.11.

26.  The loan modification agreement added to the discharged debt, an additional $16,289.18 in new money, which brought the total discharged debt to $197,699.29.  This new money is based upon my pass mortgage payments, interest and late fees on my account.  The new money is also the same discharged debt.

27. BOA and Carrington Mortgage Services, both showed a clear intent to get me to repay my prior mortgage loan, which has been discharged. They violated **11 U.S.C. § 524** of the bankruptcy's injunction. See, **Appx. 1, 2, Exh. "B" & "C"**.

28. Debtor never voluntary agreed to repay the discharged debt with BOA and or Carrington Mortgage Services LLC. Debtor repeatedly told BOA and Carrington's officers, agents, servants, employees and attorneys, that my debt was discharged.

29. Moreover, Debtor told Respondents, that he paid mortgage insurance and or the FHA insurance premiums. The Debtor's mortgage insurance could have paid for any pass due mortgage payments to the lender upon his insolvency and bankruptcy's discharge to cover any liens and the Security Deed against the property.

30. Respondents, BOA and Carrington Mortgage, failed to disclose, any mortgage insurance payments actually paid by either, FHA's insurance or by any insurance carrier, as a result of Debtor's insolvency and bankruptcy. Such mortgage insurance would have been paid due to my default in order to protect the lender and payoff and satisfy any lien upon Debtor's property. See, **Appx. 10, Exh. "J"**.

31. On December 2nd, 2019, Debtor sent, BOA and Carrington Mortgage Services a Notice of Cease and Desist Letters. Debtor demanded that Respondents stop sending me collection letters. BOA and Carrington both committed fraud, willful misconduct, bad faith and gross negligence. See, **Appx. 12, 13, Exh. "L" & "M"**.

32. Debtor demanded the return of all unlawful mortgage payments received concerning the discharged debt, because those collections violates the discharge injunction as a matter of Federal law. See, **Appx. 12, 13, Exh. "L" & "M"**.

33. Based upon a payment history sent by BOA on August 21st, 2019, BOA illegally collected and received a total of **$100,569.83** in improper and illegal mortgage payments for me in clear violation of the Bankruptcy's discharge injunction according to **11 U.S.C. § 524**. See, **Appx. 12, 13, Exh. "L" & "M"**.

34. Based upon a payment history sent by Carrington Mortgage on September 27th, 2019, Carrington illegally collected and received a total of **$21,345.00** in improper and illegal mortgage payments for me in clear violation of the Bankruptcy's discharge injunction according to **11 U.S.C. § 524**. See, **Appx. 6, Exh. "F"**.

35. Each payment made by Debtor, was made under duress and under the threats of foreclosure and eviction from Debtor's home. BOA and Carrington both coerced and forced Debtor to repay the discharged debt against his will. Debtor believes that Respondents received mortgage insurance payments. The threats of foreclosure and eviction from Debtor home, terrified him and his family.

36. Debtor never voluntary agreed to repay and or reaffirm a debt that has been properly discharged by this Court, that would violate the discharge injunction.

37. Debtor believe that the Respondents has willfully and intentionally violated the discharged injunction and is in contempt of this Court. Debtor asks that the loan modification agreements and the Security Deed given to HUD be set aside.

38. Debtor is entitled to damages as a direct loss of my personal property and loss of equity in my home. See, **Appx. 12, 13, Exh. "L" & "M"**.

39. The Respondents' actions in collecting a discharged debt in bankruptcy, has personally caused Debtor and his family harm, such as embarrassment;

humiliation and mental anguish.   Moreover, Debtor have paid out a total of **$121,914.83** in illegal mortgage payments in violation of the discharge injunction.

40. Such payments should have been cover by my mortgage insurance or paid in full by investor's insurance as a Mortgage Backed Security or "MBS" insurance.

## II. GROUNDS FOR GRANTING MOTION FOR CONTEMPT

1. The Respondents has violated and or, is still violating this Court's discharge permanent injunction pursuant to **11 U.S.C. § 524(b)**, by enforcing the terms of a debt that has been properly discharged by this Court on July 19th, 2011. See, **Appx. 1, Exh. "A"**. Therefore, the Respondents are in contempt of this Court.

2. Secondly, the Respondents has violated the discharge permanent injunction under **11 U.S.C. § 524(b)**, by coercing and forcing the Debtor and Movant, to enter into loans modification agreements and forcing the Debtor to convey a Security Deed over to HUD through the threats of foreclosure, fraud, willful misconduct and or misrepresentations to the Debtor and Movant. This was done by the Respondents in order to reaffirm the discharged debt and by not complying with mandatory conditions set forth under **11 U.S.C. § 524(b)**. See, **Appx. 2, 3, Exh. "B" & "C"**.

3. That because the Security Deed and the loan modification agreement did not comply with reaffirmation's statute under Federal law, the security deed and loan agreements are void, which are made in clear violation of the discharged injunction. See, **11 U.S.C. § 524(b)**.   See, **Appx. 2, 3 & 4, Exh. "B" "C" & "D"**.

4. Finally, the Movant show, that the loan modification agreements and the Security Deed are also void, as they were prepared by non-attorneys, not authorized to practice law in the State of Georgia in violation of **O.C.G.A. § 15-19-51(a)**.

5. Therefore, modification agreements and the Security Deed are void as a matter of Georgia law. The Debtor and Movant hereby move this Court to set aside the modification agreements and the Security Deed as void contracts pursuant to **O.C.G.A. § 13-8-1** and **O.C.G.A. § 13-8-1(1)**. See, **Appx. 2, 3, Exh. "B" & "C"**.

6. The Debtor and Movant further show the Court that the Respondents, BOA and Carrington lead Movant to believe, that the only way he could keep his home, was to pay and reaffirm the debt through a loan modification agreement and to convey a Security Deed over to HUD. See, **Appx. 2, 3 & 4, Exh. "B" "C" & "D"**.

7. Finally, BOA could have entered into a new mortgage loan based upon the current market value or it could have allowed Debtor time to take out a second mortgage in order to pay off any lien upon property, after the deduction of the Debtor's prior payments to BOA and Carrington after Debtor's bankruptcy's discharged.

8. Moreover, BOA and Carrington knew or should have known that they could not enter into the loan modification agreements with the Debtor and or to require Movant to convey a Security Deed over to HUD, when in fact, no consideration was paid to HUD in violation of the bankruptcy's injunction. See, **11 U.S.C. § 524(c)(d)**.

9. The Respondents, BOA and Carrington both committed fraud and made false representations to Debtor, stating that Debtor had to reaffirm the discharged debt by entering into: (1) loan modification agreements; (2) Debtor had to convey a

Security Deed over to HUD without consideration, based upon the prior discharged debt; and (3) Respondent, BOA required Debtor to make such agreements in order to pay off the discharged debt in spite of the bankruptcy's discharge injunction.

## III. RESPONDENTS' ACTS VIOLATES THE DISCHARGE INJUNCTION

1. First, the Respondents' acts clearly violate the discharge injunction pursuant to **11 U.S.C. § 524(a)(2)**, because Respondents' actions are a continuation for the collection of Debtor's discharged debts, though the employment of a process known as loan modification. The Respondents, BOA and Carrington violated the discharged injunction, by collecting and modifying the prior discharged debt, by coercing and pressuring the Debtor to sign the loan modification agreements and the Security Deed over to HUD through acts of threats of foreclosure and eviction.

2. Secondly, the Respondent, BOA did offset the debt by requiring the Debtor to sign a Security Deed over to HUD as personal liability to the Debtor. The Security Deed is therefore void, because no actual consideration was made to HUD. Moreover, the Security Deed is void because, cannot be legally used to offset Debtor's discharged debt as a matter of Federal law. See, **11 U.S.C. § 524(a)(2)**. See, **Appx. 2, Exh. "B"**.

3. Third, the Respondents are in clear violation of the discharge injunction under **11 U.S.C. § 524(a)**, because the loan modification agreements and the Security Deed as given to HUD, did not comply with the requirements of **11 U.S.C. § 524(c)**.

4. Finally, the loan modification agreements and the Security Deed given to HUD was: (1) not made before the granting of the discharge under section **727, 1141, 1192, 1228**, or **1328** of the Bankruptcy's Code; (2) the debtor never received any

disclosures as described in subsection **(k)** of the Bankruptcy's code, before the time at which the Debtor signed the loan modification agreements and the Security Deed over to Hud; and (3) such loan modifications agreements and Security Deed given to HUD was never been filed with the Court accompanied by the appropriate declaration or an affidavit of Debtor's attorney who represented the Debtor and Movant during the course of any negotiating of agreement. See, **11 U.S.C. § 524(c).**

## IV. ARGUMENT AND CITATION OF AUTHORITY

1. First, the Debtor as the Movant, hereby request that this Court enter an order, declaring and holding the Respondents in contempt of Court pursuant to its' contempt powers under **11 U.S.C. § 105(a),** for their violations of the discharge injunction under **11 U.S.C. § 524(a)**. See, *In re Hardy*, 97 F.3d 1384 (11th Cir. 1996).

2. Secondly, the Debtor as the Movant, hereby request that this Court enter an order, declaring that the loan modification agreements signed by the Debtor, as the Movant, filed with the Superior Court of Rockdale County, Georgia recorded in Deed Book, 5729, page 188; Deed Book 6210, page 244 and the Security Deed given to HUD recorded in Deed Book, 5358, page 86 are null and void, because they violate Federal law under **11 U.S.C. § 524(c)(1)(2)(3)**. See, **Appx. 2, 3 & 4, Exh. "B" "C" & "D".**

3. Third, the Debtor and Movant, hereby request that this Court enter an order requiring the Respondents to refund and return all void mortgage payments that was made by the Debtor and Movant, from the time the automatic stay was in place when the Debtor filed this bankruptcy's case according to **11 U.S.C. § 362(a)(6)** and while the discharged injunction is still in effect under **11 U.S.C. § 524(a).**

4. Forth, the Debtor and Movant, hereby request that this Court enter an order, declaring that the loan modification agreements signed by the Debtor filed with the Superior Court of Rockdale County, recorded in Deed Book, 5729, page 188; Deed Book 6210, page 244 and Security Deed given to HUD recorded in Deed Book, 5358, page 86 are all void, because the deeds was prepared by non-attorneys, not license to practice law in Georgia, in clear violation of **O.C.G.A. § 15-19-51(a)**.

5. The Debtor and Movant, hereby request that the Debtor be awarded punitive damages three times the amount of all payments sent to the Respondents for violation of the bankruptcy's discharge injunction under **11 U.S.C. § 524(a)** and or for Respondents' frauds, misrepresentations, willful misconduct and bad faith in accordance with Georgia law pursuant to **O.C.G.A. §  51-12-5.1(b)(c)**.

6. Each Respondent named in this motion is subject to sanction by the Court due to their violation of the discharged injunction by collecting and attempting to collect on a discharged debt in clear violation of **11 U.S.C. § 524(a)**.

7. Finally, notwithstanding this Bankruptcy's Court statutory power to hold Respondents in contempt, this Court also have the inherent power to police those appearing before them. See, _Chambers_ v. _NASCO, Inc._, 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). A court's inherent power is: _"governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."_ Id. at 43, 111 S.Ct. at 2132 (citing _Link_ v. _Wabash R.R._, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). This power _"must be exercised with restraint and discretion"_ and

used *"to fashion an appropriate sanction for conduct which abuses the judicial process."* Id. at 44-45. See, **Appx. 2, 3 & 4, Exh. "B" "C" & "D"**.

8. A court may exercise this power *"to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."* See, <u>Marx v. Gen. Revenue Corp.</u>, 568 U.S. 371, ___, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013). See, **Appx. 2, 3, Exh. "B" & "C"**.

9. The dual purpose of this power is to vindicate judicial authority of this Court, without limiting this Court's contempt power to sanction and to make the prevailing party whole. See <u>Chambers</u>, 501 U.S. at 46, 111 S.Ct. at 2133. The key to unlocking a Court's inherent power is a finding of bad faith. See <u>Sciarretta</u>, 778 F.3d at 1212.

10. This Court has subject-matter jurisdiction to hear Debtor and Movant's motion for contempt pursuant to **11 U.S.C. § 105(a)** and based upon this Court's inherent powers. See, <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). A court's inherent power is: *"governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."* Id. at 43, 111 S.Ct. at 2132 (citing <u>Link v. Wabash R.R.</u>, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). The Movant avers that this Court also have personal jurisdiction over the Respondents in this case with respect to Movant's motion as each Respondent having been personally served with a copy of this motion by U.S. Certified Mail pursuant to the law of the State of Georgia under **O.C.G.A. § 14-2-1510(b)** as incorporated to the **Federal Rules of Civil Procedure, Rule 4**.

11. Section 524(a)(2) of the bankruptcy code provides that a discharge of debt in a bankruptcy proceeding *"operates as an injunction against the commencement or continuation of ... an act ... to collect ... any such [discharged] debt."* See, **11 U.S.C. § 524(a)(2).** This injunction is enforced through section **105,** whereby this bankruptcy Court has jurisdiction and *"may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."* See, **11 U.S.C. § 105(a).**

12. Finally, Section 105 *"grants statutory contempt powers in the bankruptcy context."* See, *In re Hardy*, 97 F.3d 1384, 1389-90 (11th Cir. 1996). Therefore, the Movant conclude that this Court has jurisdiction over the subject-matter of this case.

13. The Debtor and Movant ask that the Court award punitive damages as part of his request of sanctions due to the Respondents' willful violations of the discharged injunction pursuant to **11 U.S.C. § 524(a).** See, Debtor's Motion **Exhibit "A" & "B".**

14. Punitive damages are an appropriate sanction when the discharge injunction is violated. See *In re Kabiling*, 551 B.R. 440 (9th Cir. BAP 2016); *In re Nibbelink*, 403 B.R. 113 (Bankr. M.D. Fla. 2009). The Court is mindful that its powers to order such damages may be exercised with restraint and only under limited circumstances. However, in this case, where Respondents knew of a debtor's federally protected right and acted intentionally and reckless with disregard of that right, an award of punitive damages is justified. See *Diviney* v. *Nationsbank of Tx.* (In re Diviney), 225 B.R. 762 (10th Cir. BAP 1998). See, Motion **Exhibit "A" & "B".**

15. Courts may also consider (1) the creditor's conduct, (2) the creditor's ability to pay damages; (3) the creditor's level of sophistication; (4) the creditor's motives;

and (5) any provocation by the debtor. See, Id. at 777. In awarding punitive damages as a sanction, the Court's intent is to award no more than is reasonably necessary to gain the attention of Respondents with the goal that it will implement procedures to prevent this treatment of other clients. See, *BMW of N. Am., Inc.* v. *Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

## VI. CONCLUSION

1. Based upon the foregoing reasons stated in this motion, the evidence and Movant's affidavits filed in support hereof, the Debtor is entitled to his motion.

2. Movant also concludes that this Court must set aside the real estate transactions, as they violate the discharge injunction under **11 U.S.C. § 524(a)(b)(c)** and Georgia law pursuant to **O.C.G.A. § 15-19-51(a)** due to the unauthorized practice of law. Moreover, because the automatic stay was in place at the time Debtor filed this bankruptcy's case according to **11 U.S.C. § 362(a)(6)** and due to the discharged injunction in effect under **11 U.S.C. § 524(a),** all funds paid by Debtor to the Respondents must be returned. The Respondent's actions are in clear violation of the discharge injunction pursuant to **11 U.S.C. § 524(a)(b)(c).** Therefore, the Movant is entitled to such relief based upon the evidence attached to this motion and affidavits.

**WHEREFORE,** the Debtor and Movant move this Court to GRANT his Motion for Contempt for: (1) setting aside the loan modification agreements; (2) the Security Deed given to HUD; (3) ordering the return of mortgage payments; and (4) award any damages sustained by the Debtor as a result of Respondents' violation of the automatic stay and discharge injunction pursuant to **11 U.S.C. § 524(a)(b)(c).**

Respectfully submitted this _____*16 th*_____ , day of March 2020.

Mark A. Richards, PRO SE
**Attorney for the Debtor / Movant**

1861 Windsor Creek Drive, S.W.
Conyers, Georgia 30094
(770) 688-4247 (Phone)
Email: mcrichards88@gmail.com

## CERTIFICATE OF SERVICE

**COMES NOW, MARK A. RICHARDS,** the Debtor and Movant certify that I

have served the following creditors and its' counsels of record in this action with his

MEMORAMDUM OF LAW IN SUPPORT OF MOTION FOR CONTEMPT by U.S.

Certified Mail pursuant to **O.C.G.A. § 14-2-1510(b)** upon the following to wit:

> Bank of America, N.A.
> P.O. Box 31785
> Tampa, Florida 33631-3785
>
> Carrington Mortgage Services, LLC.
> P.O. Box 5001
> Westfield, Indiana 46074
>
> Mr. S. Lindsay Carrington, Esq.
> c/o BankUnited, N.A., Creditor
> Bell Carrington Price & Gregg, LLC.
> 339 Heyward Street, 2nd Floor
> Columbia, South Carolina 29201

**Respectfully submitted this** ___*16 th*___ **, day of March 2020.**

**Mark A. Richards, PRO SE**
**Attorney for the Debtor / Movant**


**1861 Windsor Creek Drive, S.W.**
**Conyers, Georgia 30094**
**(770) 688-4247 (Phone)**
**Email: mcrichards88@gmail.com**

## IN THE UNITED STATES BANKRUPCTY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | * |
| | * |
| MARK A. RICHARDS, | * |
| | * |
| Debtor. | * |
| | * |
| ———————————— | * **DOCKET NO: <u>11-51844-WLH</u>** |
| MARK A. RICHARDS, | * |
| | * Hon. Wendy L. Hagenau, Judge |
| Debtor / Movant, | * |
| | * |
| vs. | * |
| | * **AFFIDAVIT OF CAROLYN RICHARDS** |
| BANK OF AMERICA, N.A., | * |
| CARRINGTON MORTGAGE | * |
| SERVICES, LLC., and | * |
| BANKUNITED, N.A., | * |
| | * |
| Respondents. | * |

## <u>AFFIDAVIT OF CAROLYN RICHARDS</u>

**COMES NOW, CAROLYN RICHARDS,** a witness in this action pursuant to 11 U.S.C. § 105(a) and 11 U.S.C. § 524(a) and hereby certify under oath after being duly sworn, deposes and states the following to wit:

1. My name is CAROLYN RICHARDS. I am one of the witness in this bankruptcy's action. I am legally competent to give this affidavit.

2. Affiant has reached the age of majority and is laboring under no mental disability at this time and is therefore, competent to testify to the matters contained herein, and testifies to the following based on my personal knowledge. Affiant has lived in the City of Conyers, Rockdale County, Georgia since 2008.

3. The Debtor is my husband. On January 24th, 2011, Mr. Richards voluntary filed a petition (Chapter 7). He was represented by Ronica R. Scales of Robert J. Semrad & Associates as his attorneys. They appeared in Court on his behalf.

4. On July 19th, 2011, this Court entered a final order and discharge injunction pursuant to **11 U.S.C. § 524,** discharging the debts owed to certain creditors.

5. Soon after Mr. Richards' bankruptcy discharge, Bank of America, through its' officers, agents, servants, employees and attorneys, began harassing and coercing Mr. Richards to repay the discharged debt. BOA also made threats of foreclosure and eviction to my family. As a result of these threats, my husband and I was under extreme stress and duress when Bank of America, referred to as "BOA", began demanding repayments concerning Mr. Richards' discharged debt in bankruptcy.

6. Moreover, BOA kept increasing the debt and the mortgage payments, even though the debt was discharged. Mr. Richards repeatedly told BOA's officers, agents and employees over the phone, that his debt had been discharged in bankruptcy.

7. BOA told him, despite his discharge, my husband still had to repay the discharged debt, or they would foreclose on our family and immediately evict us.

8. BOA's employees stated to Mr. Richards, that the only way we would be able to stay in our home, was for him to sign a loan modification agreement and to convey a Security Deed over to HUD without any actual consideration given by HUD.

9. We did not understand why my husband had to sign a loan modification agreement to modify a debt that has been discharged in bankruptcy. My husband and I believe this were fraud, but we did not know what to do about this.

10. This fraud is shown by the Security Deed given to HUD. My husband, Mr. Richards, received no actual consideration from HUD in exchanged for the Security Deed. BOA appears to have assigned a portion of his debt over to HUD, without his knowledge. BOA made it clear, that if my husband did not sign the loan modification agreements; the Security Deed for HUD and agree to make the monthly payments every month, my family would be immediately foreclosed upon and evicted.

11. On June 22nd, 2017, BOA sent the Debtor a notice that they transferred its' servicing rights of Debtor's prior mortgage loan on June 11th, 2017 over to Carrington Mortgage Services, LLC. Upon Carrington receiving such rights, Carrington took the same position as BOA did and began harassing and coercing my husband to repay the discharged debt. Carrington's employees harassed us through the telephones calls as collections practices and by using the United States Mails with collection letters. Again, Mr. Richards told Carrington, that his debts were discharged in bankruptcy. Carrington repeated that he had to still repay the debt, or they would foreclose and have the Sheriff Department to evict us from our home.

12. I told my husband who is the debtor, that we had no choice but to comply with Carrington's request and keep paying on the discharged debt.

13. I believe that Carrington coerced, forced and pressured my husband to sign a loan modification agreement. I also told my husband to sign the documents, out of fear of eviction. However, I did not know at the time, the documents were prepared by non-attorneys who are not licensed to practice law in the State of Georgia.

14. On December 2nd, 2019, my husband sent both BOA and Carrington Mortgage Services a Notice of Cease and Desist Letters. Debtor demand that they stop sending collection letters. The Debtor claimed in his letter that BOA and Carrington both committed fraud, willful misconduct, bad faith and gross negligence.

15. My husband as the Debtor also demand the return all his mortgage payments concerning the discharged debt, because those collections violate the discharge injunction as a matter of Federal law. See, **Appx. 12, Exh. "L"**.

16. Based upon a payment history sent by BOA on August 21st, 2019, BOA collected and received a total of **$100,569.83** in improper and illegal mortgage payments from us in clear violation of the Bankruptcy's discharge injunction.

17. Based upon a payment history sent by Carrington Mortgage on September 27th, 2019, Carrington illegally collected and received a total of **$21,345.00** in illegal mortgage payments in clear violation of the Bankruptcy's discharge injunction.

18. The threats of foreclosure and eviction from my home, terrified me and my family. My husband, never voluntary agreed to repay and or reaffirm a debt that has been properly discharged by this Court that would violate the discharge injunction.

19. I believe that the Respondents has willfully and intentionally violated the discharged injunction and is in contempt of this Court. See, **Appx. 13, Exh. "B"**.

20. The Respondents' actions in collecting a discharged debt in bankruptcy, has personally caused me and my family harm and damages such as embarrassment; humiliation and mental anguish. My husband has paid a total of **$121,914.83** in improper and illegal mortgage payments in violation of the discharge injunction.

21. I now have a 15-year-old son, who is in school in Rockdale County. My son is doing well as a student. My husband who is the debtor, works very hard for his family and tries help others with his Christian values. We are not looking for any handout, but a fresh start after my husband's bankruptcy in this case.

22. BOA and Carrington Mortgage took advantage of us and forced us to make payments on a discharged debt. The actions by BOA and Carrington Mortgage seem to show that the debtor's discharged in bankruptcy had no effect on their collection practice. Now we are out of money and we have no were else to go. I believe that the Respondents violated the discharged injunction and should be held in contempt.

**IN WITNESS AND TESTIMONY HEREOF,** I make this affidavit based upon my personal knowledge, information and belief.

This ___02___, day of ___March___, 2020.

Respectfully Submitted,

**Carolyn Richards, Affiant**

CERTIFICATE OF NOTARY PUBLIC
**Sworn to and Subscribed before Me,**

This ___2rd___ day of ___MARCH___, 2020.

_____
STATE NOTARY PUBLIC

*[Notary seal: ALTAF MERCHANT — NOTARY PUBLIC — GWINNETT COUNTY, GA — Exp. Aug. 25, 2021]*

Affidavit Page 5 of 5

## IN THE UNITED STATES BANKRUPCTY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:                                    *
                                          *
MARK A. RICHARDS,                         *
                                          *
     Debtor.                           *
                                          *
_____         *      **DOCKET NO: <u>11-51844-WLH</u>**
                                          *
MARK A. RICHARDS,                         *
                                          *      Hon. Wendy L. Hagenau, Judge
     Debtor / Movant,                  *
                                          *
  vs.                                    *
                                          *
                                          *      **AFFIDAVITS OF MARK A. RICHARDS**
BANK OF AMERICA, N.A.,                     *
CARRINGTON MORTGAGE                        *
SERVICES, LLC., and                       *
BANKUNITED, N.A.,                         *
                                          *
     Respondents.                      *

## AFFIDAVIT OF MARK A. RICHARDS, DEBTOR

**COMES NOW, MARK A. RICHARDS,** the Debtor and Movant in this action

pursuant to **11 U.S.C. § 105(a)** and **11 U.S.C. § 524(a)** and hereby certify under oath

after being duly sworn, deposes and states the following to wit:

    1. My name is MARK A. RICHARDS.  I am the Debtor and Movant in this

bankruptcy's action.  I am legally competent to give this affidavit.

    2. Affiant has reached the age of majority and is laboring under no mental

disability at this time and is therefore, competent to testify to the matters contained

herein, and testifies to the following based on my personal knowledge.  Affiant has

lived in the City of Conyers, Rockdale County, Georgia since 2008.

3.  On January 24th, 2011, I voluntary filed a petition (Chapter 7). I was represented by Ronica R. Scales of Robert J. Semrad & Associates as my attorneys who appeared in Court on my behalf as the Debtor. See, **Appx. 1, Exh. "A".**

4. On July 19th, 2011, this Court entered a final order and discharge injunction pursuant to **11 U.S.C. § 524,** discharging the debts I owed to certain creditors.

5. Soon after my bankruptcy's discharge, Bank of America, through its' officers, agents, servants, employees and attorneys, began harassing and coercing me to repay the discharged debt. BOA made threats of foreclosure and eviction to evict me and my family from our home. As a result of these threats, I was under extreme stress and duress when Bank of America, herein after referred to as "BOA", began demanding repayments concerning my discharged debt in bankruptcy.

6. Moreover, BOA kept increasing the debt and the mortgage payments, even though the debt was discharged. I repeatedly told BOA's officers, agents and employees over the phone, that my debt had been discharged in bankruptcy.

7. BOA told me, despite my discharge, I still had to repay the discharged debt, or they would foreclose on me and my family immediately evicted.

· 5. BOA's officers, agents and employees, told me, that the only way I could stay in my home, was for me to sign a loan modification agreement and convey a Security Deed over to HUD, without any actual consideration given by HUD.

6. I did not understand why I had to sign loan modification agreement to modify a debt that has been discharged in bankruptcy. I believe this was fraud.

7. This fraud is shown by the Security Deed given to HUD. I received no actual consideration from HUD in exchanged for the Security Deed and BOA appears to have assigned a portion of my debt over to HUD without my knowledge.

8. I communicated this fact with BOA and Carrington Mortgage. Neither of their representatives was able to explain to me, why I had to reaffirm a debt that has been discharged in bankruptcy. I also explain to BOA, that under Federal law, my debt cannot be reaffirmed. They had no idea what I was talking about.

9. BOA made it clear, that if I did not sign the loan modification agreements, the Security Deed for HUD and agree to make the monthly payments every month, my family and I would be immediately foreclosed upon and evicted.

10. BOA prepared all documents pertaining to the loan modification and the Security Deed. That process became overwhelming, I was not clear as to what was really occurring, BOA kept changing representatives, who appeared to not know what the prior representative claim to have done. To no avail, I was coerced and forced into signing the loan modification agreement, the Security Deed to HUD and to make monthly mortgage payments concerning the discharged debt under duress and the fear of me being foreclosed upon and evicted from my home.

11. On June 22nd, 2017, BOA sent me a notice that they transferred its' servicing rights of my prior mortgage loan on June 11th, 2017 over to Carrington Mortgage Services, LLC. See, **Appx. 1, Exh. "A"**.

12. Upon Carrington receiving such rights, Carrington took the same position as BOA did and began harassing and coercing me to repay the discharged debt.

13.    Carrington's officers, agents, employees, harassed me through the telephones calls as collections practices and by using the United States Mails with collection letters.    Again, I told Carrington, that my debts were discharged in bankruptcy.    Carrington repeated that I had to still repay the debt, or they would foreclose upon me and have the Sheriff Department to evict me from the home.

14. Again, I had no choice but to comply with Carrington's request and keep paying on a discharged debt.  See, **Appx. 8, 9, Exh. "H" & "I"**.

15.    Carrington coerced, forced and pressured to sign a new loan modification agreement prepared by non-attorneys against my will, while I was under duress.

16. On January 12th, 2018, Ms. Monica Vela, a non-attorney who was acting on behalf of Carrington Mortgage Services, prepared a Loan Modification Agreement for me to sign.  At the time I signed the agreement, I was pressured by Carrington's other officers, agents, employees and attorneys.  I did not know at the time that Ms. Vela was not a licensed attorney, not authorized to practice law in this State.

17. Had I known then that Ms. Vela was not an attorney, who prepared the Loan Modification Agreement and Security Deed, I would have never signed them.

18. I never had prior notice, that the loan document and security deed I signed was prepared by a non-lawyer as an unauthorized practice of law in Georgia.

19. The original Security Deed was recorded on July 8th, 2007 with the Clerk of Superior Court of Rockdale County in Deed Book 4569, page 321 for the total of $289,164.00.    The Court discharged this debt on July 19th, 2011.    The loan modification agreement attempts to reaffirm this debt in the amount of $176,410.11.

20. The loan modification agreement added to the discharged debt, an additional $16,289.18 in new money, which brought the total discharged debt to $197,699.29. This new money is based upon my pass mortgage payments, interest and late fees on my account. The new money is also the same discharged debt.

21. BOA and Carrington Mortgage Services, both showed a clear intent to get me to repay my prior mortgage loan, which has been discharged. They violated **11 U.S.C. § 524** of the bankruptcy's injunction. See, **Appx. 1, 2, Exh. "B" & "C"**.

22. I never voluntary agreed to repay the discharged debt with BOA and or Carrington Mortgage Services LLC. I repeatedly told BOA and Carrington's officers, agents, servants, employees and attorneys, that my debt was discharged.

23. Moreover, I told them, that I paid mortgage insurance and or FHA insurance would have paid for any pass due mortgage payments to the lender upon my discharge to cover any liens and the Security Deed against my property.

24. In other words, BOA and Carrington Mortgage, failed to disclose to me, any mortgage insurance that was actually paid by either, FHA's insurance or by my insurance carrier as a result of my default and discharge in bankruptcy. Such mortgage insurance would have been paid due to my default in order to protect the lender and payoff and satisfy any lien upon my property. See, **Appx. 10, Exh. "J"**.

25. On December 2nd, 2019, I sent both BOA and Carrington Mortgage Services a Notice of Cease and Desist Letters. I demand that they stop sending me collection letters. I claimed that BOA and Carrington both committed fraud, willful misconduct, bad faith and gross negligence. See, **Appx. 12, 13, Exh. "L" & "M"**.

Affidavit Page 5 of 7

26. I also demand for the return of all the unlawful collection of my mortgage payments concerning the discharged debt, because those collections violate the discharge injunction as a matter of Federal law. See, **Appx. 12, 13, Exh. "L" & "M".**

27. Based upon a payment history sent by BOA on August 21st, 2019, BOA illegally collected and received a total of **$100,569.83** in improper and illegal mortgage payments for me in clear violation of the Bankruptcy's discharge injunction according to **11 U.S.C. § 524.** See, **Appx. 12, 13, Exh. "L" & "M".**

28. Based upon a payment history sent by Carrington Mortgage on September 27th, 2019, Carrington illegally collected and received a total of **$21,345.00** in improper and illegal mortgage payments for me in clear violation of the Bankruptcy's discharge injunction according to **11 U.S.C. § 524.** See, **Appx. 6, Exh. "F".**

29. Each payment made by me, was made under duress and pressure under the threats of foreclosure and eviction from my home. BOA and Carrington both coerced and forced me to repay the discharged debt against my will. I also believed and they knew that I had mortgage insurance to help cover such payments. Such threats of foreclosure and eviction from my home, terrified me and my family.

30. I never voluntary agreed to repay and or reaffirm a debt that has been properly discharged by this Court, that would violate the discharge injunction.

31. I believe that the Respondents has willfully and intentionally violated the discharged injunction and is in contempt of this Court. I ask that the loan modification agreements and the Security Deed given to HUD be set aside.

33. The Respondents' actions in collecting a discharged debt in bankruptcy, has personally caused me and my family harm, such as embarrassment; humiliation and mental anguish. Moreover, I have paid out a total of **$121,914.83** in improper and illegal mortgage payments in violation of the discharge injunction.

34. Such payments should have been cover by my mortgage insurance or paid in full by investor's insurance as a Mortgage Backed Security or "MBS" insurance.

35. I am entitled to my motion. I ask this Court to hold the Respondents in contempt of Court due to their violations of the bankruptcy's discharge injunction.

36. I also ask that the Court set aside the loan modification agreements and the Security Deed given to HUD. Finally, I demand that all mortgage payments made by me to BOA and Carrington Mortgage Service be return to me immediately.

**IN WITNESS AND TESTIMONY HEREOF,** I make this affidavit based upon my personal knowledge, information and belief.

**This** _13th_ **, day of** _March_ **, 2020.**

**Respectfully Submitted,**

Mark A. Richards, Debtor

**CERTIFICATE OF NOTARY PUBLIC**
**Sworn to and Subscribed before Me,**

**This** _13_ **day of** _March_ **, 2020.**

_Julia Gordon_

**STATE NOTARY PUBLIC**

## IN THE UNITED STATES BANKRUPCTY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:                              *
                                    *
**MARK A. RICHARDS,**                *
                                    *
     Debtor.                     *
                                    *
_____           *      **DOCKET NO: <u>11-51844-WLH</u>**
                                    *
**MARK A. RICHARDS,**                *
                                    *      Hon. Wendy L. Hagenau, Judge
     Debtor / Movant,            *
                                    *
  vs.                             *
                                    *      **DEBTOR'S APPENDIX TO EXHIBITS**
**BANK OF AMERICA, N.A.,**           *
**CARRINGTON MORTGAGE**              *
**SERVICES, LLC., and**              *
**BANKUNITED, N.A.,**                *
                                    *
     Respondents.                *

---

## <u>DEBTOR'S APPENDIX TO LIST OF EXHIBITS</u>

    **COMES NOW, MARK A. RICHARDS,** the Debtor and Movant and hereby files his Appendix in support of his for contempt under **11 U.S.C. § 105(a)** by showing:

    1. U.S. Discharge Final Order ............................................. Exhibit "A"

    2. Security Deed to HUD ................................................... Exhibit "B"

    3. Bank of America's Loan Modification Agreement ................. Exhibit "C"

    4. Carrington Mortgage Loan Modification Agreement ............. Exhibit "D"

    5. Bank of America's New Assignment Letter to Debtor ........... Exhibit "E"

    6. Carrington Mortgage's Payment History to the Debtor ......... Exhibit "F"

    7. Bank of America's Payment History to the Debtor ............... Exhibit "G"

8. Carrington Mortgage's Letter collecting discharged debt ...... Exhibit "H"

9. Carrington Mortgage's Notice of Intent to Foreclosed .......... Exhibit "I"

10. Carrington Mortgage's Pay Off Statement to Debtor ........... Exhibit "J"

11. Carrington Mortgage's Acknowledgement of Discharge ....... Exhibit "K"

12. Debtor's Notice to Cease and Desist to Bank of America ...... Exhibit "L"

13. Debtor's Notice to Cease and Desist to Carrington Mortgage  Exhibit "M"

**WHEREFORE,** the Debtor and Movant hereby files this Appendix with the Clerk in support of his motion for contempt and move this Court to GRANT his Motion for Contempt for: (1) setting aside the loan modification agreements; (2) the Security Deed given to HUD; (3) ordering the return of mortgage payments; and (4) award any damages sustained by the Debtor as a result of Respondents' violation of the automatic stay and discharge injunction pursuant to **11 U.S.C. § 524(a)(b)(c).**

Respectfully submitted this _____16th_____ , day of March 2020.

Mark A. Richards, PRO SE
**Attorney for the Debtor / Movant**

**1861 Windsor Creek Drive, S.W.**
**Conyers, Georgia 30094**
**(770) 688-4247 (Phone)**
**Email: mcrichards88@gmail.com**

## CERTIFICATE OF SERVICE

**COMES NOW, MARK A. RICHARDS,** the Debtor and Movant in the above-styled action and certify that I have served the following creditors and its' counsels of record in this action with his **DEBTOR'S APPENDIX TO LIST OF EXHIBITS** by U.S. Certified Mail pursuant to **O.C.G.A. § 14-2-1510(b)** upon the following to wit:

Bank of America, N.A.
P.O. Box 31785
Tampa, Florida 33631-3785

Carrington Mortgage Services, LLC.
P.O. Box 5001
Westfield, Indiana 46074

Mr. S. Lindsay Carrington, Esq.
c/o BankUnited, N.A., Creditor
Bell Carrington Price & Gregg, LLC.
339 Heyward Street, 2nd Floor
Columbia, South Carolina 29201

**Respectfully submitted this _____16th_____ , day of March 2020.**

**Mark A. Richards, PRO SE**
**Attorney for the Debtor / Movant**

**1861 Windsor Creek Drive, S.W.**
**Conyers, Georgia 30094**
**(770) 688-4247 (Phone)**
**Email: mcrichards88@gmail.com**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_**In re: Richards, Debtor**_, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "A"

Attached hereto

# UNITED STATES BANKRUPTCY COURT

## Northern District of Georgia

In Re: Debtor(s)
**Mark A. Richards**
1861 Windsonr Creek Dr.
Conyers, GA 30094

xxx–xx–3731

Case No.: **11–51844–wlh**
Chapter: **7**
Judge: **Wendy L. Hagenau**

### DISCHARGE OF DEBTOR(S) WITH ORDER APPROVING TRUSTEE'S REPORT OF NO DISTRIBUTION, CLOSING ESTATE AND DISCHARGING TRUSTEE

It appearing that the debtor is entitled to a discharge, **IT IS ORDERED:** The debtor is granted a discharge under section 727 of title 11, United States Bankruptcy Code, (the Bankruptcy Code).

It further appears that the trustee in the above styled case has filed a report of no distribution and said Trustee has performed all other and further duties required in the administration of said estate; accordingly, it is hereby

**ORDERED** that the said estate is closed; that the Trustee is discharged from and relieved of said trust.

*Wendy L. Hagenau*

Wendy L. Hagenau
United States Bankruptcy Judge

Dated:   July 19, 2011

Form 182

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION REGARDING THE BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE



FORM 182 continued

## EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. [In a case involving community property: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

This discharge does not affect any property of the estate as defined by section 541 of the Bankruptcy Code, and the automatic stay of section 362(a) of the Bankruptcy Code continues to apply to any property of the estate unless and until the automatic stay has been terminated by order of the court or expires pursuant to section 362(c) of the Bankruptcy Code. Such property remains subject to administration by the trustee on behalf of the bankruptcy estate.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts that are Not Discharged.

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;
b. Debts incurred to pay nondischargeable taxes (in a case filed on or after October 17, 2005);
c. Debts that are domestic support obligations;
d. Debts for most student loans;
e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;
f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;
g. Some debts which were not properly listed by the debtor;
h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;
i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts.
j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans (in a case filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

**This Bankruptcy Discharge is an important document that you should retain in the event a copy is needed in the future. If you request a copy from the Clerk's Office at a later date, you will be required to pay a fee.**

Case 11-51844-wlh   Doc 18   Filed 07/21/11   Entered 07/22/11 01:11:31   Desc Imaged
Certificate of Service   Page 3 of 3
United States Bankruptcy Court
Northern District of Georgia

In re:
Mark A. Richards
            Debtor

Case No. 11-51844-wlh
Chapter 7

## CERTIFICATE OF NOTICE

District/off: 113E-9          User: collins1          Page 1 of 1          Date Rcvd: Jul 19, 2011
                             Form ID: 182            Total Noticed: 14

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jul 21, 2011.
db          +Mark A. Richards,   1861 Windsonr Creek Dr.,   Conyers, GA 30094-5833
aty         +Jessica L. Casto,   Robert J. Semrad & Associates, LLC,   Suite 3600,   101 Marietta St.,
             Atlanta, GA 30303-2716
aty         +Ronica R. Scales,   Robert J. Semrad & Associates,   Suite 3600,   101 Marietta St., NW,
             Atlanta, GA 30303-2716
tr          +Martha A. Miller,   Martha A. Miller, PC,   229 Peachtree Street, NE,   Suite 2415,
             Atlanta, GA 30303-1608
cr          +The Credit Union Loan Source, LLC.,   5036 Clark Howell Hwy,   College Park, GA 30349-6064
14010636    +Bac Home Loans Servici,   450 American St,   Simi Valley, CA 93065-6285
14010639     Bart L. Graham,   State of Ga Revenue Commission,   1800 Century Center Blvd. NE,
             Atlanta, GA 30345
14010643    +Zwicker & Associates PC,   80 Minuteman Rd.,   Andover, MA 01810-1008

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
ust         +E-mail/Text: ustpregion21.at.ecf@usdoj.gov Jul 19 2011 21:09:00
             Office of the United States Trustee,   Room 362,   75 Spring Street, SW,
             Atlanta, GA 30303-3330
14010635    +EDI: BECKLEE.COM Jul 19 2011 20:18:00     American Express,   c/o Becket and Lee LLP,
             Po Box 3001,   Malvern, PA 19355-0701
14010638    +EDI: BANKAMER2.COM Jul 19 2011 20:23:00     Bank Of America,   Po Box 17054,
             Wilmington, DE 19850-7054
14010640    +EDI: CITICORP.COM Jul 19 2011 20:23:00     Citibank Sd, Na,   Attn: Centralized Bankruptcy,
             Po Box 20507,   Kansas City, MO 64195-0507
14010642    +EDI: IRS.COM Jul 19 2011 20:23:00     Internal Revenue Service,   P.O. Box 7346,
             Philadelphia, PA 19101-7346
14016588    +E-mail/Text: usagan.bk@usdoj.gov Jul 19 2011 21:09:02     U. S. Attorney,
             600 Richard B. Russell Bldg.,   75 Spring Street, SW,   Atlanta GA 30303-3315
                                                                                    TOTAL: 6


             ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
14010636*    +American Express,   c/o Becket and Lee,   PO Box 3001,   Malvern, PA 19355-0701
14016587*     Internal Revenue Service,   P. O. Box 7346,   Philadelphia PA 19101-7346
14010641     ##+Credit Union Loan Sour,   5020 Clark Howell Hwy,   College Park, GA 30349-6064
                                                                       TOTALS: 0, * 2, ## 1

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Addresses marked '##' were identified by the USPS National Change of Address system as undeliverable.  Notices
will no longer be delivered by the USPS to these addresses; therefore, they have been bypassed.  The
debtor's attorney or pro se debtor was advised that the specified notice was undeliverable.

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security
Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the
bankruptcy rules and the Judiciary's privacy policies.

Date: Jul 21, 2011                              Signature: _____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

*In re: Richards, Debtor*, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "B"

Attached hereto

Doc ID: 008876870005 Type: SD
Recorded: 04/29/2013 at 10:27:03 AM
Fee Amt: $24.00 Page 1 of 8
Rockdale County Superior Court
Ruth A. Wilson Clerk

BK **5358** PG **86-93**

### SPACE ABOVE FOR RECORDER USE

**WHEN RECORDED MAIL TO:**
Bank of America, N.A.
1001 Liberty Avenue, Suite 676
Pittsburgh, PA 12222 *15222 JmS*

**PREPARED BY:** *Jeanette Samuel*
Bank of America, N.A.
*1001 Liberty Ave, Ste 675, Pittsburgh, PA 15222*
FHA/VA Case No. 1053768325703
Doc ID 0651847427107105B
See Exhibit B for assignments of record if applicable
*3746666-18007777*

**EXEMPT FROM DOC STAMPS &
INTANGIBLE TAX-
GOVERNMENTAL AGENCY**

### SECURITY DEED

THIS SECURITY DEED ("Security Instrument"), is given on December 26, 2012 The Trustor(s) are MARK A RICHARDS, whose address is 1861 WINDSOR CREEK DR SW, CONYERS, GA 30094 ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, and whose address is **Department of Housing and Urban Development, Attention: C&L Service Corp/ Morris-Griffin Corp, 2488 E 81st Street, Suite 700, Tulsa, OK 74137** ("Lender"), Borrower owes Lender the principal sum of $79,993.30. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on July 1, 2042. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 2 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in ROCKDALE County, State of Georgia; which has the address 1861 WINDSOR CREEK DR SW, CONYERS, GA 30094 (See Exhibit A for Legal Description if applicable) ("Property Address") more particularly described as follows:

**GEORGIA - SUBORDINATE SECURITY DEED - 10/97 - HUD INSTRUMENT**
FHA - PARTIAL CLAIM                                    Page 1 of 7


EXHIBIT "B"

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.      PAYMENT OF PRINCIPAL. Borrower shall pay when due the principal of the debt evidenced by the Note.

2.      LENDER'S RIGHT TO TAKE ACTION TO PROTECT THE PROPERTY. If (A) Borrower does not keep all promises and agreements made in this Security Instrument, or (B) someone, including Borrower, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as, for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 2 may include, for example, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Lender must give Borrower notice before Lender may take any of these actions.

Borrower will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 2. This Security Instrument will protect Lender in case Borrower does not keep this promise to pay those amounts with interest.

Borrower will pay those amounts to Lender when Lender sends Borrower a notice requesting that Borrower do so. Borrower will also pay interest on those amounts at the same rate stated in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and Borrower may agree in writing to terms of payment that are different from those in this paragraph.

Although Lender may take action under this Paragraph 2, Lender does not have to do so.

GEORGIA - SUBORDINATE SECURITY DEED - 10/97 - HUD INSTRUMENT
FHA- PARTIAL CLAIM                              Page 2 of 7

3.   **BORROWER NOT RELEASED; FORBEARANCES BY LENDER NOT A
WAIVER.** Extension of the time of payment of the sums secured by this
Security Instrument granted by Lender to any successor in interest of Borrower
shall not operate to release the liability of the original Borrower or Borrower's
successor in interest. Lender shall not be required to commence proceedings
against any successor in interest or refuse to extend time for payment or
otherwise modify amortization of the sums secured by this Security Instrument
by reason of any demand made by the original Borrower or Borrower's
successors in interest. Any forbearance by Lender in exercising any right or
remedy shall not be a waiver of or preclude the exercise of any right or remedy.

4.   **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY;
CO-SIGNERS.** The covenants and agreements of this Security Instrument shall
bind and benefit the successors and assigns of Lender and Borrower.
Borrower's covenants and agreements shall be joint and several. Any Borrower
who co-signs this Security Instrument but does not execute the Note: (a) is
consigning this Security Instrument only to mortgage, grant and convey that
Borrower's interest in the Property under the terms of this Security Instrument;
(b) is not personally obligated to pay the sums secured by this Security
Instrument; and (c) agrees that Lender and any other Borrower may agree to
extend, modify, forbear or make any accommodations with regard to the term of
this Security Instrument or the Note without that Borrower's consent.

5.   **NOTICES.** Any notice to Borrower provided for in this Security Instrument shall
be given by delivering it or by mailing it by first class mail unless applicable law
requires use of another method. The notice shall be directed to the Property
Address or any other address Borrower designates by notice to Lender. Any
notice to Lender shall be given by first class mail to: **Department of Housing,
and Urban Development, Attention: C&L Service Corp./Morris-Griffin Corp.
2488 E 81st Street, Suite 700, Tulsa, OK 74137** or any address Lender
designates by notice to Borrower. Any notice provided for in this Security
Instrument shall be deemed to have been given to Borrower or Lender when
given as provided in this paragraph.

6.   **GOVERNING LAW; SEVERABILITY.** This Security Instrument shall be
governed by Federal law and the law of the jurisdiction in which the Property is
located. In the event that any provision or clause of this Security Instrument or
the Note conflicts with applicable law, such conflict shall not affect other
provisions of this Security Instrument or the Note which can be given effect
without the conflicting provision. To this end the provisions of this Security
Instrument and the Note are declared to be severable.

7.   **BORROWER'S COPY.** Borrower shall be given one conformed copy of the
Note and of this Security Instrument.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as
follows:

| GEORGIA - SUBORDINATE SECURITY DEED - 10/97 - **HUD INSTRUMENT** |
|---|

FHA- PARTIAL CLAIM                                Page 3 of 7

8.      **ACCELARATION; REMEDIES.** If Borrower fails to keep any promise or agreement made in this Security Instrument, including the promise to pay, when due, the amount owed under the Note and this Security Instrument, Lender, prior to acceleration, shall give notice to Borrower as provided in paragraph 5 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 8, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give Trustee a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold shall record a notice of sale in each county in which the Property or some part thereof is located, and Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed to the Property in fee simple and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in Lender's deed shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed; and (c) the excess, if any, to the person or persons legally entitled thereto. The power and agency hereby granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of said indebtedness as provided by law.

GSCCCA.org - Image Index                                        https://search.gsccca.org/Imaging/HTML5Viewer.aspx

If the Property is sold pursuant to this paragraph 8, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under the Paragraph 7 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

9.    **BORROWER'S RIGHT TO REINSTATE.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to keep any promise or agreement made in this Security Instrument, including the promise to pay, when due, the amounts due under the Note and this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if the Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

10.    **RELEASE.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay all costs of recordation, if any.

11.    **WAIVER OF HOMESTEAD.** Borrower hereby waives all right of homestead exemption in the Property.

12.    **ASSUMPTION NOT A NOVATION.** Lender's acceptance of an assumption of the obligations of this Security Instrument and Note, and any release of Borrower in connection therewith, shall not constitute a novation.

GEORGIA - SUBORDINATE SECURITY DEED - 10/97 - HUD INSTRUMENT
FHA- PARTIAL CLAIM                                     Page 5 of 7

GSCCCA.org - Image Index                                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx

13.    **DEED TO SECURE DEBT.** This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

GEORGIA - SUBORDINATE SECURITY DEED - 10/97 - HUD INSTRUMENT
FHA- PARTIAL CLAIM                                    Page 6 of 7

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.
Signed, sealed and delivered in the presence of:

_____              _____
Witness                               Witness

Seema Pathak                          Kavy Pathak
Print or Type Name                    Print or Type Name

_____
MARK A RICHARDS

State of Georgia

County  Rockdale

I, TAUNIGIAH BOWMAN , a NOTARY , residing in the

County and State named, certify that
MARK A RICHARDS

who is/are personally known to me, and this day appeared before me and acknowledged that
he/she/they signed, sealed and delivered the foregoing Security Deed of his/her/their
own free will And accord, for the purposes named and expressed in that instrument.
In witness, I have set my hand and official seal unto this instrument this  31st  day
of
December (month), 2012 (year).

_____
Signature

_____
Title of Officer

My NOTARY (commission or term of office) expires on July 10, 2016 [DB].

(Space Below This Line Reserved For Lender and Recorder).

GEORGIA - SUBORDINATE SECURITY DEED - 10/97 - HUD INSTRUMENT
FHA- PARTIAL CLAIM                    Page 7 of 7

GSCCCA.org - Image Index                                        https://search.gsccca.org/Imaging/HTML5Viewer.aspx

Exhibit A

Legal Description

All that tract or parcel of land lying and being in Land Lot 268 of the 16th District, Rockdale County, Georgia, being Lot 7, Block B, Unit One of Windsor Creek Subdivision, as per plat thereof recorded in Plat Book 35, pages 22 - 27, Rockdale County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_In re: Richards, Debtor_, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "C"

Attached hereto

GSCCCA.org - Image Index                                    https://search.gsccca.org/Imaging

FILED IN OFFICE
CLERK SUPERIOR CT
ROCKDALE CO., GA.

15 JUL 21   AM 10: 33

*Ruth A. Wilson*
CLERK

Doc ID: 010440550008 Type: SD
Recorded: 07/22/2015 at 09:04:56 AM
Fee Amt: $25.00 Page 1 of 8
Rockdale County Superior Court
Ruth A. Wilson Clerk

BK **5729** PG **188-195**

When Recorded Return To:

Bank of America, N.A.
11802 Ridge Parkway, Ste 100 HRM
Broomfield, CO 80021
*PREPARED BY: AL RIVAS*
Recording Requested By:

Bank of America, N.A.

Document No.: 06521847427107105A

*712880-7777*____ Space Above for Recorder's Use ____

ORIG.MTG $ *289,164.00*

NEW MTG $ *195,838.63*

NEW MONEY $ *0.00*

LOAN MODIFICATION AGREEMENT
*APN: 044-A-01-0067*



1000044143

Borrower ("I")1: MARK A RICHARDS

Lender or Servicer ("Lender"): Bank of America, N.A.

Date of first-lien mortgage, deed of trust, or security deed ("Mortgage") and Note
("Note"): May 30, 2008
*PREV REC INST: 07/08/2008 BK: 4569 PG: 321*
FHA Loan Number: 1053768325703
*ORIG LENDER: OPTEUM MORTGAGE, A DIVISION OF METROCITIES MORTGAGE, LLC.*
Property Address ("Property"): 1661 WINDSOR CREEK DR SW, CONYERS, GA
30094
*TAXES HAVE BEEN PREVIOUSLY PAID.*
See attached Exhibit "A" for Legal Description

1 If more than one Borrower or Mortgagor executes this document, each is referred to as "I". Words
signifying the singular (such as "I") include the plural (such as "we") and vice versa where
appropriate.

FHA-HAMP Loan Modification Agreement   One- to Four-Family Bank of America, N.A. (rev. 11/21R/11)




EXHIBIT
"C"

GSCCCA.org - Image Index
https://search.gsccca.org/Imaging

Recording Information: Mortgage recorded in Book/Liber _4569_ at page(s) _924_ of the _REAL ESTATE_ Records of _ROCKDALE, GA_

(Name of Records)                    (County and State, or Other Jurisdiction)

Important Disclosures: The Federal Housing Administration (FHA) requires that the Lender provide you with information to help you understand the modified mortgage and partial claim terms that are being offered to you. The Lender must timely provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage to enable the Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 are true in all material respects and if I have satisfied all of the preconditions in Section 2, this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, modify (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are called the "Loan Documents." Capitalized terms used in this Agreement and not otherwise defined have the meanings set forth in the Mortgage and/or Note, as applicable.

1.  My Representations. I certify, represent to Lender, and agree:

    A.  I am experiencing a financial hardship. As a result, (1) I am in default under the Loan Documents and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.

    B.  I live in the Property as my principal residence. The Property has not been condemned.

    C.  Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property since I signed the Loan Documents.

    D.  I have provided documentation for all income that I receive. I am not required to disclose child support or alimony, unless I chose to rely on such income to qualify for the FHA-Home Affordable Modification Program ("Program").

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including (but not limited to) the documents and information regarding my eligibility for the Program, are true and correct.

    F.  I have made all payments required under a trial period plan, as required under the Program.

2.  Acknowledgements and Preconditions to Modification. I understand, acknowledge, and agree:



A. As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the FHA's required subordinate mortgage (also called a Partial Claim Note and Security Instrument).

B. Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) the Lender will have all of the rights and remedies provided by the Loan Documents.

C. The Loan Documents will not be modified unless the Modification Effective Date (as defined in Section 3) has occurred.

D. The Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement has not been met.

3. The Modification. If my representations in Section 1 continue to be true and correct and all preconditions to the modification in Section 2 have been met, the Loan Documents will automatically become modified (the "Modified Loan Documents") on August 1, 2012 (the "Modification Effective Date") and Lender will waive all due and unpaid late charges.

A. The new Maturity Date will be: July 1, 2042

B. The new principal balance of my Note will be $195,836.63 (the "New Principal Balance");

C. I promise to pay the New Principal Balance, plus interest, to the order of Lender.

D. The annual interest rate on the New Principal Balance will be 4.500%, beginning July 1, 2012, both before and after any new default. This fixed interest rate will remain in effect until principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

E. On March 1, 2013 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $1,475.74 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $992.29, plus the current required escrow payment of $483.45. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

F. I will be in default if I do not comply with the terms of the Modified Loan Documents.

4. Additional Agreements. I understand and agree:



GSCCCA.org - Image Index

https://search.gsccca.org/Imagin

A.  I accept the risks of entering into this Agreement. These risks include (but are not limited to):

  (1)  The FHA's subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The FHA's subordinate lien may also make it more difficult to get additional subordinate lien financing.

  (2)  My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

B.  All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) the Lender has waived this requirement in writing.

C.  This Agreement supersedes the terms of any modification, forbearance, trial period plan, or workout plan that I entered into with Lender before the date of this Agreement.

D.  Except to the extent modified by this Agreement, I will comply with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may change in accordance with the terms of my Modified Loan Documents.

E.  The Modified Loan Documents are duly valid, binding agreements, enforceable in accordance with their terms and are hereby ratified and confirmed.

F.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement satisfies or releases any obligation in the Loan Documents. Except as expressly modified by this Agreement, I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents and this Agreement.

G.  I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title insurance product(s) and/or any subordination agreement(s) that are necessary or required by Lender's procedures and/or the Program to ensure that the Mortgage, as modified by this Agreement, is in first-priority lien position and is fully enforceable. The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.



H.  If an error is detected after execution of this Agreement, I will execute any documents reasonably necessary to (1) consummate the terms and conditions of this Agreement and/or (2) correct the terms and conditions of this Agreement (a "Corrected Agreement"). If I receive a Corrected Agreement from Lender, this Agreement will be void and of no legal effect. If I elect not to sign a Corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Program.

I.  Lender will collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information"). In addition, I consent to the disclosure of my Personal Information and the terms of the trial period plan and this Agreement by Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s), (2) companies that perform support services for the Program, and (3) any HUD-certified housing counselor.

J.  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, or otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documents Lender deems necessary ("Replacement Documents"). I will deliver the Replacement Documents within ten days after I receive Lender's written request for such Replacement Documents.



GSCCCA.org - Image Index    https://search.gsccca.org/Imaging

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed; original signature required, no
photocopies accepted)

MARK A RICHARDS
(Must Be Signed Exactly As Printed)

June 24 2015
(MM/DD/YYYY)

Witness Signature                                    Witness Signature

Karim Ismail                                         Metranie Smith
Witness Printed Name                                 Witness Printed Name

06/24/2015                                           06/24/2015
Witness Date                                         Witness Date

[Space below this line for Acknowledgement]

STATE OF Georgia

COUNTY OF Gwinnett

On the 24th day of June in the year 2015 before me, Amy Vickery
Notary Public, personally appeared MARK A RICHARDS, personally known to me or
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument, the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                              AMY VICKERY
                                              NOTARY PUBLIC
                                              Gwinnett County
                          Notary Signature    State of Georgia
                                              My Comm. Expires Jan. 12, 2016
Amy Vickery                 Notary Public Printed Name Please Seal Here
Jan. 12, 2016               Notary Public Commission Expiration Date



GSCCCA.org - Image Index

https://search.gsccca.org/Imaging

**DO NOT WRITE BELOW THIS LINE.**

**THIS SECTION IS FOR INTERNAL USE ONLY**

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By: _Shirley Moore_    Dated: **JUN 2 6 2015**

Name: Shirley Moore
Title : Assistant Secretary

_Connie Sanchez_
Witness Signature

**CONNIE SANCHEZ**
Witness Printed Name

**JUN 2 6 2015**
Witness Date

_Chou Vang_
Witness Signature

**Chou Vang**
Witness Printed Name

**JUN 2 6 2015**
Witness Date

_____[Space below this line for Acknowledgement]_____

STATE OF __Colorado__
COUNTY OF __Broomfield__

On _6-26-2015_ before Me, Brandon Tatsuo Iwamoto   Notary Public, personally
appeared   Shirley Moore   Assistant Secretary
of Urban Settlement Services, LLC, attorney in fact for Bank of America, N.A., personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or entity upon behalf
of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_Brandon Iwamoto_   Notary Signature

__Brandon Tatsuo Iwamoto___   Notary Public Printed Name Please Seal Here

__March 25, 2018___   Notary Public Commission Expiration Date

> **BRANDON TATSUO IWAMOTO**
> **NOTARY PUBLIC**
> **STATE OF COLORADO**
> **NOTARY ID 20144013219**
> **COMMISSION EXPIRES MAR. 25, 2018**

GSCCCA.org - Image Index

https://search.gsccca.org/Imaging

## EXHIBIT "A"

### LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Land Lot 258 of the 16th District, Rockdale County, Georgia, being Lot 7, Block B, Unit One of Windsor Creek Subdivision, as per plat thereof recorded in Plat Book 35, pages 22 - 27, Rockdale County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

*In re: Richards, Debtor*, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "D"

Attached hereto

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id

Type: SD
Recorded: 2/2/2018 10:08:00 AM
Fee Amt: $73.50  Page 1 of 7
Intangible Tax: $49.50
Rockdale County Superior Court
Ruth A. Wilson Clerk

Participant ID(s): 3822616278,
7067927936

## BK 6210 PG 244 - 250

This Document Prepared By:
MONICA VELA
CARRINGTON MORTGAGE SERVICES, LLC
CARRINGTON DOCUMENT SERVICES
ANAHEIM, CA 92806
1-866-874-5860

When Recorded Mail To:
CARRINGTON MORTGAGE SERVICES, LLC
CARRINGTON DOCUMENT SERVICES
1600 SOUTH DOUGLASS ROAD, SUITE 200A
ANAHEIM, CA 92806

Tax/Parcel #: 044A010067

_____[Space Above This Line for Recording Data]_____

| | |
|---|---|
| Original Principal Amount: $289,164.00 | FHA/VA/RHS Case No: |
| Unpaid Principal Amount: $176,410.11 | FR1053768325703 |
| New Principal Amount: $192,699.29 | Loan No: 4000406704 |
| New Money (Cap): $16,289.18 | |

## LOAN MODIFICATION AGREEMENT (SECURITY DEED)

This Loan Modification Agreement ("Agreement"), made this 12TH day of JANUARY, 2018, between MARK A RICHARDS SOLE OWNERSHIP ("Borrower"), whose address is 1861 WINDSOR CREEK DR SW, CONYERS, GEORGIA 30094 and CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A. ("Lender"), whose address is 1600 SOUTH DOUGLASS ROAD, SUITE 200A, ANAHEIM, CA 92806 amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated MAY 30, 2008 and recorded on JULY 8, 2008 in BOOK 4569 PAGE 321, ROCKDALE COUNTY, GEORGIA, and (2) the Note, in the original principal amount of U.S. $289,164.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
1861 WINDSOR CREEK DR SW, CONYERS, GEORGIA 30094

Carrington Custom Loan Modification Agreement 11222017_307

Page 1

4000406704



GSCCCA.org - Image Index    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id

the real property described is located in ROCKDALE COUNTY, GEORGIA and being set forth as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of, JANUARY 1, 2018 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $192,699.29, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. $16,289.18 and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.8750%, from JANUARY 1, 2018. The yearly rate of 3.8750% will remain in effect until principal and interest are paid in full.

    Borrower promises to make the total modified monthly mortgage payment of U.S. $1,465.73, beginning on the 1ST day of FEBRUARY, 2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower's payment consists of payments for principal and interest of U.S. $906.15, plus payments for property taxes, hazard insurance, and any other permissible escrow items of US $559.58. Borrower understands that the modified monthly mortgage payment is subject to change if there is an increase or decrease in property taxes, insurance, or any other permissible escrow items. If on JANUARY 1, 2048 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

    If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4.  The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
    (b)  all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing

Carrington Custom Loan Modification Agreement 11222017_307

GSCCCA.org - Image Index    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id

in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Subordinate Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage and Subordinate Note/Mortgage.

6.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.   Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8.   Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the Modification Effective Date, may be charged to the account at a later date and shall be the Borrower's responsibility to pay in full. For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Modification Effective Date; Borrower will remain liable for any such costs, fees and/or expenses.

9.   This Agreement modifies an obligation secured by an existing security instrument recorded in ROCKDALE COUNTY, GEORGIA, upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $176,410.11. The principal balance secured by the existing security instrument as a result of this Agreement is $192,699.29, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, I have executed this Agreement.

Borrower: **MARK A RICHARDS**                                     01/20/2018
                                                                 Date

Borrower:                                                        Date

Borrower:                                                        Date

Borrower:                                                        Date

Borrower:                                                        Date

Borrower:                                                        Date
                    [Space Below This Line for Acknowledgments]

State of **GEORGIA**
County of _Gwinnett_              ss.

Signed, sealed and delivered on this _20_ day of _January_ , _2018_ , in the presence of:

Unofficial Witness                          Notary Public, State of Georgia.

                                            CHERYL STOKES
                                                    Printed Name.

Document Prepared By                        NOV. 24, 2021
MONICA VELA                                       My Commission Expires
CARRINGTON MORTGAGE SERVICES, LLC.
CARRINGTON DOCUMENT SERVICES
1600 SOUTH DOUGLASS ROAD, SUITE 200A
ANAHEIM, CA 92806

Carrington Custom Loan Modification Agreement 11222017_307
                            Page 4.

GSCCCA.org - Image Index                          https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id

In Witness Whereof, the Lender has executed this Agreement:

**CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND AUTHORIZED AGENT OF BANK OF AMERICA, N.A.**

By _____    _____    1-23-18
       Jill A. Fuller Director Loss Mitigation    (print name)                Date
       Carrington Mortgage Services, LLC as attorney in Fact

_____    _____
                              Witness                                            Witness

Cbs Menz                                         Luz E. Huerta
_____    _____
       Witness – Printed Name                          Witness – Printed Name

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California            )
County of _____    )

On _____ before me _____, Notary Public,
personally appeared _____, the _____, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

Signature_____
            Signature of Notary Public.

GSCCCA.org - Image Index

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document, to which this certificate is
attached, and not the truthfulness, accuracy, or validity
of that document

# CALIFORNIA ALL – PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California
County of Orange

On __1-23-2018__ ,before me, A. AMBRIZ, Notary Public, personally appeared
JILL A. FULLER who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
A. AMBRIZ



---

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

_____
(Additional information)

CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer
   _____
   (Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other

GSCCCA.org – Image Index
https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id

## EXHIBIT A

BORROWER(S): MARK A RICHARDS SOLE OWNERSHIP

LOAN NUMBER: 4000406704

LEGAL DESCRIPTION:

The land referred to in this document is situated in the STATE OF GEORGIA, COUNTY OF ROCKDALE, CITY OF CONYERS, and described as follows:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 268 OF THE 16TH DISTRICT, ROCKDALE COUNTY, GEORGIA, BEING LOT 7, BLOCK B, UNIT ONE OF WINDSOR
CREEK SUBDIVISION, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 35, PAGES 22 - 27, ROCKDALE COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS INCORPORATED HEREIN
BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

ALSO KNOWN AS: 1861 WINDSOR CREEK DR SW, CONYERS, GEORGIA 30094

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

_**In re: Richards, Debtor**_, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "E"

Attached hereto

C3_1678 PSGSRL01 20321 02/06/17



**Bank of America**

**Home Loans**

P.O. Box 31785
TAMPA, FL 33631-3785



**IMPORTANT INFORMATION ENCLOSED**

AT2    4-772-48217-0002032-001-1-000-000-000-000

MARK A RICHARDS
PO BOX 446
CONYERS, GA 30012

*Send Correspondence to:*
P.O. Box 31785
TAMPA, FL 33631-3785

*Business Address:*
450 American Street
Simi Valley, CA 93065-6285

**Notice Date:**    June 22, 2017

**Loan No.:**    184742710

**Property Address:**
1861 Windsor Creek Dr Sw
Conyers, GA 30094

MARK A RICHARDS:

**The servicing of your home loan will transfer to Carrington Mortgage Services, LLC on July 11, 2017.**

**IMPORTANT INFORMATION ABOUT THE SERVICING OF YOUR HOME LOAN**

On July 11, 2017, the servicing of your above referenced mortgage loan will transfer to Carrington Mortgage Services, LLC. As of that date, your new servicer, Carrington Mortgage Services, LLC, will support all of your loan servicing, including billing, payment processing, and customer support. You will no longer receive mortgage statements from Bank of America; instead, your statements will be sent by Carrington Mortgage Services, LLC.

Enclosed is a Notice of Servicing Transfer from Bank of America regarding the above referenced loan. No action is required on your part in response to this notice. In addition to the information provided in this letter, this notice will contain important information about the servicing transfer of your loan. Please note this servicing transfer only applies to the loan noted above. Other loans you may have with us will not be affected by this change unless you are notified. **Please review this notice and retain it for your records.**

In the mortgage lending industry, the transfer or sale of loan servicing to other servicing institutions is a common practice and we'll work closely with Carrington Mortgage Services, LLC to make the transition as smooth as possible. If you have any questions or concerns regarding this transfer, we're available to answer your questions Monday-Friday 8a.m. to 9p.m. ET at 1-800-669-6607.

**WHAT YOU NEED TO KNOW**

**If you are currently being considered for a loan modification or other foreclosure avoidance program,** your new servicer Carrington Mortgage Services, LLC is aware of your current status and will have all of your documents. Please contact Carrington Mortgage Services, LLC to complete the process and determine which programs may best suit your current situation. For more information on working with Carrington Mortgage Services, LLC, please review the frequently asked questions below.

**ANSWERS TO QUESTIONS YOU MAY HAVE**

**What will change with my servicing transfer?**
- Your loan number and payment address information will change once your loan has been transfer~~ed~~ for a letter from Carrington Mortgage Services, LLC within the next few weeks, which will outl~~ine~~ information.
- The transfer of your loan to Carrington Mortgage Services, LLC does not affect any terms or c~~onditions of your~~ mortgage loan, other than those terms directly related to the servicing of the loan.
- Your monthly payment will not be affected by this transfer.



- Any automatic payments set up with us through the PayPlan programs will be discontinued as of July 10, 2017. Please look for instructions from Carrington Mortgage Services, LLC or contact them on or after July 11, 2017 to determine what payment options they may offer.

**Will I still be able to make my mortgage payment at a Bank of America financial center or through online banking?**
- You will no longer be able to make your payment at a Bank of America financial center for the mortgage loan being transferred.
- If you make payments through Bank of America online banking or any other online banking or bill payment service, you will need to update your loan number and payee information for Carrington Mortgage Services, LLC on or after July 11, 2017.

**When my loan is transferred, will I still have access to my online loan information through Bank of America?**
- After the transfer is complete, your mortgage account will be moved to Carrington Mortgage Services, LLC. As a result, you will no longer access your mortgage information through Bank of America. Prior to the transfer, you may choose to download any information currently online to keep for your own records, such as tax documents, mortgage statements, payment history, etc. Carrington Mortgage Services, LLC will be able to provide you with information about access to your loan account information following the transfer. If you have any other accounts with Bank of America, such as checking, savings or credit card, you will still be able to access those accounts through Bank of America's online banking.

**How will the service transfer affect my other Bank of America accounts?**
- There will be no change to any additional accounts you have with us.
- If you have a Bank of America Advantage, Premium or Preferred checking account, and you're not charged a monthly fee on your account because your mortgage is with us, this will not change with the transfer of your mortgage to another servicer. We'll let you know in writing if this changes in the future.

**What if I am currently participating in a loan modification or other foreclosure avoidance program (e.g., forbearance, short sale, refinance or deed in lieu of foreclosure)?**
- The loan assistance programs that are offered by Carrington Mortgage Services, LLC are determined by the owner (also known as the investor) or insurer of your loan. Where applicable, Carrington Mortgage Services, LLC has agreed to evaluate your loan under the same investor or insurer guidelines as Bank of America, N.A..
- We will transfer any supporting documentation you may have submitted to us to Carrington Mortgage Services, LLC. We encourage you to work with Carrington Mortgage Services, LLC to complete the process and determine which programs may best suit your current situation.
- You should continue to make your payments to Bank of America, N.A. through July 10, 2017. On or after July 11, 2017, your payments should be made to Carrington Mortgage Services, LLC unless you are provided additional direction.
- If your loan is pending a decision regarding qualification for these programs, that decision will now be made by Carrington Mortgage Services, LLC.

**Will my ability to receive financial counseling be impacted by this servicing transfer?**
- If you have previously received an offer for financial counseling in association with a HAMP trial or permanent modification, the transfer of your loan does not impact that offer.
- If you have already set an appointment, please continue to attend your scheduled appointment.
- If you have yet to take advantage of this opportunity, please contact us at your earliest convenience by calling the number provided in your offer letter or by contacting your current Relationship Manager.

**What if I need loan assistance after the transfer?**
- If you experience a hardship and struggle with making your home loan payments after the servicing of your loan has been transferred, please contact Carrington Mortgage Services, LLC right away to request help. They will determine which program may be right for you based on the applicable investor and insurer guidelines.

**What if I am refinancing my mortgage loan that is being transferred?**
- Your refinance will not be affected by the upcoming loan transfer. If you are working on a refinance through Bank of America Home Loans, your application remains active and we will continue to work with you on your refinance. Please contact the Mortgage Loan Officer or Loan Processor you have been working with if you have any questions.



optional products you have or you have questions about your products, please contact Bank of America.

---

**WE'RE HERE TO HELP**

Thank you for the opportunity to serve your home loan needs.  If you have any questions or need assistance prior to your loan transfer, please call us toll-free at 1-800-669-6607, Monday-Friday 8a.m. to 9p.m. ET.

Beginning July 11, 2017, Carrington Mortgage Services, LLC can assist you with any questions related to your home loan and the transfer of servicing.  Carrington Mortgage Services, LLC's customer service number is 1-800-561-4567, 8:00 AM to 8:00 PM, Eastern Standard Time, Monday through Friday.

MILITARY PERSONNEL/SERVICEMEMBERS: If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act (SCRA) and similar state laws provide significant protections and benefits to eligible military service personnel. However, military service and/or SCRA qualification may not necessarily prevent foreclosure. If your loan is in default, a court may authorize foreclosure. If you are having difficulty making your payments, please call us as soon as you can so we can discuss various home retention options. You can reach our Enterprise Military Benefits Unit at 877.345.0693. From outside the U.S., please call us at 817.245.4094. Homeowner counseling is also available at agencies such as Military OneSource at militaryonesource.mil or 800.342.9647 and Armed Forces Legal Assistance at legalassistance.law.af.mil, and through HUD-approved housing counseling agencies, which you can find at hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Loan No.: 184742710                                      Notice Date: June 22, 2017

**NOTICE OF SERVICING TRANSFER**



You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, will be assigned, sold or transferred from **Bank of America, N.A.** to **Carrington Mortgage Services, LLC,** effective July 11, 2017.

The transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than those terms directly related to the servicing of your loan. Except in limited circumstances, federal law requires that your present servicer send you this notice at least 15 calendar days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 calendar days after this effective date or at closing.

**YOUR SERVICER PRIOR TO JULY 11, 2017:**

Your *present servicer* is Bank of America, N.A. If you have any questions relating to the transfer of servicing from your present servicer, please call **Bank of America, N.A.** Customer Service at 1-800-669-6607, Monday-Friday 8a.m. to 9p.m. ET. This is a toll-free number. The address to send written questions to your present servicer relating to the transfer of servicing of your mortgage loan (but not your loan payments) is: Customer Service Correspondence, P.O. Box 31785, TAMPA, FL 33631-3785.

**YOUR NEW SERVICER ON AND AFTER JULY 11, 2017:**

Your *new servicer* will be **Carrington Mortgage Services, LLC.**

**Phone Number for Questions Related to Servicing Transfer**
The telephone number of **Carrington Mortgage Services, LLC** is 1-800-561-4567. If you have any questions relating to the transfer of servicing to your new servicer, please call **Carrington Mortgage Services, LLC** Customer Service toll-free at 1-800-561-4567, 8:00 AM to 8:00 PM, Eastern Standard Time, Monday through Friday.

**Address for Written Questions Related to Servicing Transfer**
The address to send written questions related to the transfer of servicing to **Carrington Mortgage Services, LLC** is:

Carrington Mortgage Services, LLC
P.O. Box 5001

Westfield, IN 46074

**Address for Mailed Payments**
The address to send payments to **Carrington Mortgage Services, LLC** is:

Carrington Mortgage Services, LLC
Attn: Cashiering , P.O. Box 79001
Phoenix, AZ 85062

Please include your loan number on all checks, cashier's checks and other payments sent to **Carrington Mortgage Services, LLC.**

**INFORMATION CONCERNING YOUR LOAN PAYMENTS:**

The date that Bank of America, N.A. will stop accepting payments from you is July 10, 2017.

The date that your *new servicer* Carrington Mortgage Services, LLC will start accepting payments from you is July 11, 2017. Send all payments due on or after that date to your *new servicer.*

**INFORMATION ABOUT OPTIONAL INSURANCE PRODUCTS:**

The transfer of servicing may affect the terms of or the continued availability of credit insurance, accidental death insurance or any other type of optional insurance in the following manner: **Bank of America, N.A.** will no longer make payments to the insurance company on your behalf. As a result, your coverage may be cancelled.

To see if it is possible to maintain coverage, you will need to contact your insurance provider to find out if you are still eligible to receive the coverage and/or to arrange another payment method.

**TREATMENT OF PAYMENTS FOR THE 60 DAYS AFTER SERVICING TRANSFER:**

Under federal law, during the 60-day period beginning the effective date of the transfer of the servicing of your mortgage loan, a loan payment received by current servicer on or before its due date may not be treated by the new servicer as late and a late fee may not be imposed on you.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

*In re: Richards, Debtor*, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "F"

Attached hereto



**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 5001, Westfield, IN 46074
Phone (800) 561-4567  Fax (800) 486-5134

CS238

08/07/19

MARK A RICHARDS
1861 WINDSOR CREEK DR SW
CONYERS          GA 30094

Re:  Loan Number 4000406704

Dear Mortgagor(s):

Below you will find the information and/or documentation you requested on
8/07/2019.

Copy of document(s) as requested.

If you have any questions, please contact the Customer Service Department at (800)561-4567
between the hours of 8:00 AM and 8:00 PM, Monday through Friday, Eastern Time. You may also
contact us in writing at P.O. Box 5001, Westfield, IN 46074 or Fax (800) 486-5134.

Sincerely,

Customer Service Research Department
Carrington Mortgage Services, LLC
Enclosure







**IMPORTANT DISCLOSURES**

---

**-VERBAL INQUIRIES & COMPLAINTS-**
For verbal inquiries and complaints about your mortgage loan, please contact the Customer Service Department for Carrington Mortgage Services, LLC, at 1-800-561-4567 between 8:00 a.m. to 8:00 p.m. Eastern Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

**-IMPORTANT BANKRUPTCY NOTICE-**
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan. If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING-**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**-MINI MIRANDA-**
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

**-HUD COUNSELOR INFORMATION-**
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

**-SCRA DISCLOSURE-**

**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1-888-267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-**
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN 46074. Please include your loan number on all pages of the correspondence. You have the right to request documents we relied upon in reaching our determination. You may request such documents or receive further assistance by contacting the Customer Service Department for Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Time. You may also visit our website at https://carringtonms.com/.



**IMPORTANT DISCLOSURES**

---

COLORADO Residents Only: 7200 S. Alton Way, Ste B180, Centennial, CO 80112, (303) 708-8795

HAWAII Residents Only: Carrington Mortgage Services, LLC ("CMS") is licensed with the State of Hawaii Division of Financial Institutions. You may file complaints about CMS with the Commissioner of Financial Institutions by calling (808) 586-2820 or visiting the division's website for consumer complaints at http://cca.hawaii.gov/dfi/file-a-complaint/. For a list of standard or common loan servicing fees charged by CMS, please visit the CMS website at https://carringtonms.com/HelpCenter/FAQ

MASSACHUSETTS: NOTICE OF IMPORTANT RIGHTS
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

MINNESOTA: Carrington Mortgage Services, LLC is licensed by the Minnesota Department of Commerce.

NEW YORK:
New York City Department of Consumer Affairs Debt Collection Agency License Numbers: 1264739-DCA; 2027784-DCA & 2027786-DCA
This Collection agency is licensed by the City of Buffalo license numbers: CAG11-555177; CAG11-555176 & CAG15-10033598
City of Yonkers Debt Collection Agency License Numbers: 9717; 9837 & 9826
For New York Residents Only: You may file complaints about CMS with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov. Carrington Mortgage Services, LLC is registered with the Superintendent of the New York State Department of Financial Services.

NORTH CAROLINA: Carrington Mortgage Services, LLC is licensed under North Carolina Secure and Fair Enforcement Mortgage Licensing Act and holds North Carolina Agency Licenses with Permit Nos. 102107, 103455 and 112956 Main Office: 1600 South Douglass Road, Suites 110 & 200-A, Anaheim, CA 92806 / Branch Offices: 2100 E. 196th Street, Suites 100 & 200, Westfield, IN 46074 & 6200 Tennyson Parkway, Suites 210 & 110-B, Plano, TX 75024

OREGON: Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (888) 877-4894 or visit http://dfr.oregon.gov.

TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

TEXAS: Notice to Texas Residents! COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

| Loan Number | Transaction Date | Current Interest Paid Date | Tran Code | Transaction Amount | Interest Amount | Principal Amount | Escrow Amount | Balance Escrow | Late Charge Amount | Balance Principal | Balance Late Charge | Balance Funds Unapplied | Unapplied Funds Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4000406704 | 08/02/19 | 07/01/19 | AP | $1,504.35 | $606.24 | $299.91 | $598.20 | $2,155.42 | $0.00 | $187,437.56 | ($60.17) | $0.00 | $0.00 |
| 4000406704 | 08/02/19 | 07/01/19 | SWA | $60.17 | $0.00 | $0.00 | $0.00 | $2,155.42 | $0.00 | $187,437.56 | ($60.17) | $60.17 | $60.17 |
| 4000406704 | 08/02/19 | 07/01/19 | UI | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($60.17) | $0.00 | ($60.17) | $0.00 | $0.00 |
| 4000406704 | 08/02/19 | 07/01/19 | UFU | $60.17 | | | | | | | | $60.17 | |
| 4000406704 | 07/05/19 | 06/01/19 | E56 | ($95.41) | $0.00 | $0.00 | ($95.41) | $1,557.22 | $0.00 | $187,737.47 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 06/15/19 | 06/01/19 | AP | $1,504.35 | $607.20 | $298.95 | $598.20 | $1,652.63 | $0.00 | $187,737.47 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 06/05/19 | 05/01/19 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | $1,054.43 | $0.00 | $188,036.42 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 05/10/19 | 05/01/19 | AP | $1,504.35 | $608.16 | $297.99 | $598.20 | $1,152.57 | $0.00 | $188,036.42 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 05/04/19 | 04/01/19 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | $554.37 | $0.00 | $188,334.41 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 04/23/19 | 04/01/19 | E20 | ($1,805.00) | $0.00 | $0.00 | ($1,805.00) | $652.51 | $0.00 | $188,334.41 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 04/12/19 | 04/01/19 | AP | $1,504.35 | $609.12 | $297.03 | $598.20 | $2,457.51 | $0.00 | $188,334.41 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 04/05/19 | 03/01/19 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | $1,859.31 | $0.00 | $188,631.44 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 03/15/19 | 03/01/19 | AP | $1,504.35 | $610.08 | $296.07 | $598.20 | $1,957.45 | $0.00 | $188,631.44 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 03/05/19 | 02/01/19 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | $1,359.25 | $0.00 | $188,927.51 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/14/19 | 02/01/19 | AP | $1,504.35 | $611.03 | $295.12 | $598.20 | $1,457.39 | $0.00 | $188,927.51 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/05/19 | 01/01/19 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | $859.19 | $0.00 | $189,222.63 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 01/14/19 | 01/01/19 | RP | $1,456.24 | $611.98 | $294.17 | $550.09 | $957.33 | $0.00 | $189,222.63 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 01/05/19 | 12/01/18 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | $407.24 | $0.00 | $189,516.80 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 12/08/18 | 12/01/18 | AP | $1,456.24 | $612.93 | $293.22 | $550.09 | $505.38 | $0.00 | $189,516.80 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 12/05/18 | 11/01/18 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | ($44.71) | $0.00 | $189,810.02 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 11/16/18 | 11/01/18 | AP | $1,456.24 | $613.87 | $292.28 | $550.09 | $53.43 | $0.00 | $189,810.02 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 11/05/18 | 11/01/18 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | ($496.66) | $0.00 | $190,102.30 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 10/23/18 | 10/01/18 | E90 | ($2,620.20) | $0.00 | $0.00 | ($2,620.20) | ($398.52) | $0.00 | $190,102.30 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 10/19/18 | 10/01/18 | AP | $1,514.48 | $614.81 | $291.34 | $550.09 | $2,221.68 | $58.24 | $190,102.30 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 10/05/18 | 09/01/18 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | $1,671.59 | $0.00 | $190,393.64 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 09/24/18 | 09/01/18 | RP | $1,514.48 | $615.75 | $290.40 | $550.09 | $1,769.73 | $58.24 | $190,393.64 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 09/14/18 | 08/01/18 | E92 | ($1,626.70) | $0.00 | $0.00 | ($1,626.70) | $1,219.64 | $0.00 | $190,684.04 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 09/05/18 | 08/01/18 | E56 | ($98.14) | $0.00 | $0.00 | ($98.14) | $2,846.34 | $0.00 | $190,684.04 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 08/16/18 | 08/01/18 | RP | $1,456.24 | $616.69 | $289.46 | $550.09 | $2,944.48 | $0.00 | $190,684.04 | $0.00 | $0.00 | $0.00 |

| Loan Number | Transaction Date | Current Interest Paid Date | Tran Code | Transaction Amount | Interest Amount | Principal Amount | Escrow Amount | Balance Escrow | Late Charge Amount | Balance Principal | Balance Late Charge | Balance Funds Unapplied | Unapplied Funds Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4000406704 | 08/04/18 | 07/01/18 | ESG | ($98.14) | $0.00 | $0.00 | ($98.14) | $2,394.39 | $0.00 | $190,973.50 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 07/13/18 | 07/01/18 | AP | $1,456.24 | $617.62 | $288.53 | $550.09 | $2,492.53 | $0.00 | $190,973.50 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 07/05/18 | 06/01/18 | ESG | ($98.14) | $0.00 | $0.00 | ($98.14) | $1,942.44 | $0.00 | $191,262.03 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 06/19/18 | 06/01/18 | AP | $2,514.48 | $618.55 | $287.60 | $550.09 | $2,040.53 | $58.24 | $191,262.03 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 06/05/18 | 05/01/18 | ESG | ($100.70) | $0.00 | $0.00 | ($100.70) | $1,490.49 | $0.00 | $191,549.63 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 05/14/18 | 05/01/18 | RP | $1,456.24 | $619.47 | $286.68 | $550.09 | $1,591.19 | $0.00 | $191,549.63 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 05/05/18 | 04/01/18 | ESG | ($100.70) | $0.00 | $0.00 | ($100.70) | $1,041.10 | $0.00 | $191,836.31 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 04/23/18 | 04/01/18 | E20 | ($1,590.00) | $0.00 | $0.00 | ($1,590.00) | $1,141.80 | $0.00 | $191,836.31 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 04/16/18 | 04/01/18 | RP | $1,456.24 | $620.39 | $285.76 | $550.09 | $2,731.80 | $0.00 | $191,836.31 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 04/05/18 | 03/01/18 | ESG | ($100.70) | $0.00 | $0.00 | ($100.70) | $2,181.71 | $0.00 | $192,122.07 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 03/19/18 | 03/19/18 | UFM | $875.00 | | | | | | | | $875.00 | |
| 4000406704 | 03/19/18 | 03/19/18 | UFM | ($325.00) | | | | | | | | $0.00 | |
| 4000406704 | 03/19/18 | 03/19/18 | UFM | ($750.00) | | | | | | | | $750.00 | |
| 4000406704 | 03/19/18 | 03/01/18 | SR7 | ($125.00) | $0.00 | $0.00 | $0.00 | $2,282.41 | $0.00 | $192,122.07 | $0.00 | $750.00 | ($125.00) |
| 4000406704 | 03/19/18 | 03/01/18 | SR9 | ($750.00) | $0.00 | $0.00 | $0.00 | $2,282.41 | $0.00 | $192,122.07 | $0.00 | $0.00 | ($750.00) |
| 4000406704 | 03/19/18 | 03/01/18 | SR | $875.00 | $0.00 | $0.00 | $550.09 | $2,282.41 | $0.00 | $192,122.07 | $0.00 | $875.00 | $875.00 |
| 4000406704 | 03/07/18 | 03/01/18 | AP | $1,456.24 | $621.31 | $284.84 | $550.09 | $2,282.41 | $0.00 | $192,122.07 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 03/05/18 | 02/01/18 | ESG | ($100.70) | $0.00 | $0.00 | ($100.70) | $1,732.32 | $0.00 | $192,406.91 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/21/18 | 02/01/18 | PT | $1,833.02 | $0.00 | $0.00 | $1,833.02 | $1,833.02 | $0.00 | $192,406.91 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/21/18 | 02/01/18 | RT | ($1,833.02) | $0.00 | $0.00 | ($1,833.02) | $0.00 | $0.00 | $192,406.91 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/21/18 | 02/01/18 | ITR | | | | | | | | | | |
| 4000406704 | 02/14/18 | 02/01/18 | ITR | | | | | | | | | | |
| 4000406704 | 02/14/18 | 02/01/18 | RT | ($1,833.02) | $0.00 | $0.00 | ($1,833.02) | $0.00 | $0.00 | $192,486.91 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/14/18 | 02/01/18 | PT | $1,833.02 | $0.00 | $0.00 | $1,833.02 | $1,833.02 | $0.00 | $192,406.91 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/05/18 | 02/01/18 | ESG | ($100.70) | $0.00 | $0.00 | ($100.70) | $1,833.02 | $0.00 | $192,406.91 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/01/18 | 02/01/18 | CWP | $8.49 | $0.00 | $8.49 | $0.00 | $1,933.72 | $0.00 | $192,406.91 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 02/01/18 | 02/01/18 | RP | ($8.49) | $252.26 | $283.89 | $559.57 | $1,933.72 | $0.00 | $192,415.40 | $0.00 | $0.00 | ($3,474.21) |
| 4000406704 | 01/30/18 | 02/01/18 | DFU | ($3,474.21) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($3,474.21) |
| 4000406704 | 03/26/18 | 10/01/16 | UI | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $61.07 | $0.00 | $0.00 | $0.00 | $0.00 |

| Loan Number | Transaction Date | Current Interest Paid Date | Tran Code | Transaction Amount | Interest Amount | Principal Amount | Escrow Amount | Balance Escrow | Late Charge Amount | Balance Principal | Balance Late Charge | Balance Unapplied Funds | Unapplied Funds Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4000406704 | 01/26/18 | 10/01/16 | AA | $0.00 | $9,790.70 | ($16,289.18) | $6,451.14 | $3,374.15 | $0.00 | $193,699.29 | $0.00 | $1,474.21 | $0.00 |
| 4000406704 | 01/26/18 | 10/01/16 | AA | $9,790.70 | | | | | | | | | |
| 4000406704 | 01/26/18 | 10/01/16 | AA | $0.00 | | | | | | | | | |
| 4000406704 | 01/26/18 | 10/01/16 | AA | $6,451.14 | | | | | | | | | |
| 4000406704 | 01/26/18 | 10/01/16 | AA | $61.07 | $0.00 | $0.00 | $0.00 | ($5,076.99) | $61.07 | $176,410.11 | $0.00 | $1,474.21 | $0.00 |
| 4000406704 | 01/22/18 | 10/01/16 | SR | $1,474.21 | $0.00 | $0.00 | $0.00 | ($5,076.99) | | $176,410.11 | ($61.07) | $1,474.21 | $1,474.21 |
| 4000406704 | 01/22/18 | 10/01/16 | SR | ($1,374.15) | | | | | | | | $1,474.21 | |
| 4000406704 | 01/22/18 | 10/01/16 | AA | $1,374.15 | | | | | | | | | |
| 4000406704 | 01/08/18 | 10/01/16 | UFU | $0.00 | | | | ($5,350.44) | | $176,410.11 | | $0.00 | ($1,374.15) |
| 4000406704 | 01/08/18 | 10/01/16 | UFU | $100.70 | $0.00 | $0.00 | ($100.70) | ($5,076.99) | | $176,410.11 | ($61.07) | $1,374.15 | $1,374.15 |
| 4000406704 | 01/05/18 | 10/01/16 | ES6 | $100.06 | $662.77 | $329.52 | $531.95 | ($6,451.14) | $0.00 | $176,410.11 | ($61.07) | $1,374.15 | $0.00 |
| 4000406704 | 12/22/17 | 10/01/16 | SR | $3,374.15 | $0.00 | $0.00 | $0.00 | ($6,350.44) | $0.00 | $176,410.11 | ($61.07) | $1,374.15 | ($1,374.18) |
| 4000406704 | 12/22/17 | 10/01/16 | AP | $0.00 | | | | | | | | | |
| 4000406704 | 12/22/17 | 10/01/16 | SWA | $0.00 | | | | | ($61.07) | $0.00 | ($61.07) | $0.00 | $1,374.15 |
| 4000406704 | 12/22/17 | 10/01/16 | UI | $0.00 | | | | $0.00 | | | | | |
| 4000406704 | 12/22/17 | 10/01/16 | UFU | $3,474.18 | | | | | | | | $1,374.15 | |
| 4000406704 | 12/22/17 | 10/01/16 | UFU | $3,474.18 | | | | | | | | $0.00 | $0.00 |
| 4000406704 | 12/05/17 | 09/01/16 | UFU | ($100.70) | $0.00 | $0.00 | ($100.70) | ($6,882.39) | $0.00 | $176,739.63 | $0.00 | $3,474.18 | $0.00 |
| 4000406704 | 12/05/17 | 09/01/16 | ES6 | $1,524.74 | $664.00 | $531.95 | $531.95 | | $0.00 | $176,739.63 | $0.00 | $3,474.18 | $0.00 |
| 4000406704 | 11/13/17 | 09/01/16 | RP | $0.00 | $0.00 | $328.29 | $0.00 | ($5,781.69) | $0.00 | $176,739.63 | $0.00 | $3,474.18 | $0.00 |
| 4000406704 | 11/13/17 | 09/01/16 | SR | $3,474.21 | $0.00 | $0.00 | $0.00 | ($5,781.69) | $0.00 | $176,739.63 | $0.00 | $3,474.18 | $0.00 |
| 4000406704 | 11/13/17 | 08/01/16 | SR | $0.00 | $0.00 | $0.00 | $0.00 | ($5,781.69) | $0.00 | $177,067.92 | $0.00 | $2,948.42 | $3,474.21 |
| 4000406704 | 11/13/17 | 09/01/16 | SR | ($3,424.18) | $0.00 | $0.00 | $0.00 | ($7,313.64) | $0.00 | $177,067.92 | $0.00 | $3,474.18 | $3,474.21 |
| 4000406704 | 11/13/17 | 09/01/16 | UFF | $0.00 | | | | | | | | $0.00 | $0.00 |
| 4000406704 | 11/13/17 | 08/01/16 | UFF | $0.00 | | | | | | | | $1,474.21 | |
| 4000406704 | 11/13/17 | 12/01/17 | BPP | ($50.03) | | | | | | | | $1,424.18 | ($50.03) |
| 4000406704 | 11/13/17 | 12/01/17 | BPP | $0.00 | | | | | | | | $1,424.21 | ($1,474.21) |
| 4000406704 | 11/13/17 | 12/01/17 | BPP | $0.00 | | | | | | | | $0.00 | |
| 4000406704 | 11/13/17 | 11/01/17 | BPP | $0.00 | | | | | | | | | |



| Loan Number | Transaction Date | Current Interest Paid Date | Tran Code | Transaction Amount | Interest Amount | Principal Amount | Escrow Amount | Balance Escrow | Late Charge Amount | Balance Principal | Balance Late Charge | Balance Funds Unapplied | Unapplied Funds Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4000406704 | 11/13/17 | 11/01/17 | RPP | $1,474.21 | | | | | | | | | |
| 4000406704 | 11/10/17 | 08/01/16 | UFF | ($1,474.21) | | | | | | | | $0.00 | |
| 4000406704 | 11/10/17 | 08/01/16 | UFU | $1,474.21 | | | | | | | | $1,474.21 | |
| 4000406704 | 11/10/17 | 08/01/16 | SR | $0.00 | $0.00 | $0.00 | $0.00 | ($7,313.64) | $0.00 | $177,067.92 | $0.00 | $1,474.21 | $0.00 |
| 4000406704 | 11/04/17 | 08/01/16 | E56 | ($100.70) | $0.00 | $0.00 | ($100.70) | ($7,313.64) | $0.00 | $177,067.92 | $0.00 | $1,474.21 | $0.00 |
| 4000406704 | 10/20/17 | 08/01/16 | E90 | ($2,368.33) | $0.00 | $0.00 | ($2,368.33) | ($7,212.94) | $0.00 | $177,067.92 | $0.00 | $1,474.21 | $0.00 |
| 4000406704 | 10/16/17 | 08/01/16 | SR | $1,474.21 | $0.00 | $0.00 | $0.00 | ($4,844.61) | $0.00 | $177,067.92 | $0.00 | $1,474.21 | $1,474.21 |
| 4000406704 | 10/16/17 | 10/01/17 | RPP | $0.00 | | | | | | | | | |
| 4000406704 | 10/16/17 | 10/01/17 | RPP | $1,474.21 | | | | | | | | | |
| 4000406704 | 10/16/17 | 08/01/16 | UFF | $1,474.21 | | | | | | | | $1,474.21 | |
| 4000406704 | 10/05/17 | 08/01/16 | E56 | ($100.70) | $0.00 | $0.00 | ($100.70) | ($4,844.61) | $0.00 | $177,067.92 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 10/04/17 | 08/01/16 | M92 | ($1,378.03) | $0.00 | $0.00 | ($1,378.03) | ($4,743.91) | $0.00 | $177,067.92 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 09/05/17 | 08/01/16 | E56 | ($100.70) | $0.00 | $0.00 | ($100.70) | ($3,365.88) | $0.00 | $177,067.92 | $0.00 | $0.00 | $0.00 |
| 4000406704 | 08/11/17 | 08/01/16 | RP | $381.06 | $665.23 | $327.06 | $531.95 | ($3,265.18) | $0.00 | $177,067.92 | $0.00 | $0.00 | ($1,143.18) |
| 4000406704 | 08/11/17 | 08/01/16 | UFU | ($1,143.18) | | | | | | | | $0.00 | |
| 4000406704 | 07/26/17 | 07/01/16 | AA | $0.00 | $0.00 | $0.00 | $0.00 | ($3,797.13) | $0.00 | $177,394.98 | $0.00 | $1,143.18 | $0.00 |
| 4000406704 | 07/26/17 | 07/01/16 | AA | $0.00 | $0.00 | $0.00 | $0.00 | ($3,797.13) | $0.00 | $177,394.98 | $0.00 | $1,143.18 | $0.00 |
| 4000406704 | 07/18/17 | 07/01/16 | AA | $0.00 | $0.00 | $0.00 | $0.00 | ($3,797.13) | $0.00 | $177,394.98 | $0.00 | $1,143.18 | $0.00 |
| 4000406704 | 07/18/17 | 07/01/16 | AAD | $4,595.82 | | | | | | | | | |
| 4000406704 | 07/07/17 | 06/01/16 | M56 | ($201.40) | $0.00 | $0.00 | ($201.40) | ($3,595.73) | $0.00 | $177,394.98 | $0.00 | | |

Customer Reference Guide

## History Codes and Definitions
### A guide to understanding your payment history.

**Payment Posting Hierarchy**

Manual Payments are applied using the following hierarchy, unless the customer provides specific posting instructions. *Payment application may be customized based on investor requests for individual deals and can fall outside of the hierarchy listed.*

| Non-FHA Loans | | FHA Loans | |
|---|---|---|---|
| 1. Principal and Interest Payment | 6. Corporate Advances | 1. Taxes and Insurance Payment | 6. Corporate Advances |
| 2. Taxes and Insurance Payment | 7. Fees | 2. Principal and Interest Payment | 7. Fees |
| 3. Late Charges | 8. Pay ahead | 3. Late Charge | 8. Pay ahead |
| 4. Uncollected P&I Advances | 9. Curtailment | 4. Uncollected P&I Advances | 9. Curtailment |
| 5. Uncollected Escrow Shortage | | 5. Uncollected Escrow Shortages | |

**Monetary Transaction Codes**

A monetary transaction is one which is of or in relation to money or to the mechanisms by which it is supplied to and circulates in the economy.

| Code | Definition | Code | Definition |
|---|---|---|---|
| AA | Administrative adjustment | POC | Proof of claim |
| AAD | Administrative adjustment Deferred | PCS | Partial Cancelation |
| AAP | Items Auto post Acceptable Partial Payment | POS | Post-Petition payment |
| AMC | Adjustable rate change | PP | Partial payment |
| AP | Auto post | PPB | Partial Payment Base |
| APB | Auto post Partial Base | PPF | Payoff posted through post/allocation screen |
| APP | Acceptable Partial Payment | PRN | Payment reversal for N |
| ARM | Adjustable rate transaction | RA# | Reversed acceptable partial payment |
| ASB | Auto post Short to Base | RB# | Reversed Partial Base |
| ASD | Auto post Short to Draft | RC | REO Curtailment posted on REO/Allocate |
| ASP | Auto post short payment | ROR | REO Curtailment posted on REO/Allocate |
| ATP | Auto post Total Payment | RD# | Reversed Short to Draft |
| BKR | Bankruptcy transaction activity | REO | Real Estate Owned transaction activity |
| CAN | Repayment plan cancelled | RES | Online repayment schedule |
| CT | Curtailment | RH# | Reversed Short to Base |
| CTA | Curtailment posted via auto post | RO | REO P&I payment posted via REO/Allocate |
| CTB | Curtailment reversal posted via Inv/Transfer | RP | Regular payment |
| CTR | Curtailment reversal posted via Post/reverse | RPA | Manual adjustment for repayment plan |
| CTS | LOC Sub-Balance Principal Application | RPL | Repayment plan payment |
| CTT | Reapplication of curtailment due to Inv/Transfer | RPR | REO P&I payment reversal; REO/Reversal |
| CWA | Curtailment posted with payment via auto post | RPY | Repayment plan payment |
| CWP | Curtailment posted with payment via post/level | RS# | Reversed short payment |
| FB | Fee Billed | RT | Payment reversal due to investor transfer |
| FC | Foreclosure with cash | RX# | Reversed Total Payment |
| FE | Collection of billed fee transaction | SHB | Short to Base |
| FEA | Collection of billed fee transaction – auto post | SHD | Short to Draft |
| FEI | Interest on fees | SHP | Short payment |
| FER | Collected interest on fees | SR | Single receipt |
| FIV | Fee invoice online | SR# | Single receipt applied to a bucket |
| FP | Collection of a fee that was not billed | SRA | Single item receipt via auto post |
| FR | Collected interest on fees | SRL | Single item receipt auto post po via lockbox |
| FS | Service Release with cash | SRN | Reversal using the post/single |
| FSV | Field Service Transaction | SUB | Subsidy applied with pmt (RHS only) |
| FW | Foreclosure without cash | SRO | Transfer funds from bucket |
| FWC | Reversal of a fee transaction | SV | Service Release |
| LCW | Late charge waiver using a late charge waiver | SWA | Single item receipt with pmt (RHS only) |
| LD | Loss Draft Disbursement | SWP | Single item receipt w/pmt auto post |
| PA | Payment posted on post/allocate | TL | Total Cash Received |
| PAY | Payoff statement in p/o screen | TLP | Total Payment |
| PCO | Partial C/O taken (G/L c/o of principal) | UFF | Unapplied bucket for foreclosure |
| PCS | Partial cancelation credit from subsidy obligation | UI | Uncollected items include interest and LC |
| PF | Payoff | UXI | Uncollected extension interest |
| PFL | Payoff lockbox | | |



Customer Reference Guide

## Escrow

An escrow payment is the portion of a mortgage payment that is set aside in an escrow account that will pay for the taxes and homeowner's insurance. This is placed in an escrow to show the money is guaranteed to be there and is an amount over and above the monthly mortgage payment, including principal and interest.

### Escrow Codes & Definitions

| Code | Definition | Code | Definition |
|------|------------|------|------------|
| E## | Escrow Disbursement | EIS | Interest on escrow auto post via payoff screen |
| E01 | Escrow refund to borrower | M## | Manual escrow disbursement |
| EI | Interest on Escrow | M01 | Disbursement/return of cash to borrower |
| EIL | Interest on escrow auto post via payoff via lockbox | R## | Escrow disbursement refund |
| EIP | Interest on escrow auto posted auto via released | UIE | Uncollected late charges collected from escrow |

### Escrow Types

The above escrow codes/definitions displayed as Letter## should be paired with the below Escrow Types. For example, Code E## paired with the Escrow Type 90 (E90) is an escrow disbursement for County Taxes.

| ## | Definition | ## | Definition | ## | Definition |
|------|------------|------|------------|------|------------|
| 01-09 | Checks payable to Borrowers | 25 | Hazard 2nd Unit | 91 | School Tax |
| 10 | Forced Hazard | 26 | Hazard 3rd Unit | 92 | City Tax |
| 11 | Forced Flood | 40 | PMI | 93 | Special Tax |
| 12 | Flood Gap | 48 | USDA Annual Fee | 94 | Consolidated Taxes |
| 20 | Hazard Insurance | 49 | USDA no Yearly Fee | 95 | Lien Tax |
| 21 | Flood Insurance | 50 | HUD Single Family | 96 | Maintenance Tax |
| 22 | Windstorm Insurance | 56 | FHA | 97 | HOA Fees |
| 23 | Earthquake Insurance | 59 | Old USDA Annual Fee | 98 | Ground Rent |
| 24 | Unit Owners Insurance | 90 | County Tax | | |

### Reversal Reason Chart

A payment reversal is a payment that was applied against the balance due on the account, but had to be reversed off.

| # | Reversal Reason | # | Reversal Reason |
|------|------------|------|------------|
| 0 | Misapplied | 5 | Account closed |
| 1 | NSF Payment Returned (non-sufficient funds) | 6 | Returned ACH (auto draft) due to NSF |
| 2 | Previously posted to incorrect account | 7 | Funds relocated |
| 3 | Stop payment | 8 | ACH (auto draft) returned |
| 4 | Invalid signature | 9 | Special Reversal |

### Unapplied Codes

An unapplied code is used to identify the source/reason for the corresponding Unapplied Funds balance. Unapplied funds is available money credited to a temporary holding (suspense) account, pending determination or instruction of the breakdown of how money is to be allocated.

| CD | Definition | CD | Definition | CD | Definition |
|------|------------|------|------------|------|------------|
| A | Short Sales | I | Lockbox Rejects or Short Funds | P | Bankruptcy partial payments |
| B | Borrower Portion of FHA 235 | J | Legal | Q | Vendor Refunds |
| C | Customer Post BK Funds | K | Cashiering | R | Replacement Reserve |
| D | Default | L | Loss Draft | S | Surplus Funds |
| E | DRM Express | M | MI Funds/Proceeds | T | Trustee BK Funds |
| F | Forbearance Plans | N | Post after pending ARM change | U | Unidentified (sweep) |
| G | Government Portion of FHA 235 | O | Taxes Bankruptcy | | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_In re: Richards, Debtor_, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "G"

Attached hereto



**Bank of America**
Customer Service Department
PO Box 31785
Tampa, FL 33631-3785

C3_1631_LNHIST_20813_04/25/2017

AB 0826   121 000      00003 #005 XX 1.600
MARK A RICHARDS
1861 WINDSOR CREEK DR SW
CONYYERS, GA 30012

Date: 08/21/2019
Loan No: 184742710

Property Address:

1861 WINDSOR CREEK DR SW
CONYERS, GA 30094

# We've enclosed your home loan history statement with transaction details.

As you requested, enclosed is your statement that provides the following:

- Payments we received from you
- Servicing expenses we paid to third parties
- Tax and insurance payments we paid on your behalf
- Late charges assessed and paid

## Thank you for your business

We appreciate the opportunity to serve your financial needs. For general account information, you can visit us online at bankofamerica.com.

Bank of America and the Bank of America logo are registered trademarks of the Bank of America Corporation.
Bank of America, N.A. Member FDIC © 2015 Bank of America Corporation

**EXHIBIT**
**"G"**



Page 2

Loan Number:          184742710
Statement Period:     06/2008 - 06/2017
Date Prepared:        08/21/2019

Property Address:
1861 WINDSOR CREEK DR SW
CONYERS, GA 30094

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | 288,876.13 | | .00 | | | | .00 |
| 06/26/2008 | INITIAL TAX DEP | 2,433.52 | 07/2008 | .00<br>288,876.13 | .00 | 2,433.52<br>2,433.52 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/07/2008 | FHA MIP PMT | -118.04 | 07/2008 | .00<br>288,876.13 | .00 | -118.04<br>2,315.48 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/24/2008 | REGULAR PAYMENT | 2,140.48 | 08/2008 | 289.31<br>288,586.82 | 1,444.38 | 406.79<br>2,722.27 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/25/2008 | INVESTOR REVRSAL | -1,733.69 | 07/2008 | -289.31<br>288,876.13 | -1,444.38 | .00<br>2,722.27 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/25/2008 | INVESTOR ADJ. | -.01 | 07/2008 | -.01<br>288,876.14 | .00 | .00<br>2,722.27 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/25/2008 | INVESTOR ADJ. | .01 | 07/2008 | .01<br>288,876.13 | .00 | .00<br>2,722.27 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/25/2008 | INVESTOR PAYMENT | 1,733.69 | 08/2008 | 289.31<br>288,586.82 | 1,444.38 | .00<br>2,722.27 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/06/2008 | FHA MIP PMT | -118.04 | 08/2008 | .00<br>288,586.82 | .00 | -118.04<br>2,604.23 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/25/2008 | REGULAR PAYMENT | 2,140.48 | 09/2008 | 290.76<br>288,296.06 | 1,442.93 | 406.79<br>3,011.02 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/05/2008 | FHA MIP PMT | -118.04 | 09/2008 | .00<br>288,296.06 | .00 | -118.04<br>2,892.98 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/25/2008 | REGULAR PAYMENT | 2,140.48 | 10/2008 | 292.21<br>288,003.85 | 1,441.48 | 406.79<br>3,299.77 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/06/2008 | FHA MIP PMT | -118.04 | 10/2008 | .00<br>288,003.85 | .00 | -118.04<br>3,181.73 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/29/2008 | REGULAR PAYMENT | 2,140.48 | 11/2008 | 293.67<br>287,710.18 | 1,440.02 | 406.79<br>3,588.52 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/31/2008 | CITY TAX PMT | -375.50 | 11/2008 | .00<br>287,710.18 | .00 | -375.50<br>3,213.02 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/06/2008 | FHA MIP PMT | -118.04 | 11/2008 | .00<br>287,710.18 | .00 | -118.04<br>3,094.98 | .00 | .00 | .00<br>.00 | .00<br>.00 |

**Bank of America**

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | O |
|---|---|---|---|---|---|---|---|
| 11/06/2008 | COUNTY TAX PMT | -518.11 | 11/2008 | .00<br>287,710.18 | .00 | -518.11<br>2,576.87 | |
| 11/28/2008 | REGULAR PAYMENT | 2,140.48 | 12/2008 | 295.14<br>287,415.04 | 1,438.55 | 406.79<br>2,983.66 | |
| 12/04/2008 | FHA MIP PMT | -118.04 | 12/2008 | .00<br>287,415.04 | .00 | -118.04<br>2,865.62 | |
| 12/29/2008 | REGULAR PAYMENT | 2,140.48 | 01/2009 | 296.61<br>287,118.43 | 1,437.08 | 406.79<br>3,272.41 | |
| 01/07/2009 | FHA MIP PMT | -118.04 | 01/2009 | .00<br>287,118.43 | .00 | -118.04<br>3,154.37 | |
| 01/30/2009 | REGULAR PAYMENT | 2,140.48 | 02/2009 | 298.10<br>286,820.33 | 1,435.59 | 406.79<br>3,561.16 | |
| 02/05/2009 | FHA MIP PMT | -118.04 | 02/2009 | .00<br>286,820.33 | .00 | -118.04<br>3,443.12 | |
| 02/27/2009 | REGULAR PAYMENT | 2,140.48 | 03/2009 | 299.59<br>286,520.74 | 1,434.10 | 406.79<br>3,849.91 | |
| 03/05/2009 | FHA MIP PMT | -118.04 | 03/2009 | .00<br>286,520.74 | .00 | -118.04<br>3,731.87 | |
| 03/31/2009 | REGULAR PAYMENT | 2,140.48 | 04/2009 | 301.09<br>286,219.65 | 1,432.60 | 406.79<br>4,138.66 | |
| 04/06/2009 | FHA MIP PMT | -118.04 | 04/2009 | .00<br>286,219.65 | .00 | -118.04<br>4,020.62 | |
| 04/17/2009 | OVERAGE REFUND | -3,044.50 | 04/2009 | .00<br>286,219.65 | .00 | -3,044.50<br>976.12 | |
| 04/30/2009 | REGULAR PAYMENT | 1,973.86 | 05/2009 | 302.59<br>285,917.06 | 1,431.10 | 240.17<br>1,216.29 | |
| 05/04/2009 | HAZARD INS PMT | -536.00 | 05/2009 | .00<br>285,917.06 | .00 | -536.00<br>680.29 | |
| 05/06/2009 | FHA MIP PMT | -118.04 | 05/2009 | .00<br>285,917.06 | .00 | -118.04<br>562.25 | |
| 06/01/2009 | REGULAR PAYMENT | 1,973.86 | 06/2009 | 304.10<br>285,612.96 | 1,429.59 | 240.17<br>802.42 | |
| 06/04/2009 | FHA MIP PMT | -118.04 | 06/2009 | .00<br>285,612.96 | .00 | -118.04<br>684.38 | |

Page 3

| ...tional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |
| .00 | .00 | .00 | .00 |

**Bank of America**

Page 4

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2009 | REGULAR PAYMENT | 1,973.86 | 07/2009 | 306.63 285,307.33 | 1,428.06 | 240.17 924.55 | .00 | .00 | .00 .00 | .00 .00 |
| 07/06/2009 | FHA MIP PMT | -116.55 | 07/2009 | .00 285,307.33 | .00 | -116.55 808.00 | .00 | .00 | .00 .00 | .00 .00 |
| 08/03/2009 | REGULAR PAYMENT | 1,973.86 | 08/2009 | 307.15 285,000.18 | 1,426.54 | 240.17 1,048.17 | .00 | .00 | .00 .00 | .00 .00 |
| 08/06/2009 | FHA MIP PMT | -116.55 | 08/2009 | .00 285,000.18 | .00 | -116.55 931.62 | .00 | .00 | .00 .00 | .00 .00 |
| 09/03/2009 | REGULAR PAYMENT | 1,973.86 | 09/2009 | 308.69 284,691.49 | 1,425.00 | 240.17 1,171.79 | .00 | .00 | .00 .00 | .00 .00 |
| 09/04/2009 | FHA MIP PMT | -116.55 | 09/2009 | .00 284,691.49 | .00 | -116.55 1,055.24 | .00 | .00 | .00 .00 | .00 .00 |
| 10/02/2009 | REGULAR PAYMENT | 1,973.86 | 10/2009 | 310.23 284,381.26 | 1,423.46 | 240.17 1,295.41 | .00 | .00 | .00 .00 | .00 .00 |
| 10/06/2009 | FHA MIP PMT | -116.55 | 10/2009 | .00 284,381.26 | .00 | -116.55 1,178.86 | .00 | .00 | .00 .00 | .00 .00 |
| 10/16/2009 | COUNTY TAX PMT | -3,884.40 | 10/2009 | .00 284,381.26 | .00 | -3,884.40 -2,705.54 | .00 | .00 | .00 .00 | .00 .00 |
| 10/23/2009 | CITY TAX PMT | -1,295.85 | 10/2009 | .00 284,381.26 | .00 | -1,295.85 -4,001.39 | .00 | .00 | .00 .00 | .00 .00 |
| 11/04/2009 | REGULAR PAYMENT | 1,973.86 | 11/2009 | 311.78 284,069.48 | 1,421.91 | 240.17 -3,761.22 | .00 | .00 | .00 .00 | .00 .00 |
| 11/05/2009 | FHA MIP PMT | -116.55 | 11/2009 | .00 284,069.48 | .00 | -116.55 -3,877.77 | .00 | .00 | .00 .00 | .00 .00 |
| 11/23/2009 | COUNTY TAX CREDIT | 3,884.40 | 11/2009 | .00 284,069.48 | .00 | 3,884.40 6.63 | .00 | .00 | .00 .00 | .00 .00 |
| 11/23/2009 | CITY TAX CREDIT | 1,295.85 | 11/2009 | .00 284,069.48 | .00 | 1,295.85 1,302.48 | .00 | .00 | .00 .00 | .00 .00 |
| 12/04/2009 | FHA MIP PMT | -116.55 | 11/2009 | .00 284,069.48 | .00 | -116.55 1,185.93 | .00 | .00 | .00 .00 | .00 .00 |
| 12/04/2009 | REGULAR PAYMENT | 1,973.86 | 12/2009 | 313.34 283,756.14 | 1,420.35 | 240.17 1,426.10 | .00 | .00 | .00 .00 | .00 .00 |
| 01/07/2010 | FHA MIP PMT | -116.55 | 12/2009 | .00 283,756.14 | .00 | -116.55 1,309.55 | .00 | .00 | .00 .00 | .00 .00 |

**Bank of America**

Page 5

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/04/2010 | FHA MIP PMT | -116.55 | 12/2009 | .00 283,756.14 | .00 | -116.55 1,193.00 | .00 | .00 | .00 .00 | .00 .00 |
| 03/04/2010 | FHA MIP PMT | -116.55 | 12/2009 | .00 283,756.14 | .00 | -116.55 1,076.45 | .00 | .00 | .00 .00 | .00 .00 |
| 03/16/2010 | MISC. POSTING | 900.00 | 12/2009 | .00 283,756.14 | .00 | .00 1,076.45 | .00 | .00 | .00 .00 | 900.00 900.00 |
| 03/22/2010 | MISC. POSTING | 1,073.86 | 12/2009 | .00 283,756.14 | .00 | .00 1,076.45 | .00 | .00 | .00 .00 | 1,073.86 1,973.86 |
| 04/06/2010 | FHA MIP PMT | -116.55 | 12/2009 | .00 283,756.14 | .00 | -116.55 959.90 | .00 | .00 | .00 .00 | .00 1,973.86 |
| 04/14/2010 | REGULAR PAYMENT | 1,973.86 | 01/2010 | 314.91 283,441.23 | 1,418.78 | 240.17 1,200.07 | .00 | .00 | .00 -78.95 | .00 1,973.86 |
| 05/03/2010 | HAZARD INS PMT | -584.00 | 01/2010 | .00 283,441.23 | .00 | -584.00 616.07 | .00 | .00 | .00 -78.95 | .00 1,973.86 |
| 05/06/2010 | FHA MIP PMT | -116.55 | 01/2010 | .00 283,441.23 | .00 | -116.55 499.52 | .00 | .00 | .00 -78.95 | .00 1,973.86 |
| 05/11/2010 | MISC. POSTING | 912.00 | 01/2010 | .00 283,441.23 | .00 | .00 499.52 | .00 | .00 | .00 -78.95 | 912.00 2,885.86 |
| 05/14/2010 | MISC. POSTING | -1,973.86 | 01/2010 | .00 283,441.23 | .00 | .00 499.52 | .00 | .00 | .00 -78.95 | -1,973.86 912.00 |
| 05/14/2010 | REGULAR PAYMENT | 1,973.86 | 02/2010 | 316.48 283,124.75 | 1,417.21 | 240.17 739.69 | .00 | .00 | .00 -157.90 | .00 912.00 |
| 05/19/2010 | MISC. POSTING | 1,061.86 | 02/2010 | .00 283,124.75 | .00 | .00 739.69 | .00 | .00 | .00 -157.90 | 1,061.86 1,973.86 |
| 06/04/2010 | FHA MIP PMT | -116.55 | 02/2010 | .00 283,124.75 | .00 | -116.55 623.14 | .00 | .00 | .00 -157.90 | .00 1,973.86 |
| 06/15/2010 | REGULAR PAYMENT | 1,973.86 | 03/2010 | 318.07 282,806.68 | 1,415.62 | 240.17 863.31 | .00 | .00 | .00 -236.85 | .00 1,973.86 |
| 06/15/2010 | MISC. POSTING | -998.86 | 03/2010 | .00 282,806.68 | .00 | .00 863.31 | .00 | .00 | .00 -236.85 | -998.86 975.00 |
| 07/07/2010 | FHA MIP PMT | -114.95 | 03/2010 | .00 282,806.68 | .00 | -114.95 748.36 | .00 | .00 | .00 -236.85 | .00 975.00 |
| 08/05/2010 | FHA MIP PMT | -114.95 | 03/2010 | .00 282,806.68 | .00 | -114.95 633.41 | .00 | .00 | .00 -236.85 | .00 975.00 |

**Bank of America**

Page 6

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/09/2010 | MISC. POSTING | 626.47 | 03/2010 | .00<br>282,806.68 | .00 | .00<br>633.41 | .00 | .00 | .00<br>-236.85 | 626.47<br>1,601.47 |
| 08/09/2010 | MISC. POSTING | 323.53 | 03/2010 | .00<br>282,806.68 | .00 | .00<br>633.41 | .00 | .00 | 236.85<br>.00 | 86.68<br>1,688.15 |
| 08/09/2010 | REGULAR PAYMENT | 2,176.38 | 04/2010 | 319.66<br>282,487.02 | 1,414.03 | 442.69<br>1,076.10 | .00 | .00 | .00<br>.00 | .00<br>1,688.15 |
| 08/09/2010 | MISC. POSTING | 796.34 | 04/2010 | .00<br>282,487.02 | .00 | .00<br>1,076.10 | .00 | .00 | .00<br>.00 | 796.34<br>2,484.49 |
| 08/09/2010 | MISC. POSTING | -2,176.38 | 04/2010 | .00<br>282,487.02 | .00 | .00<br>1,076.10 | .00 | .00 | .00<br>.00 | -2,176.38<br>308.11 |
| 08/09/2010 | REGULAR PAYMENT | 2,176.38 | 05/2010 | 321.25<br>282,165.77 | 1,412.44 | 442.69<br>1,518.79 | .00 | .00 | .00<br>.00 | .00<br>308.11 |
| 08/12/2010 | REGULAR PAYMENT | 2,176.38 | 06/2010 | 322.86<br>281,842.91 | 1,410.83 | 442.69<br>1,961.48 | .00 | .00 | .00<br>.00 | .00<br>308.11 |
| 08/12/2010 | REGULAR PAYMENT | 2,176.38 | 07/2010 | 324.48<br>281,518.43 | 1,409.21 | 442.69<br>2,404.17 | .00 | .00 | .00<br>-86.68 | .00<br>308.11 |
| 09/07/2010 | FHA MIP PMT | -114.95 | 07/2010 | .00<br>281,518.43 | .00 | -114.95<br>2,289.22 | .00 | .00 | .00<br>-86.68 | .00<br>308.11 |
| 09/08/2010 | REGULAR PAYMENT | 2,178.00 | 08/2010 | 326.10<br>281,192.33 | 1,407.59 | 442.69<br>2,731.91 | .00 | .00 | 1.62<br>-85.06 | .00<br>308.11 |
| 09/10/2010 | Waive/Adj LateChg | 85.06 | 08/2010 | .00<br>281,192.33 | .00 | .00<br>2,731.91 | .00 | .00 | 85.06<br>.00 | .00<br>308.11 |
| 10/06/2010 | FHA MIP PMT | -114.95 | 08/2010 | .00<br>281,192.33 | .00 | -114.95<br>2,616.96 | .00 | .00 | .00<br>.00 | .00<br>308.11 |
| 10/07/2010 | CITY TAX PMT | -967.63 | 08/2010 | .00<br>281,192.33 | .00 | -967.63<br>1,649.33 | .00 | .00 | .00<br>.00 | .00<br>308.11 |
| 10/08/2010 | REGULAR PAYMENT | 2,178.00 | 09/2010 | 327.73<br>280,864.60 | 1,405.96 | 442.69<br>2,092.02 | .00 | .00 | .00<br>.00 | 1.62<br>309.73 |
| 10/29/2010 | COUNTY TAX PMT | -2,141.45 | 09/2010 | .00<br>280,864.60 | .00 | -2,141.45<br>-49.43 | .00 | .00 | .00<br>.00 | .00<br>309.73 |
| 11/04/2010 | FHA MIP PMT | -114.95 | 09/2010 | .00<br>280,864.60 | .00 | -114.95<br>-164.38 | .00 | .00 | .00<br>.00 | .00<br>309.73 |
| 11/10/2010 | REGULAR PAYMENT | 2,178.00 | 10/2010 | 329.37<br>280,535.23 | 1,404.32 | 442.69<br>278.31 | .00 | .00 | .00<br>.00 | 1.62<br>311.35 |

**Bank of America**

Page 7

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/06/2010 | FHA MIP PMT | -114.95 | 10/2010 | .00 / 280,535.23 | .00 | -114.95 / 163.36 | .00 | .00 | .00 / .00 | .00 / 311.35 |
| 12/10/2010 | MISC. POSTING | 2,177.00 | 10/2010 | .00 / 280,535.23 | .00 | .00 / 163.36 | .00 | .00 | .00 / .00 | 2,177.00 / 2,488.35 |
| 12/13/2010 | REGULAR PAYMENT | 2,176.38 | 11/2010 | 331.01 / 280,204.22 | 1,402.68 | 442.69 / 606.05 | .00 | .00 | .00 / .00 | .00 / 2,488.35 |
| 12/13/2010 | MISC. POSTING | -2,176.38 | 11/2010 | .00 / 280,204.22 | .00 | .00 / 606.05 | .00 | .00 | .00 / .00 | -2,176.38 / 311.97 |
| 01/06/2011 | FHA MIP PMT | -114.95 | 11/2010 | .00 / 280,204.22 | .00 | -114.95 / 491.10 | .00 | .00 | .00 / .00 | .00 / 311.97 |
| 01/19/2011 | REGULAR PAYMENT | 2,177.00 | 12/2010 | 332.67 / 279,871.55 | 1,401.02 | 442.69 / 933.79 | .00 | .00 | .00 / .00 | .62 / 312.59 |
| 01/24/2011 | MISC. POSTING | 1,961.00 | 12/2010 | .00 / 279,871.55 | .00 | .00 / 933.79 | .00 | .00 | .00 / .00 | 1,961.00 / 2,273.59 |
| 01/25/2011 | MISC. POSTING | -2,273.59 | 12/2010 | .00 / 279,871.55 | .00 | .00 / 933.79 | .00 | .00 | .00 / .00 | -2,273.59 / .00 |
| 01/25/2011 | REGULAR PAYMENT | 2,176.38 | 01/2011 | 334.33 / 279,537.22 | 1,399.36 | 442.69 / 1,376.48 | .00 | .00 | .00 / -86.68 | .00 / .00 |
| 01/25/2011 | MISC. POSTING | 97.21 | 01/2011 | 97.21 / 279,440.01 | .00 | .00 / 1,376.48 | .00 | .00 | .00 / -86.68 | .00 / .00 |
| 02/04/2011 | FHA MIP PMT | -114.95 | 01/2011 | .00 / 279,440.01 | .00 | -114.95 / 1,261.53 | .00 | .00 | .00 / -86.68 | .00 / .00 |
| 02/15/2011 | REGULAR PAYMENT | 2,177.00 | 02/2011 | 336.12 / 279,103.89 | 1,397.57 | 442.69 / 1,704.22 | .00 | .00 | .00 / -86.68 | .62 / .62 |
| 02/17/2011 | MISC. POSTING | .00 | 02/2011 | .00 / 279,103.89 | .00 | .00 / 1,704.22 | .00 | .00 | .62 / -86.06 | -.62 / .00 |
| 03/04/2011 | FHA MIP PMT | -114.95 | 02/2011 | .00 / 279,103.89 | .00 | -114.95 / 1,589.27 | .00 | .00 | .00 / -86.06 | .00 / .00 |
| 03/15/2011 | REGULAR PAYMENT | 2,177.00 | 03/2011 | 338.17 / 278,765.72 | 1,395.52 | 442.69 / 2,031.96 | .00 | .00 | .00 / -86.06 | .62 / .62 |
| 03/18/2011 | MISC. POSTING | .00 | 03/2011 | .00 / 278,765.72 | .00 | .00 / 2,031.96 | .00 | .00 | -.62 / -86.68 | .62 / 1.24 |
| 03/18/2011 | Waive/Adj LateChg | 86.66 | 03/2011 | .00 / 278,765.72 | .00 | .00 / 2,031.96 | .00 | .00 | 86.66 / -.02 | .00 / 1.24 |

**Bank of America**

Page 8

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/18/2011 | Waive/Adj LateChg | .02 | 03/2011 | .00 / 278,765.72 | .00 | .00 / 2,031.96 | .00 | .00 | .02 / .00 | .00 / 1.24 |
| 03/22/2011 | MISC. POSTING | .00 | 03/2011 | .00 / 278,765.72 | .00 | 1.24 / 2,033.20 | .00 | .00 | .00 / .00 | -1.24 / .00 |
| 04/06/2011 | FHA MIP PMT | -114.95 | 03/2011 | .00 / 278,765.72 | .00 | -114.95 / 1,918.25 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/08/2011 | REGULAR PAYMENT | 2,167.00 | 04/2011 | 339.86 / 278,425.86 | 1,393.83 | 432.70 / 2,350.95 | .00 | .00 | .00 / .00 | .61 / .61 |
| 04/12/2011 | MISC. POSTING | .00 | 04/2011 | .00 / 278,425.86 | .00 | .61 / 2,351.56 | .00 | .00 | .00 / .00 | -.61 / .00 |
| 04/26/2011 | HAZARD INS PMT | -869.00 | 04/2011 | .00 / 278,425.86 | .00 | -869.00 / 1,482.56 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/02/2011 | REGULAR PAYMENT | 2,166.39 | 05/2011 | 341.56 / 278,084.30 | 1,392.13 | 432.70 / 1,915.26 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/05/2011 | FHA MIP PMT | -114.95 | 05/2011 | .00 / 278,084.30 | .00 | -114.95 / 1,800.31 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/06/2011 | FHA MIP PMT | -114.95 | 05/2011 | .00 / 278,084.30 | .00 | -114.95 / 1,685.36 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/10/2011 | REGULAR PAYMENT | 2,166.39 | 06/2011 | 343.27 / 277,741.03 | 1,390.42 | 432.70 / 2,118.06 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/07/2011 | FHA MIP PMT | -113.27 | 06/2011 | .00 / 277,741.03 | .00 | -113.27 / 2,004.79 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/11/2011 | REGULAR PAYMENT | 2,166.39 | 07/2011 | 344.98 / 277,396.05 | 1,388.71 | 432.70 / 2,437.49 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/04/2011 | FHA MIP PMT | -113.27 | 07/2011 | .00 / 277,396.05 | .00 | -113.27 / 2,324.22 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/09/2011 | REGULAR PAYMENT | 2,166.39 | 08/2011 | 346.71 / 277,049.34 | 1,386.98 | 432.70 / 2,756.92 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/07/2011 | FHA MIP PMT | -113.27 | 08/2011 | .00 / 277,049.34 | .00 | -113.27 / 2,643.65 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/12/2011 | REGULAR PAYMENT | 2,207.60 | 09/2011 | 348.44 / 276,700.90 | 1,385.25 | 473.91 / 3,117.56 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/06/2011 | FHA MIP PMT | -113.27 | 09/2011 | .00 / 276,700.90 | .00 | -113.27 / 3,004.29 | .00 | .00 | .00 / .00 | .00 / .00 |

**Bank of America**

Page 9

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/06/2011 | CITY TAX PMT | -984.83 | 09/2011 | .00 276,700.90 | .00 | -984.83 2,019.46 | .00 | .00 | .00 .00 | .00 .00 |
| 10/13/2011 | COUNTY TAX PMT | -2,143.03 | 09/2011 | .00 276,700.90 | .00 | -2,143.03 -123.57 | .00 | .00 | .00 .00 | .00 .00 |
| 10/14/2011 | REGULAR PAYMENT | 2,207.60 | 10/2011 | 350.19 276,350.71 | 1,383.50 | 473.91 350.34 | .00 | .00 | .00 .00 | .00 .00 |
| 11/04/2011 | FHA MIP PMT | -113.27 | 10/2011 | .00 276,350.71 | .00 | -413.27 237.07 | .00 | .00 | .00 .00 | .00 .00 |
| 11/14/2011 | REGULAR PAYMENT | 2,207.60 | 11/2011 | 351.94 275,998.77 | 1,381.75 | 473.91 710.98 | .00 | .00 | .00 .00 | .00 .00 |
| 12/06/2011 | FHA MIP PMT | -113.27 | 11/2011 | .00 275,998.77 | .00 | -113.27 597.71 | .00 | .00 | .00 .00 | .00 .00 |
| 12/14/2011 | REGULAR PAYMENT | 2,207.60 | 12/2011 | 353.70 275,645.07 | 1,379.99 | 473.91 1,071.62 | .00 | .00 | .00 .00 | .00 .00 |
| 01/06/2012 | FHA MIP PMT | -113.27 | 12/2011 | .00 275,645.07 | .00 | -113.27 958.35 | .00 | .00 | .00 .00 | .00 .00 |
| 01/12/2012 | REGULAR PAYMENT | 2,207.60 | 01/2012 | 355.46 275,289.61 | 1,378.23 | 473.91 1,432.26 | .00 | .00 | .00 .00 | .00 .00 |
| 02/06/2012 | FHA MIP PMT | -113.27 | 01/2012 | .00 275,289.61 | .00 | -113.27 1,318.99 | .00 | .00 | .00 .00 | .00 .00 |
| 02/14/2012 | REGULAR PAYMENT | 2,207.60 | 02/2012 | 357.24 274,932.37 | 1,376.45 | 473.91 1,792.90 | .00 | .00 | .00 .00 | .00 .00 |
| 03/06/2012 | FHA MIP PMT | -113.27 | 02/2012 | .00 274,932.37 | .00 | -113.27 1,679.63 | .00 | .00 | .00 .00 | .00 .00 |
| 03/16/2012 | REGULAR PAYMENT | 2,207.60 | 03/2012 | 359.03 274,573.34 | 1,374.68 | 473.91 2,153.54 | .00 | .00 | .00 .00 | .00 .00 |
| 04/05/2012 | FHA MIP PMT | -113.27 | 03/2012 | .00 274,573.34 | .00 | -113.27 2,040.27 | .00 | .00 | .00 .00 | .00 .00 |
| 04/13/2012 | MISC. POSTING | 2,194.64 | 03/2012 | .00 274,573.34 | .00 | .00 2,040.27 | .00 | .00 | .00 .00 | 2,194.64 2,194.64 |
| 04/27/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 274,573.34 | .00 | .00 2,040.27 | .00 | .00 | .00 .00 | 1,433.59 3,628.23 |
| 04/27/2012 | HAZARD INS PMT | -911.00 | 03/2012 | .00 274,573.34 | .00 | -911.00 1,329.27 | .00 | .00 | .00 .00 | .00 3,628.23 |

**Bank of America**

Page 10

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/04/2012 | FHA MIP PMT | -113.27 | 03/2012 | .00 / 274,573.34 | .00 | -113.27 / 1,016.00 | .00 | .00 | .00 / .00 | .00 / 3,628.23 |
| 05/25/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 / 274,573.34 | .00 | .00 / 1,016.00 | .00 | .00 | .00 / .00 | 1,433.59 / 5,061.82 |
| 06/06/2012 | FHA MIP PMT | -113.27 | 03/2012 | .00 / 274,573.34 | .00 | -113.27 / 902.73 | .00 | .00 | .00 / .00 | .00 / 5,061.82 |
| 06/27/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 / 274,573.34 | .00 | .00 / 902.73 | .00 | .00 | .00 / .00 | 1,433.59 / 6,495.41 |
| 07/06/2012 | FHA MIP PMT | -111.47 | 03/2012 | .00 / 274,573.34 | .00 | -111.47 / 791.26 | .00 | .00 | .00 / .00 | .00 / 6,495.41 |
| 07/27/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 / 274,573.34 | .00 | .00 / 791.26 | .00 | .00 | .00 / .00 | 1,433.59 / 7,929.00 |
| 08/07/2012 | FHA MIP PMT | -111.47 | 03/2012 | .00 / 274,573.34 | .00 | -111.47 / 679.79 | .00 | .00 | .00 / .00 | .00 / 7,929.00 |
| 08/31/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 / 274,573.34 | .00 | .00 / 679.79 | .00 | .00 | .00 / .00 | 1,433.59 / 9,362.59 |
| 09/07/2012 | FHA MIP PMT | -111.47 | 03/2012 | .00 / 274,573.34 | .00 | -111.47 / 568.32 | .00 | .00 | .00 / .00 | .00 / 9,362.59 |
| 09/28/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 / 274,573.34 | .00 | .00 / 568.32 | .00 | .00 | .00 / .00 | 1,433.59 / 10,796.18 |
| 10/04/2012 | FHA MIP PMT | -111.47 | 03/2012 | .00 / 274,573.34 | .00 | -111.47 / 456.85 | .00 | .00 | .00 / .00 | .00 / 10,796.18 |
| 10/12/2012 | CITY TAX PMT | -984.83 | 03/2012 | .00 / 274,573.34 | .00 | -984.83 / -527.98 | .00 | .00 | .00 / .00 | .00 / 10,796.18 |
| 10/19/2012 | COUNTY TAX PMT | -1,932.40 | 03/2012 | .00 / 274,573.34 | .00 | -1,932.40 / -2,460.38 | .00 | .00 | .00 / .00 | .00 / 10,796.18 |
| 10/30/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 / 274,573.34 | .00 | .00 / -2,460.38 | .00 | .00 | .00 / .00 | 1,433.59 / 12,229.77 |
| 11/06/2012 | FHA MIP PMT | -111.47 | 03/2012 | .00 / 274,573.34 | .00 | -111.47 / -2,571.85 | .00 | .00 | .00 / .00 | .00 / 12,229.77 |
| 11/26/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 / 274,573.34 | .00 | .00 / -2,571.85 | .00 | .00 | .00 / .00 | 1,433.59 / 13,663.36 |
| 12/06/2012 | FHA MIP PMT | -111.47 | 03/2012 | .00 / 274,573.34 | .00 | -111.47 / -2,683.32 | .00 | .00 | .00 / .00 | .00 / 13,663.36 |

**Bank of America**

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/27/2012 | MISC. POSTING | 1,433.59 | 03/2012 | .00 274,573.34 | .00 | .00 -2,683.32 | .00 | .00 | .00 .00 | 1,433.59 15,096.95 |
| 01/07/2013 | FHA MIP PMT | -111.47 | 03/2012 | .00 274,573.34 | .00 | -111.47 -2,794.79 | .00 | .00 | .00 .00 | .00 15,096.95 |
| 01/30/2013 | MISC. POSTING | -13,174.70 | 03/2012 | .00 274,573.34 | .00 | .00 -2,794.79 | .00 | .00 | .00 .00 | -13,174.70 1,922.25 |
| 01/30/2013 | REGULAR PAYMENT | 2,207.60 | 04/2012 | 360.82 274,212.52 | 1,372.87 | 473.91 -2,320.88 | .00 | .00 | .00 -86.68 | .00 1,922.25 |
| 01/30/2013 | REGULAR PAYMENT | 2,193.42 | 05/2012 | 362.63 273,849.89 | 1,371.06 | 459.73 -1,861.15 | .00 | .00 | .00 -173.36 | .00 1,922.25 |
| 01/30/2013 | REGULAR PAYMENT | 2,193.42 | 06/2012 | 364.44 273,485.45 | 1,369.25 | 459.73 -1,401.42 | .00 | .00 | .00 -260.04 | .00 1,922.25 |
| 01/30/2013 | REGULAR PAYMENT | 2,193.42 | 07/2012 | 366.26 273,119.19 | 1,367.43 | 459.73 -941.69 | .00 | .00 | .00 -260.04 | .00 1,922.25 |
| 01/30/2013 | REGULAR PAYMENT | 2,193.42 | 08/2012 | 368.09 272,751.10 | 1,365.60 | 459.73 -481.96 | .00 | .00 | .00 -260.04 | .00 1,922.25 |
| 01/30/2013 | REGULAR PAYMENT | 2,193.42 | 09/2012 | 369.93 272,381.17 | 1,363.76 | 459.73 -22.23 | .00 | .00 | .00 -260.04 | .00 1,922.25 |
| 02/01/2013 | MISC. POSTING | 1,433.59 | 09/2012 | .00 272,381.17 | .00 | .00 -22.23 | .00 | .00 | .00 -260.04 | 1,433.59 3,355.84 |
| 02/06/2013 | FHA MIP PMT | -111.47 | 09/2012 | .00 272,381.17 | .00 | -111.47 -133.70 | .00 | .00 | .00 -260.04 | .00 3,355.84 |
| 02/08/2013 | Waive/Adj LateChg | 86.68 | 09/2012 | .00 272,381.17 | .00 | .00 -133.70 | .00 | .00 | 86.68 -173.36 | .00 3,355.84 |
| 02/08/2013 | Waive/Adj LateChg | 86.68 | 09/2012 | .00 272,381.17 | .00 | .00 -133.70 | .00 | .00 | 86.68 -86.68 | .00 3,355.84 |
| 02/08/2013 | Waive/Adj LateChg | 86.68 | 09/2012 | .00 272,381.17 | .00 | .00 -133.70 | .00 | .00 | 86.68 .00 | .00 3,355.84 |
| 02/14/2013 | MISC. POSTING | -1,433.59 | 09/2012 | .00 272,381.17 | .00 | .00 -133.70 | .00 | .00 | .00 .00 | -1,433.59 1,922.25 |
| 02/14/2013 | PAYMENT REVERSAL | -2,193.42 | 08/2012 | -369.93 272,751.10 | -1,363.76 | -459.73 -593.43 | .00 | .00 | .00 .00 | .00 1,922.25 |
| 02/14/2013 | PAYMENT REVERSAL | -2,193.42 | 07/2012 | -368.09 273,119.19 | -1,365.60 | -459.73 -1,053.16 | .00 | .00 | .00 .00 | .00 1,922.25 |

**Bank of America**

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/14/2013 | PAYMENT REVERSAL | -2,193.42 | 06/2012 | -366.26<br>273,485.45 | -1,367.43 | -459.73<br>-1,512.89 | .00 | .00 | .00<br>.00 | .00<br>1,922.25 |
| 02/14/2013 | PAYMENT REVERSAL | -2,193.42 | 05/2012 | -364.44<br>273,849.89 | -1,369.25 | -459.73<br>-1,972.62 | .00 | .00 | .00<br>.00 | .00<br>1,922.25 |
| 02/14/2013 | PAYMENT REVERSAL | -2,193.42 | 04/2012 | -362.63<br>274,212.52 | -1,371.06 | -459.73<br>-2,432.35 | .00 | .00 | .00<br>.00 | .00<br>1,922.25 |
| 02/14/2013 | PAYMENT REVERSAL | -2,207.60 | 03/2012 | -360.82<br>274,573.34 | -1,372.87 | -473.91<br>-2,906.26 | .00 | .00 | .00<br>.00 | .00<br>1,922.25 |
| 02/14/2013 | MISC. POSTING | 14,608.29 | 03/2012 | .00<br>274,573.34 | .00 | .00<br>-2,906.26 | .00 | .00 | .00<br>.00 | 14,608.29<br>16,530.54 |
| 02/14/2013 | MISC. POSTING | 79,993.30 | 03/2012 | .00<br>274,573.34 | .00 | .00<br>-2,906.26 | .00 | .00 | .00<br>.00 | 79,993.30<br>96,523.84 |
| 02/14/2013 | MISC. POSTING | .00 | 03/2012 | .00<br>274,573.34 | 5,480.61 | .00<br>-2,906.26 | .00 | .00 | .00<br>.00 | -5,480.61<br>91,043.23 |
| 02/14/2013 | MISC. POSTING | .00 | 03/2012 | .00<br>274,573.34 | .00 | 1,400.02<br>-1,506.24 | .00 | .00 | .00<br>.00 | -1,400.02<br>89,643.21 |
| 02/14/2013 | MISC. POSTING | .00 | 03/2012 | .00<br>274,573.34 | .00 | 453.08<br>-1,053.16 | .00 | .00 | .00<br>.00 | -453.08<br>89,190.13 |
| 02/14/2013 | MISC. POSTING | .00 | 03/2012 | .00<br>274,573.34 | .00 | 399.73<br>-653.43 | .00 | .00 | .00<br>.00 | -399.73<br>88,790.40 |
| 02/14/2013 | MISC. POSTING | -79,993.30 | 03/2012 | .00<br>274,573.34 | .00 | .00<br>-653.43 | .00 | .00 | .00<br>.00 | -79,993.30<br>8,797.10 |
| 02/14/2013 | MISC. POSTING | 79,993.30 | 03/2012 | .00<br>274,573.34 | .00 | .00<br>-653.43 | .00 | .00 | .00<br>.00 | 79,993.30<br>88,790.40 |
| 02/15/2013 | MISC. POSTING | .00 | 03/2012 | 78,734.71<br>195,838.63 | .00 | .00<br>-653.43 | .00 | .00 | .00<br>.00 | -78,734.71<br>10,055.69 |
| 02/15/2013 | DUE DATE ADJUST. | .00 | 07/2012 | .00<br>195,838.63 | .00 | .00<br>-653.43 | .00 | .00 | .00<br>.00 | .00<br>10,055.69 |
| 03/04/2013 | MISC. POSTING | 1,475.74 | 07/2012 | .00<br>195,838.63 | .00 | .00<br>-653.43 | .00 | .00 | .00<br>.00 | 1,475.74<br>11,531.43 |
| 03/05/2013 | MISC. POSTING | .00 | 07/2012 | 1,454.15<br>194,384.48 | .00 | .00<br>-653.43 | .00 | .00 | .00<br>.00 | -1,454.15<br>10,077.28 |
| 03/05/2013 | MISC. POSTING | 4,595.82 | 07/2012 | .00<br>194,384.48 | .00 | .00<br>-653.43 | .00 | .00 | .00<br>.00 | 4,595.82<br>14,673.10 |

**Bank of America**

Page 13

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/05/2013 | MISC. POSTING | -1,475.74 | 07/2012 | .00 194,384.48 | .00 | .00 -653.43 | .00 | .00 | .00 .00 | -1,475.74 13,197.36 |
| 03/05/2013 | REGULAR PAYMENT | 1,475.74 | 08/2012 | 263.35 194,121.13 | 728.94 | 483.45 -169.98 | .00 | .00 | .00 .00 | .00 13,197.36 |
| 03/05/2013 | MISC. POSTING | -1,475.74 | 08/2012 | .00 194,121.13 | .00 | .00 -169.98 | .00 | .00 | .00 .00 | -1,475.74 11,721.62 |
| 03/05/2013 | REGULAR PAYMENT | 1,475.74 | 09/2012 | 264.34 193,856.79 | 727.95 | 483.45 313.47 | .00 | .00 | .00 .00 | .00 11,721.62 |
| 03/05/2013 | MISC. POSTING | -1,475.74 | 09/2012 | .00 193,856.79 | .00 | .00 313.47 | .00 | .00 | .00 .00 | -1,475.74 10,245.88 |
| 03/05/2013 | REGULAR PAYMENT | 1,475.74 | 10/2012 | 265.33 193,591.46 | 726.96 | 483.45 796.92 | .00 | .00 | .00 .00 | .00 10,245.88 |
| 03/05/2013 | MISC. POSTING | -1,475.74 | 10/2012 | .00 193,591.46 | .00 | .00 796.92 | .00 | .00 | .00 .00 | -1,475.74 8,770.14 |
| 03/05/2013 | REGULAR PAYMENT | 1,475.74 | 11/2012 | 266.32 193,325.14 | 725.97 | 483.45 1,280.37 | .00 | .00 | .00 .00 | .00 8,770.14 |
| 03/05/2013 | MISC. POSTING | -1,475.74 | 11/2012 | .00 193,325.14 | .00 | .00 1,280.37 | .00 | .00 | .00 .00 | -1,475.74 7,294.40 |
| 03/05/2013 | REGULAR PAYMENT | 1,475.74 | 12/2012 | 267.32 193,057.82 | 724.97 | 483.45 1,763.82 | .00 | .00 | .00 .00 | .00 7,294.40 |
| 03/05/2013 | MISC. POSTING | -1,475.74 | 12/2012 | .00 193,057.82 | .00 | .00 1,763.82 | .00 | .00 | .00 .00 | -1,475.74 5,818.66 |
| 03/05/2013 | REGULAR PAYMENT | 1,475.74 | 01/2013 | 268.32 192,789.50 | 723.97 | 483.45 2,247.27 | .00 | .00 | .00 .00 | .00 5,818.66 |
| 03/05/2013 | MISC. POSTING | -1,475.74 | 01/2013 | .00 192,789.50 | .00 | .00 2,247.27 | .00 | .00 | .00 .00 | -1,475.74 4,342.92 |
| 03/05/2013 | REGULAR PAYMENT | 1,475.74 | 02/2013 | 269.33 192,520.17 | 722.96 | 483.45 2,730.72 | .00 | .00 | .00 .00 | .00 4,342.92 |
| 03/05/2013 | MISC. POSTING | -1,475.74 | 02/2013 | .00 192,520.17 | .00 | .00 2,730.72 | .00 | .00 | .00 .00 | -1,475.74 2,867.18 |
| 03/05/2013 | REGULAR PAYMENT | 1,475.74 | 03/2013 | 132.55 192,387.62 | 859.74 | 483.45 3,214.17 | .00 | .00 | .00 .00 | .00 2,867.18 |
| 03/05/2013 | MISC. POSTING | .00 | 03/2013 | 2,867.18 189,520.44 | .00 | .00 3,214.17 | .00 | .00 | .00 .00 | -2,867.18 .00 |

**Bank of America**

Page 14

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/06/2013 | FHA MIP PMT | -111.47 | 03/2013 | .00<br>189,520.44 | .00 | -111.47<br>3,102.70 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/29/2013 | REGULAR PAYMENT | 1,475.74 | 04/2013 | 279.43<br>189,241.01 | 712.86 | 483.45<br>3,586.15 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/04/2013 | FHA MIP PMT | -111.47 | 04/2013 | .00<br>189,241.01 | .00 | -111.47<br>3,474.68 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/26/2013 | REGULAR PAYMENT | 1,475.74 | 05/2013 | 282.64<br>188,958.37 | 709.65 | 483.45<br>3,958.13 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/29/2013 | HAZARD INS PMT | -1,070.00 | 05/2013 | .00<br>188,958.37 | .00 | -1,070.00<br>2,888.13 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/06/2013 | FHA MIP PMT | -111.47 | 05/2013 | .00<br>188,958.37 | .00 | -111.47<br>2,776.66 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/29/2013 | REGULAR PAYMENT | 1,475.74 | 06/2013 | 283.70<br>188,674.67 | 708.59 | 483.45<br>3,260.11 | .00 | .00 | .00<br>.00 | .00<br>.06 |
| 06/06/2013 | FHA MIP PMT | -111.47 | 06/2013 | .00<br>188,674.67 | .00 | -111.47<br>3,148.64 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/26/2013 | REGULAR PAYMENT | 1,475.74 | 07/2013 | 284.76<br>188,389.91 | 707.53 | 483.45<br>3,632.09 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/05/2013 | FHA MIP PMT | -109.57 | 07/2013 | .00<br>188,389.91 | .00 | -109.57<br>3,522.52 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/29/2013 | REGULAR PAYMENT | 1,475.74 | 08/2013 | 285.83<br>188,104.08 | 706.46 | 483.45<br>4,005.97 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/06/2013 | FHA MIP PMT | -109.57 | 08/2013 | .00<br>188,104.08 | .00 | -109.57<br>3,896.40 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/28/2013 | CITY TAX PMT | -1,216.21 | 08/2013 | .00<br>188,104.08 | .00 | -1,216.21<br>2,680.19 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/30/2013 | REGULAR PAYMENT | 1,475.74 | 09/2013 | 286.90<br>187,817.18 | 705.39 | 483.45<br>3,163.64 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/06/2013 | FHA MIP PMT | -109.57 | 09/2013 | .00<br>187,817.18 | .00 | -109.57<br>3,054.07 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/27/2013 | REGULAR PAYMENT | 1,475.74 | 10/2013 | 287.98<br>187,529.20 | 704.31 | 483.45<br>3,537.52 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/04/2013 | FHA MIP PMT | -109.57 | 10/2013 | .00<br>187,529.20 | .00 | -109.57<br>3,427.95 | .00 | .00 | .00<br>.00 | .00<br>.00 |



Page 15

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/24/2013 | COUNTY TAX PMT | -1,927.60 | 10/2013 | .00<br>187,529.20 | .00 | -1,927.60<br>1,500.35 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/29/2013 | REGULAR PAYMENT | 1,475.74 | 11/2013 | 289.06<br>187,240.14 | 703.23 | 483.45<br>1,983.80 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/06/2013 | FHA MIP PMT | -109.57 | 11/2013 | .00<br>187,240.14 | .00 | -109.57<br>1,874.23 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/04/2013 | REGULAR PAYMENT | 1,475.74 | 12/2013 | 290.14<br>186,950.00 | 702.15 | 483.45<br>2,357.68 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/05/2013 | FHA MIP PMT | -109.57 | 12/2013 | .00<br>186,950.00 | .00 | -109.57<br>2,248.11 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/03/2014 | REGULAR PAYMENT | 1,475.74 | 01/2014 | 291.23<br>186,658.77 | 701.06 | 483.45<br>2,731.56 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/07/2014 | FHA MIP PMT | -109.57 | 01/2014 | .00<br>186,658.77 | .00 | -109.57<br>2,621.99 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/06/2014 | FHA MIP PMT | -109.57 | 01/2014 | .00<br>186,658.77 | .00 | -109.57<br>2,512.42 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/14/2014 | REGULAR PAYMENT | 1,475.74 | 02/2014 | 292.32<br>186,366.45 | 699.97 | 483.45<br>2,995.87 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/18/2014 | OVERAGE REFUND | -914.50 | 02/2014 | .00<br>186,366.45 | .00 | -914.50<br>2,081.37 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/06/2014 | FHA MIP PMT | -109.57 | 02/2014 | .00<br>186,366.45 | .00 | -109.57<br>1,971.80 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/14/2014 | REGULAR PAYMENT | 1,475.74 | 03/2014 | 293.42<br>186,073.03 | 698.87 | 483.45<br>2,455.25 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/04/2014 | FHA MIP PMT | -109.57 | 03/2014 | .00<br>186,073.03 | .00 | -109.57<br>2,345.68 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/15/2014 | REGULAR PAYMENT | 1,453.91 | 04/2014 | 294.52<br>185,778.51 | 697.77 | 460.72<br>2,806.40 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/28/2014 | HAZARD INS PMT | -1,222.00 | 04/2014 | .00<br>185,778.51 | .00 | -1,222.00<br>1,584.40 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/06/2014 | FHA MIP PMT | -109.57 | 04/2014 | .00<br>185,778.51 | .00 | -109.57<br>1,474.83 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/13/2014 | REGULAR PAYMENT | 1,453.01 | 05/2014 | 295.62<br>185,482.89 | 696.67 | 460.72<br>1,935.55 | .00 | .00 | .00<br>.00 | .00<br>.00 |



Page 16

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/05/2014 | FHA MIP PMT | -109.57 | 05/2014 | .00 185,482.89 | .00 | -109.57 1,825.98 | .00 | .00 | .00 .00 | .00 .00 |
| 06/11/2014 | REGULAR PAYMENT | 1,453.01 | 06/2014 | 296.73 185,186.16 | 695.56 | 460.72 2,286.70 | .00 | .00 | .00 .00 | .00 .00 |
| 07/07/2014 | FHA MIP PMT | -107.55 | 06/2014 | .00 185,186.16 | .00 | -107.55 2,179.15 | .00 | .00 | .00 .00 | .00 .00 |
| 07/09/2014 | REGULAR PAYMENT | 1,453.01 | 07/2014 | 297.84 184,888.32 | 694.45 | 460.72 2,639.87 | .00 | .00 | .00 .00 | .00 .00 |
| 08/06/2014 | FHA MIP PMT | -107.55 | 07/2014 | .00 184,888.32 | .00 | -107.55 2,532.32 | .00 | .00 | .00 .00 | .00 .00 |
| 08/15/2014 | REGULAR PAYMENT | 1,453.01 | 08/2014 | 298.96 184,589.36 | 693.33 | 460.72 2,993.04 | .00 | .00 | .00 .00 | .00 .00 |
| 09/05/2014 | FHA MIP PMT | -107.55 | 08/2014 | .00 184,589.36 | .00 | -107.55 2,885.49 | .00 | .00 | .00 .00 | .00 .00 |
| 09/11/2014 | CITY TAX PMT | -1,246.43 | 08/2014 | .00 184,589.36 | .00 | -1,246.43 1,639.06 | .00 | .00 | .00 .00 | .00 .00 |
| 09/16/2014 | REGULAR PAYMENT | 1,453.01 | 09/2014 | 300.08 184,289.28 | 692.21 | 460.72 2,099.78 | .00 | .00 | .00 .00 | .00 .00 |
| 09/30/2014 | COUNTY TAX PMT | -1,965.72 | 09/2014 | .00 184,289.28 | .00 | -1,965.72 134.06 | .00 | .00 | .00 .00 | .00 .00 |
| 10/06/2014 | FHA MIP PMT | -107.55 | 09/2014 | .00 184,289.28 | .00 | -107.55 26.51 | .00 | .00 | .00 .00 | .00 .00 |
| 10/16/2014 | REGULAR PAYMENT | 1,453.01 | 10/2014 | 301.21 183,988.07 | 691.08 | 460.72 487.23 | .00 | .00 | .00 .00 | .00 .00 |
| 11/06/2014 | FHA MIP PMT | -107.55 | 10/2014 | .00 183,988.07 | .00 | -107.55 379.68 | .00 | .00 | .00 .00 | .00 .00 |
| 11/14/2014 | REGULAR PAYMENT | 1,453.01 | 11/2014 | 302.33 183,685.74 | 689.96 | 460.72 840.40 | .00 | .00 | .00 .00 | .00 .00 |
| 12/04/2014 | FHA MIP PMT | -107.55 | 11/2014 | .00 183,685.74 | .00 | -107.55 732.85 | .00 | .00 | .00 .00 | .00 .00 |
| 12/15/2014 | REGULAR PAYMENT | 1,453.01 | 12/2014 | 303.47 183,382.27 | 688.82 | 460.72 1,193.57 | .00 | .00 | .00 .00 | .00 .00 |
| 12/19/2014 | MISC. POSTING | .10 | 12/2014 | .10 183,382.17 | .00 | .00 1,193.57 | .00 | .00 | .00 .00 | .00 .00 |



Page 17

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/07/2015 | FHA MIP PMT | -107.55 | 12/2014 | .00 / 183,382.17 | .00 | -107.55 / 1,086.02 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/16/2015 | REGULAR PAYMENT | 1,453.01 | 01/2015 | 304.61 / 183,077.56 | 687.68 | 460.72 / 1,546.74 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/05/2015 | FHA MIP PMT | -107.55 | 01/2015 | .00 / 183,077.56 | .00 | -107.55 / 1,439.19 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/17/2015 | REGULAR PAYMENT | 1,453.01 | 02/2015 | 305.75 / 182,771.81 | 686.54 | 460.72 / 1,899.91 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/17/2015 | MISC. POSTING | .10 | 02/2015 | .10 / 182,771.71 | .00 | .00 / 1,899.91 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/05/2015 | FHA MIP PMT | -107.55 | 02/2015 | .00 / 182,771.71 | .00 | -107.55 / 1,792.36 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/13/2015 | REGULAR PAYMENT | 1,453.01 | 03/2015 | 306.90 / 182,464.81 | 685.39 | 460.72 / 2,253.08 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/06/2015 | FHA MIP PMT | -107.55 | 03/2015 | .00 / 182,464.81 | .00 | -107.55 / 2,145.53 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/15/2015 | REGULAR PAYMENT | 1,496.90 | 04/2015 | 308.05 / 182,156.76 | 684.24 | 504.61 / 2,650.14 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/28/2015 | HAZARD INS PMT | -1,279.00 | 04/2015 | .00 / 182,156.76 | .00 | -1,279.00 / 1,371.14 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/06/2015 | FHA MIP PMT | -107.55 | 04/2015 | .00 / 182,156.76 | .00 | -107.55 / 1,263.59 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/13/2015 | REGULAR PAYMENT | 1,496.90 | 05/2015 | 309.20 / 181,847.56 | 683.09 | 504.61 / 1,768.20 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/04/2015 | FHA MIP PMT | -107.55 | 05/2015 | .00 / 181,847.56 | .00 | -107.55 / 1,660.65 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/10/2015 | REGULAR PAYMENT | 1,496.90 | 06/2015 | 310.36 / 181,537.20 | 681.93 | 504.61 / 2,165.26 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/06/2015 | FHA MIP PMT | -105.40 | 06/2015 | .00 / 181,537.20 | .00 | -105.40 / 2,059.86 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/06/2015 | FHA MIP PMT | -105.40 | 06/2015 | .00 / 181,537.20 | .00 | -105.40 / 1,954.46 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/13/2015 | REGULAR PAYMENT | 1,496.90 | 07/2015 | 311.53 / 181,225.67 | 680.76 | 504.61 / 2,459.07 | .00 | .00 | .00 / .00 | .00 / .00 |



Page 18

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/13/2015 | REGULAR PAYMENT | 1,496.90 | 08/2015 | 312.69 180,912.98 | 679.60 | 504.61 2,963.68 | .00 | .00 | .00 .00 | .00 .00 |
| 09/04/2015 | FHA MIP PMT | -105.40 | 08/2015 | .00 180,912.98 | .00 | -105.40 2,858.28 | .00 | .00 | .00 .00 | .00 .00 |
| 09/15/2015 | REGULAR PAYMENT | 1,496.90 | 09/2015 | 313.87 180,599.11 | 678.42 | 504.61 3,362.89 | .00 | .00 | .00 .00 | .00 .00 |
| 10/02/2015 | CITY TAX PMT | -1,237.77 | 09/2015 | .00 180,599.11 | .00 | -1,237.77 2,125.12 | .00 | .00 | .00 .00 | .00 .00 |
| 10/06/2015 | FHA MIP PMT | -105.40 | 09/2015 | .00 180,599.11 | .00 | -105.40 2,019.72 | .00 | .00 | .00 .00 | .00 .00 |
| 10/23/2015 | REGULAR PAYMENT | 1,496.90 | 10/2015 | 315.04 180,284.07 | 677.25 | 504.61 2,524.33 | .00 | .00 | .00 .00 | .00 .00 |
| 10/23/2015 | COUNTY TAX PMT | -2,189.88 | 10/2015 | .00 180,284.07 | .00 | -2,189.88 334.45 | .00 | .00 | .00 .00 | .00 .00 |
| 11/05/2015 | FHA MIP PMT | -105.40 | 10/2015 | .00 180,284.07 | .00 | -105.40 229.05 | .00 | .00 | .00 .00 | .00 .00 |
| 11/20/2015 | REGULAR PAYMENT | 1,496.90 | 11/2015 | 316.22 179,967.85 | 676.07 | 504.61 733.66 | .00 | .00 | .00 .00 | .00 .00 |
| 12/04/2015 | FHA MIP PMT | -105.40 | 11/2015 | .00 179,967.85 | .00 | -105.40 628.26 | .00 | .00 | .00 .00 | .00 .00 |
| 12/18/2015 | REGULAR PAYMENT | 1,496.90 | 12/2015 | 317.41 179,650.44 | 674.88 | 504.61 1,132.87 | .00 | .00 | .00 .00 | .00 .00 |
| 01/07/2016 | FHA MIP PMT | -105.40 | 12/2015 | .00 179,650.44 | .00 | -105.40 1,027.47 | .00 | .00 | .00 .00 | .00 .00 |
| 01/15/2016 | REGULAR PAYMENT | 1,496.90 | 01/2016 | 318.60 179,331.84 | 673.69 | 504.61 1,532.08 | .00 | .00 | .00 .00 | .00 .00 |
| 02/04/2016 | FHA MIP PMT | -105.40 | 01/2016 | .00 179,331.84 | .00 | -105.40 1,426.68 | .00 | .00 | .00 .00 | .00 .00 |
| 02/24/2016 | REGULAR PAYMENT | 1,496.90 | 02/2016 | 319.80 179,012.04 | 672.49 | 504.61 1,931.29 | .00 | .00 | .00 .00 | .00 .00 |
| 03/04/2016 | FHA MIP PMT | -105.40 | 02/2016 | .00 179,012.04 | .00 | -105.40 1,825.89 | .00 | .00 | .00 .00 | .00 .00 |
| 04/01/2016 | REGULAR PAYMENT | 1,496.90 | 03/2016 | 320.99 178,691.05 | 671.30 | 504.61 2,330.50 | .00 | .00 | .00 .00 | .00 .00 |



| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/06/2016 | FHA MIP PMT | -105.40 | 03/2016 | .00 178,691.05 | .00 | -105.40 2,226.10 | .00 | .00 | .00 .00 | .00 .00 |
| 04/26/2016 | HAZARD INS PMT | -1,338.00 | 03/2016 | .00 178,691.05 | .00 | -1,338.00 887.10 | .00 | .00 | .00 .00 | .00 .00 |
| 04/29/2016 | REGULAR PAYMENT | 1,524.24 | 04/2016 | 322.20 178,368.85 | 670.09 | 531.95 1,419.05 | .00 | .00 | .00 .00 | .00 .00 |
| 05/05/2016 | FHA MIP PMT | -105.40 | 04/2016 | .00 178,368.85 | .00 | -105.40 1,313.65 | .00 | .00 | .00 .00 | .00 .00 |
| 06/06/2016 | FHA MIP PMT | -105.40 | 04/2016 | .00 178,368.85 | .00 | -105.40 1,208.25 | .00 | .00 | .00 .00 | .00 .00 |
| 06/24/2016 | REGULAR PAYMENT | 1,524.24 | 05/2016 | 323.41 178,045.44 | 668.88 | 531.95 1,740.20 | .00 | .00 | .00 .00 | .00 .00 |
| 07/07/2016 | FHA MIP PMT | -103.12 | 05/2016 | .00 178,045.44 | .00 | -103.12 1,637.08 | .00 | .00 | .00 .00 | .00 .00 |
| 08/04/2016 | FHA MIP PMT | -103.12 | 05/2016 | .00 178,045.44 | .00 | -103.12 1,533.96 | .00 | .00 | .00 .00 | .00 .00 |
| 08/29/2016 | MISC. POSTING | 381.06 | 05/2016 | .00 178,045.44 | .00 | .00 1,533.96 | .00 | .00 | .00 .00 | 381.06 381.06 |
| 09/07/2016 | FHA MIP PMT | -103.12 | 05/2016 | .00 178,045.44 | .00 | -103.12 1,430.84 | .00 | .00 | .00 .00 | .00 381.06 |
| 09/28/2016 | MISC. POSTING | 381.06 | 05/2016 | .00 178,045.44 | .00 | .00 1,430.84 | .00 | .00 | .00 .00 | 381.06 762.12 |
| 10/05/2016 | FHA MIP PMT | -103.12 | 05/2016 | .00 178,045.44 | .00 | -103.12 1,327.72 | .00 | .00 | .00 .00 | .00 762.12 |
| 10/28/2016 | MISC. POSTING | 381.06 | 05/2016 | .00 178,045.44 | .00 | .00 1,327.72 | .00 | .00 | .00 .00 | 381.06 1,143.18 |
| 11/04/2016 | FHA MIP PMT | -206.24 | 05/2016 | .00 178,045.44 | .00 | -206.24 1,121.48 | .00 | .00 | .00 .00 | .00 1,143.18 |
| 11/09/2016 | CITY TAX PMT | -1,406.93 | 05/2016 | .00 178,045.44 | .00 | -1,406.93 -285.45 | .00 | .00 | .00 .00 | .00 1,143.18 |
| 11/09/2016 | COUNTY TAX PMT | -2,185.46 | 05/2016 | .00 178,045.44 | .00 | -2,185.46 -2,470.91 | .00 | .00 | .00 .00 | .00 1,143.18 |
| 12/02/2016 | MISC. POSTING | 381.06 | 05/2016 | .00 178,045.44 | .00 | .00 -2,470.91 | .00 | .00 | .00 .00 | 381.06 1,524.24 |



Page 20

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/05/2016 | MISC. POSTING | -1,524.24 | 05/2016 | .00 178,045.44 | .00 | .00 -2,470.91 | .00 | .00 | .00 .00 | -1,524.24 .00 |
| 12/05/2016 | REGULAR PAYMENT | 1,524.24 | 06/2016 | 324.62 177,720.82 | 667.67 | 531.95 -1,938.96 | .00 | .00 | .00 .00 | .00 .00 |
| 12/30/2016 | MISC. POSTING | 381.06 | 06/2016 | .00 177,720.82 | .00 | .00 -1,938.96 | .00 | .00 | .00 .00 | 381.06 381.06 |
| 01/06/2017 | FHA MIP PMT | -103.12 | 06/2016 | .00 177,720.82 | .00 | -103.12 -2,042.08 | .00 | .00 | .00 .00 | .00 381.06 |
| 01/31/2017 | MISC. POSTING | 381.06 | 06/2016 | .00 177,720.82 | .00 | .00 -2,042.08 | .00 | .00 | .00 .00 | 381.06 762.12 |
| 02/06/2017 | FHA MIP PMT | -103.12 | 06/2016 | .00 177,720.82 | .00 | -103.12 -2,145.20 | .00 | .00 | .00 .00 | .00 762.12 |
| 03/02/2017 | MISC. POSTING | 381.06 | 06/2016 | .00 177,720.82 | .00 | .00 -2,145.20 | .00 | .00 | .00 .00 | 381.06 1,143.18 |
| 03/06/2017 | FHA MIP PMT | -103.12 | 06/2016 | .00 177,720.82 | .00 | -103.12 -2,248.32 | .00 | .00 | .00 .00 | .00 1,143.18 |
| 03/31/2017 | MISC. POSTING | 381.06 | 06/2016 | .00 177,720.82 | .00 | .00 -2,248.32 | .00 | .00 | .00 .00 | 381.06 1,524.24 |
| 04/03/2017 | MISC. POSTING | -1,524.24 | 06/2016 | .00 177,720.82 | .00 | .00 -2,248.32 | .00 | .00 | .00 .00 | -1,524.24 .00 |
| 04/03/2017 | REGULAR PAYMENT | 1,524.24 | 07/2016 | 325.84 177,394.98 | 666.45 | 531.95 -1,716.37 | .00 | .00 | .00 .00 | .00 .00 |
| 04/06/2017 | FHA MIP PMT | -103.12 | 07/2016 | .00 177,394.98 | .00 | -103.12 -1,819.49 | .00 | .00 | .00 .00 | .00 .00 |
| 04/25/2017 | HAZARD INS PMT | -1,570.00 | 07/2016 | .00 177,394.98 | .00 | -1,570.00 -3,389.49 | .00 | .00 | .00 .00 | .00 .00 |
| 04/28/2017 | MISC. POSTING | 381.06 | 07/2016 | .00 177,394.98 | .00 | .00 -3,389.49 | .00 | .00 | .00 .00 | 381.06 381.06 |
| 05/04/2017 | FHA MIP PMT | -103.12 | 07/2016 | .00 177,394.98 | .00 | -103.12 -3,492.61 | .00 | .00 | .00 .00 | .00 381.06 |
| 05/25/2017 | MISC. POSTING | 381.06 | 07/2016 | .00 177,394.98 | .00 | .00 -3,492.61 | .00 | .00 | .00 .00 | 381.06 762.12 |
| 06/06/2017 | FHA MIP PMT | -103.12 | 07/2016 | .00 177,394.98 | .00 | -103.12 -3,595.73 | .00 | .00 | .00 .00 | .00 762.12 |

**Bank of America** 〉〉〉

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/29/2017 | MISC. POSTING | 381.06 | 07/2016 | .00<br>177,394.98 | .00 | .00<br>-3,595.73 | .00 | .00 | .00<br>.00 | 381.06<br>1,143.18 |

## Fee Transaction Activity (06/2008 - 06/2017)

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 06/22/2010 | Clear Partial Funds | .00 | 998.86 |
| 07/14/2010 | Clear Partial Funds | .00 | 950.00 |
| 07/21/2010 | Clear Partial Funds | .00 | 1,023.86 |
| 08/09/2010 | Clear Partial Funds - Reversal | .00 | -998.86 |
| 08/09/2010 | Clear Partial Funds - Reversal | .00 | -950.00 |
| 08/09/2010 | Clear Partial Funds - Reversal | .00 | -1,023.86 |
| 10/14/2011 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 10/14/2011 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 11/14/2011 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 11/14/2011 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 04/13/2012 | Mortgage Pay Fee-Phone | 20.00 | .00 |
| 04/13/2012 | Mortgage Pay Fee-Phone | .00 | 20.00 |
| 04/26/2013 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 04/26/2013 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 08/30/2013 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 08/30/2013 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 09/27/2013 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 09/27/2013 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 01/03/2014 | Mortgage Pay Fee-Phone | 15.00 | .00 |

**Bank of America**

Page 22

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 01/03/2014 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 08/15/2014 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 08/15/2014 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 01/16/2015 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 01/16/2015 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 03/13/2015 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 03/13/2015 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 08/13/2015 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 08/13/2015 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 10/23/2015 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 10/23/2015 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 11/20/2015 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 11/20/2015 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 12/18/2015 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 12/18/2015 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 01/15/2016 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 01/15/2016 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 04/01/2016 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 04/01/2016 | Mortgage Pay Fee-Phone | .00 | 15.00 |
| 04/29/2016 | Short Pmt Advance - Interest | 27.34 | .00 |
| 06/24/2016 | Mortgage Pay Fee-Phone | 15.00 | .00 |
| 06/24/2016 | Mortgage Pay Fee-Phone | .00 | 15.00 |

# Mark A. Richards'
# Bank of America
## Payment History as of:
## October 26th, 2019

### Debtor's EXHIBIT 'F'

| Date: | Amount: |
|---|---|
| 3/15/2011 | $2,177.00 |
| 4/8/2011 | $2,167.00 |
| 5/2/2011 | $2,166.39 |
| 6/10/2011 | $2,166.39 |
| 7/11/2011 | $2,166.39 |
| 8/9/2011 | $2,166.39 |
| 9/12/2011 | $2,207.60 |
| 10/14/2011 | $2,207.60 |
| 11/14/2011 | $2,207.60 |
| 12/14/2011 | $2,207.60 |
| 1/12/2012 | $2,207.60 |
| 2/14/2012 | $2,207.60 |
| 3/16/2012 | $2,207.60 |
| Apr-12 | |
| 4/27/2012 | $1,433.59 |
| 5/25/2012 | $1,433.59 |
| 6/27/2012 | $1,433.59 |
| 7/27/2012 | $1,433.59 |
| 8/31/2012 | $1,433.59 |
| 9/28/2012 | $1,433.59 |
| 10/30/2012 | $1,433.59 |
| 11/26/2012 | $1,433.59 |
| 12/27/2012 | $1,433.59 |
| 1/30/2013 | |
| 1/30/2013 | |
| 1/30/2013 | |
| 1/30/2013 | |
| 1/30/2013 | |
| 1/30/2013 | |
| 2/1/2013 | |
| 3/5/2013 | |
| 3/29/2013 | $1,475.74 |
| 4/26/2013 | $1,475.74 |

**Page 1 of 2**

| | |
|---|---|
| 5/29/2013 | $1,475.74 |
| 6/26/2013 | $1,475.74 |
| 7/29/2013 | $1,475.74 |
| 8/30/2013 | $1,475.74 |
| 9/27/2013 | $1,475.74 |
| 10/29/2013 | $1,475.74 |
| 12/4/2013 | $1,475.74 |
| 1/3/2014 | $1,475.74 |
| 2/14/2014 | $1,475.74 |
| 3/14/2014 | $1,475.74 |
| 4/15/2014 | $1,453.01 |
| 5/13/2014 | $1,453.01 |
| 6/11/2014 | $1,453.01 |
| 7/9/2014 | $1,453.01 |
| 8/15/2014 | $1,453.01 |
| 9/16/2014 | $1,453.01 |
| 10/16/2014 | $1,453.01 |
| 11/14/2014 | $1,453.01 |
| 12/15/2014 | $1,453.01 |
| 1/16/2015 | $1,453.01 |
| 2/17/2015 | $1,453.01 |
| 3/13/2015 | $1,453.01 |
| 4/15/2019 | $1,496.90 |
| 5/13/2015 | $1,496.90 |
| 6/10/2015 | $1,496.90 |
| 8/13/2015 | $1,496.90 |
| 8/13/2015 | $1,496.90 |
| 9/15/2015 | $1,496.90 |
| 10/23/2015 | $1,496.90 |
| 11/20/2015 | $1,496.90 |
| 12/18/2015 | $1,496.90 |
| 1/15/2016 | $1,496.90 |
| 2/24/2016 | $1,496.90 |
| 4/1/2016 | $1,496.90 |
| 4/29/2016 | $1,524.24 |
| 6/24/2016 | $1,524.24 |
| 12/5/2016 | $1,524.24 |
| 4/3/2017 | $1,524.24 |

**$100,569.83**

Page 2 of 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

*In re: Richards, Debtor*, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "H"

Attached hereto



**CARRINGTON**

MORTGAGE SERVICES, LLC

P.O. Box 5001
Westfield, IN 46074

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
PERMIT NO. 422

0019082   .01 A3 0 409 **AUTO  T1 0 9271 30094 583361  -C01-P19101-I
MARK A RICHARDS
1861 WINDSOR CREEK DR SW
CONYERS GA 30094-5833





**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 5001
Westfield, IN 46074



0019082    01 A6 0.409 **AUTO  T1 0 9271 30094-88336Y  -C01-P19101-I
MARK A RICHARDS
1861 WINDSOR CREEK DR SW
CONYERS GA 30094-5893

**Property Address:**
1861 WINDSOR CREEK DR SW
CONYERS, GA 30094

ıılʲ|lˡ|lʲ|lˡ|ııˡ|lˡˡˡlᵖʲlˡ|ʲ|ˡˡˡ|lᵈⁱ|l|ˡˡˡˡⁱlˡˡᵖ|ᵗ|ˡᵖˡ.

Loan Number: 4000406704

07/18/2019

Dear Mortgagor(s):

Our records do not show receipt of your 07/01/2019 payment in the amount of $1,504.35, and as of 07/16/2019, a late charge in the amount of $60.17 has been assessed. Your total payment amount due is $1,564.52.

As required by law, we may report information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Please let us help you prevent this situation from becoming more serious by calling us, toll-free, at (800) 561-4567 or toll-free TDD number at 1-866-427-8304. You can reach us Monday through Friday 8:00 a.m. to 8:00 p.m. Eastern Time.

| **Overnight Mail** | **Western Union** | **MoneyGram** |
| Carrington Mortgage Services, LLC | Quick Collect (any location) | Receive Code – 7998 |
| Cashiering Dept. 2-270 | Code City - CARRINGTONMS | |
| 1600 South Douglass Road, Suites 110 & 200-A | Code State - CA | |
| Anaheim, CA 92806 | | |

We want to help you keep your home and avoid foreclosure. Carrington Mortgage offers several foreclosure prevention alternatives that may be available to you in order to avoid foreclosure. If you are interested in being evaluated for any of the foreclosure prevention alternatives, you must contact us and submit a complete application package which consists of a Request for Mortgage Assistance (RMA) form (including all necessary certifications), an IRS Form 4506T-EZ and documentary evidence of all income (see attached list of required documents). You may obtain the RMA form and the IRS Form 4506T-EZ by visiting our website at https://carringtonms.com. However, you must take the first step by contacting Carrington Mortgage, toll free, at (800) 561-4567, Monday through Friday 8:00 a.m. to 8:00 p.m. Eastern Time. You may also contact us by one of the following means, but be sure to include the information listed above:

- Carrington Mortgage Services, LLC
  P.O. Box 3010, Anaheim, CA 92803
- Website: https://carringtonms.com
- Fax: 1-877-CMS-1331  1.877.267.1331



Housing counseling services are available free of charge through the U.S. Department of Housing and Urban Development (HUD) Housing Counseling Program. If you would like to contact a HUD-approved housing counseling agency to find out other options you may have to avoid foreclosure, please call HUD's toll free number at 1-800-569-4287 or toll-free TDD number at 1-800-877-8339. You can also visit HUD's website at **http://www.hud.gov/foreclosure/index.cfm**

Sincerely,

Carrington Mortgage Services, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_**In re: Richards, Debtor**_, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "I"

Attached hereto



**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

P.O. Box 5001
Westfield, IN 46074

9214 8901 3536 2827 0510 51

0001988          01 AB 0.409   **AUTO   T3 0 9341 3009-58336I   1 F86-588-3I   CRR-P01993-I

MARK A RICHARDS
1861 WINDSOR CREEK DR SW
CONYERS GA 30094-5853

CERTIFIED MAIL

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
PERMIT NO. 422

EXHIBIT
H



**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 5001
Westfield, IN 46074



9214 8901 3536 2827 0510 51

0001988   01 AB 0.409 **AUTO   T2 0 9341 30094-5833S1   -C06-P01988-I
MARK A RICHARDS
1861 WINDSOR CREEK DR SW
CONYERS GA 30094-5833



**Property Address:**
1861 WINDSOR CREEK DR SW
CONYERS, GA 30094

Loan Number: 4000406704

10/08/2019

## NOTICE OF INTENT TO FORECLOSE

Dear Mortgagor(s):

The above referenced loan is in default because the monthly payment(s) due on and after 09/01/2019 have not been received. The amount required to cure the delinquency, as of the date of this letter, is $3,068.87 less $0.00, monies held in a separate suspense account.

SUBSEQUENT PAYMENTS (INCLUDING PRINCIPAL AND INTEREST, AND, IF APPLICABLE, TAXES, INSURANCE AND OTHER ESCROW ITEMS), AS WELL AS, LATE CHARGES, AND OTHER FEES WILL BE ADDED TO THE ABOVE STATED REINSTATEMENT AMOUNT AS THEY ARE ASSESSED.

Please remit the total amount due in CERTIFIED FUNDS, utilizing one of the following payment resources:

| **Overnight Mail** | **Western Union**[1] | **MoneyGram**[1] |
|---|---|---|
| Carrington Mortgage Services, LLC | Quick Collect (any location) | Receive Code - 7998 |
| Cashiering Dept. 2-270 | Code City - CARRINGTONMS | |
| 1600 South Douglass Road, Suites 110 & 200-A | Code State - CA | |
| Anaheim, CA 92806 | | |

[1] You will pay a fee using this method of payment.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, PLEASE CONTACT CARRINGTON MORTGAGE SERVICES, LLC TO DISCUSS HOME RETENTION ALTERNATIVES TO AVOID FORECLOSURE AT (800) 561-4567 OR BY MAIL AT 1600 SOUTH DOUGLASS ROAD, SUITES 110 & 200-A, ANAHEIM, CA 92806. YOU MAY ALSO CONTACT THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) HOTLINE NUMBER AT (800) 569-4287 OR YOU CAN VISIT THEIR WEBSITE AT http://www.hud.gov/foreclosure/index.cfm  TO FIND OUT OTHER OPTIONS YOU MAY HAVE TO AVOID FORECLOSURE.

Failure to cure the delinquency within 30 days of the date of this letter may result in acceleration of the sums secured by the Deed of Trust or Mortgage, and sale of property.

You have the right to reinstate your loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.



Should you have any questions, please contact our office at (800) 561-4567 Monday through Friday 8:00 a.m. to 8:00 p.m. Eastern Time.

Sincerely,

Loan Servicing Department
Carrington Mortgage Services

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_In re: Richards, Debtor_, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "J"

Attached hereto



Presorted First Class
US Postage PAID
Indianapolis IN
Permit 9095

CARRINGTON
MORTGAGE SERVICES, LLC
P.O. Box 5001
Westfield, IN 46074

To:  MARK A RICHARDS
     1861 WINDSOR CREEK DR SW
     CONYERS

4 1#EN#P1 30094

EXHIBIT
"J"



**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

PO331

### PAYOFF STATEMENT

10/03/19

To:    MARK A RICHARDS
1861 WINDSOR CREEK DR SW
CONYERS        GA 30094

Loan Number:        4000406704
FHA Case Number:    FR1053768325703
Re: Mortgagor:      MARK A RICHARDS
Co-Mortgagor:

Property:    1861 WINDSOR CREEK DR SW
CONYERS        GA 30094

The figures in this statement are based on the payoff/closing date 11/01/19 provided to us.
These figures are good through 11/01/19 subject to the conditions herein.
This loan is due for the 09/01/19 payment.

| | |
|---|---|
| The current total unpaid principal balance is: | $187136.68 |
| Interest at 3.87500: | $1812.90 |
| Principal & Interest Advance: | $.00 |
| Recording Cost: | $0.00 |
| Other Unpaid Expenses: | $0.00 |
| Recon/Release Cost: | $0.00 |
| Deferred Pursuant to Loan Modification: | $4595.82 |
| Late charges: | $120.34 |
| PMI/MI Premium Due: | $286.23 |
| Escrow Impound Shortage: | $0.00 |
| Escrow Credit: | $-286.23 |
| Prepayment Penalty: | $0.00 |
| Suspense Balance: | $0.00 |
| **TOTAL AMOUNT TO PAY LOAN IN FULL** | **$193665.74** |

Funds received after 11/01/19 will require an additional $604.30 monthly interest.

**Here is what you'll need to do before payoff:**

PO331                                                                              Page 1



**CARRINGTON**
MORTGAGE SERVICES, LLC

P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

- Continue making your monthly payments until you send us the amount needed to pay off your mortgage.
- If you are enrolled in our automatic payment service, please cancel it via carringtonhomeloans.com or call us at 800-561-4567.
- If you've been paying through another bill payment service, you'll need to cancel your payments after your mortgage has been paid off. Work with your provider in advance so the payment won't be automatically sent after your loan is paid off.

**Send your funds to pay off your mortgage using one of these options:**

| Wire transfer (fastest option)<br>For same day processing, we must receive full payoff amount before 2:00 P.M. EST. | Certified funds (cashier's check or money orders) by overnight or regular mail:<br>Be sure to write your Carrington loan number on the check and include your name and property address. |
|---|---|
| Include the following information with your wire transfer:<br>JPMorgan Chase Bank, N.A.<br>ABA#021000021<br>Account# 758673552<br>Your name<br>Your property address<br>Loan number | Please remit to the address below:<br>ATTENTION: CASHIERING<br>1600 South Douglass Road Suite 200A<br>Anaheim, CA 92806<br>Failure to send checks to the above address may result in the accrual of additional interest. |

Note: If a HUD partial claim was completed on this loan, please contact HUD National Servicing center at (877)622-8525, option3 to obtain a payoff statement for a partial claim.

Issuance of this statement does not suspend the contract requirement to make the mortgage payments when due. A late charge of $60.17 will be assessed 15 days after a current payment is due and should be added to the payoff total if received after that time.

Should you have any questions regarding this payoff statement notice, please contact Customer Service at 800-561-4567, Monday Thru Friday 8:00 AM to 8:00 PM, Eastern Standard Time.

**Important information about your payoff**



P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

The payoff amount is subject to our final verification once we receive the payoff funds. Regardless of the "good through" date on Page 1, if the loan is in default-related proceedings, including, but not limited to, foreclosure sale, such proceedings will continue, and all fees and costs incurred after this payoff quote is issued will continue to be assessed until the loan is paid in full. If the payoff funds received are insufficient to pay off the account in full for any reason, including, but limited to, error in calculation, NSF, or additional escrow disbursements and/or adjustments, CMS reserves the right to decline to pay the account in full. In addition, any and all accrued interest will be due at the time of payoff.

<u>Notice to borrowers with adjustable rate mortgages:</u> The interest rate provided on the payoff statement represents the interest rate in effect on your account at the time the payoff statement was generated. Payoff funds received may not be applied at this interest rate if the interest rate subsequently changed.

### FHA-Insured Loan Payoff Procedure Disclosure:

<u>Mortgages Insured on or after August 2, 1985, and Closed Before January 21, 2015:</u>

You may prepay your mortgage at any time without penalty. However, in order to avoid the accrual of interest on your loan after the date of prepayment, the prepayment must be received on the installment due date (generally the first day of the month). Otherwise, you may be required to pay interest on the amount prepaid through the end of the month.

NOTE: Because your loan provides for the collection of interest through the end of the calendar month in which your prepayment is received, it is to your advantage to ensure that the prepayment reaches us as close to the end of the month as possible, but no later than the first work day of the following month.

### Mortgages Closed on or After January 21, 2015

You may prepay your mortgage at any time without penalty. You will only be required to pay interest through the date the prepayment is made.

### Short Payoff

If the payoff funds are insufficient to pay the total amount owed to pay off this loan, funds in the escrow balance may be used to cover the short payoff. Written authorization from you is required to apply positive escrow balance to the payoff amount. If the escrow balance is insufficient to pay off the total owed, we will return the payoff funds and you will need to order a new quote. For accounts secured by property in the state of West Virginia: If the negotiable instrument is for an amount less than what is required to pay the account in full, the issuer will be contacted prior to the application of the instrument to the account.

### FHA Homeowners Fact Sheet



P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

**Who may be eligible for an FHA refund or share?**

**Premium Refund:** You may be eligible for a refund of a portion of paid FHA mortgage insurance premium if you:

> ➤ acquired your loan after September 1, 1983,
> ➤ paid an upfront mortgage insurance premium at closing, and
> ➤ did not default on your mortgage payments.

Review your settlement papers or check with your mortgage company to determine if you paid an upfront premium.

**Distributive Share:** You may be eligible for a share of any excess earnings from the Mutual Mortgage Insurance Fund if you:

> ➤ originated your loan before September 1, 1983,
> ➤ paid on your loan for more than seven years, and
> ➤ had your FHA insurance terminated before November 5, 1990.

**Exceptions:**

> ➤ **Assumptions:** When an FHA-insured loan is assumed, the insurance remains in force (the seller receives no refund). The owner(s) of the property at the time the insurance is terminated is entitled to any refund,
> ➤ **FHA to FHA Refinances:** When an FHA loan is refinanced, the refund from the old premium may be applied toward the up-front premium required for the new loan.
> ➤ **Claim:** When a mortgage company submits a claim to HUD for insurance benefits, no refund is due the homeowner.
> ➤ **Statute of Limitations:** HUD is not liable for a distributive share that remains unclaimed 6 years from the date notification was first sent to the last known address of the mortgagor

**IMPORTANT:** The rules governing eligibility for premium refunds and distributive share payments are based on the financial status of the FHA insurance fund and are subject to change.

**How are refunds determined?**

For any FHA-insured loans with a closing date prior to January 1, 2001, and endorsed before December 8, 2004, no refund is due the homeowner after the end of the seventh year of insurance. For any FHA-insured loans closed on or after January 1, 2001 and endorsed before December 8, 2004, no refund is due the homeowner after the fifth year of insurance. For FHA-insured loans endorsed on or after December 8, 2004, no refund is due the homeowner unless they refinanced to a new FHA-insured loan, and no refund is due these homeowners after the third year of insurance.

**How are refunds processed?**

PO331



P.O. Box 3489, Anaheim, CA 92803
(800) 561-4567

> Your mortgage company notifies HUD of the termination of the FHA mortgage insurance for your loan.
> If you are eligible for a refund, HUD will either request that the U.S. Department of the Treasury (Treasury) issue a check directly to you or send you an Application for Premium Refund or Distributive Share Payment (form HUD-27050-B) so that you can provide HUD with additional information about your case.
> If you receive a form HUD-27050-B, please read and complete the application carefully, sign it, have it notarized, and return it to HUD along with proof that you were the owner of the property at the time that the insurance was terminated.
> After HUD receives your completed form HUD-27050-B and the necessary supporting documentation, this information will be carefully reviewed. Upon completion of this review, HUD will either request that Treasury issue a check directly to you or request additional information from you.

How to follow up

If you do not receive a check or an application within 45 days after you have paid off your loan, check with your mortgage company to confirm that they have sent HUD a request to terminate the mortgage insurance on your loan. If they confirm that the correct termination information was sent, contact HUD. If you do not receive a refund or any other documentation from HUD within 120 days after the date you mailed your application, contact HUD immediately.

How to contact HUD

> Phone: (800) 697-6967, 9:00 a.m. to 6:00 p.m. Eastern Standard Time, Monday through Friday.
> Mail: U.S. Department of Housing and Urban Development, P.O. Box 44372, Washington, DC 20026-4372.

Note: All inquiries should include your name, your FHA case number, the date that the mortgage was paid-in-full, the property address, and your daytime phone number.

Si usted habla español y tiene dificultad leyendo o hablando ingles,
por favor, llame usted a este number telefonico (800) 697-6967

PO331

Page 5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

*In re: Richards, Debtor*, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "K"

Attached hereto



EXHIBIT "K"



P.O. Box 5001, Westfield, IN 46074
Phone (800) 561-4567 Fax (800)486-5134

June 8, 2018

Mark A Richards
1861 Windsor Creek Dr. SW
Conyers, GA 30094

Loan Number:          4000406704
Property Address:     1861 Windsor Creek Dr. SW
                      Conyers, GA 30094

Dear Mortgagor(s):

This letter is in response to your Written Credit Dispute ("WCD") received in our office on May 10 2018. Carrington Mortgage Services, LLC ("CMS") is committed to customer satisfaction and we would like to address your recent correspondence in regards to CMS reporting the above account to the 3 credit bureaus TransUnion, Experian and Equifax.

CMS acquired the servicing rights of this account on July 11, 2017 from Bank of America.

Our records indicate this account discharged through a Chapter 7 Bankruptcy on July 19, 2011.

Please know the only way for standard credit reporting to continue once a Chapter 7 Bankruptcy has been filed is for a Reaffirmation Agreement to be completed with the lender, which must be filed with the court prior to the discharge. Since the debt was discharged prior to CMS acquiring the account, CMS will not report this account to the credit bureaus per Credit Reporting guidelines.

We trust that we have fully addressed your concerns regarding this matter. However, should you have further questions, please contact us at (800) 561-4567, Monday through Friday 8:00 AM – 8:00 PM EST. You may also contact us in writing at P.O. Box 5001 Westfield IN 46074 or Fax (800)486-5134.

Sincerely,

Kathy Dell
Customer Service Research Department
Carrington Mortgage Services, LLC

Page 1 of 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

*In re: Richards, Debtor*, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "L"

Attached hereto

## MR. MARK A. RICHARDS
### 1861 Windsor Creek Drive, S.W.
### Conyers, Georgia 30094
**(770) 688-4247 (Phone)**
**Email: mcrichards88@gmail.com**

<u>**VIA-U.S. CERTIFIED MAIL**</u>

December 2ND, 2019                                 Loan Number: 4000406704

Bank of America, N.A.
Attn: Loan Servicing Dept.
P.O. Box 31785
Tampa, Florida 33631-3785

Reference:    *In re Richards, Debtor* Civil Action No. 11-51844-WLH (N.D. Ga. 2011)

To Whom It May Concern:

### <u>NOTICE TO CEASE & DESIST AND DEMAND FOR RETURN OF FUNDS</u>

This letter shall serve as notice for you to cease and desist from further collection of my discharged debt in bankruptcy. Your company has been in violation of the bankruptcy Court's discharged injunction for the pass years. I was coerced and force through your company's threats of foreclosure and credit reporting to sign Loan Modification Agreements and a Security Deed that purports to reaffirm the debt in violation of **11 U.S.C. § 524(a)(2)**. See, **Exhibit "A"** attached hereto.

### I. FACTUAL BACKGROUND

On January 24th, 2011, I voluntary filed a petition (Chapter 7). I was represented by Ronica R. Scales of Robert J. Semrad & Associates as my attorneys who appeared in Court on my behalf as the Debtor. See, *In re Richard, Debtor* Civil Action No. 11-51844-WLH (N.D. Ga. 2011). See also **11 U.S.C. § 524(a)(2)**.

On March 3rd, 2011, the Chapter 7 Trustee in the above-styled case, reported that the Trustee was investigating, the possibility of the recovery of any assets in my case for the benefit of any creditor. No party at interest, in my case filed a request for an order of dismissal pursuant to **11 U.S.C. § 521(i)(2)**.

On July 19th, 2011, the Honorable Wendy L. Hagenau, Bankruptcy's Judge for the United States Bankruptcy's Court for the Northern District of Georgia entered a final order discharge injunction pursuant to **11 U.S.C. § 524**. See, *In re Richard, Debtor* Civil Action No. 11-51844-WLH (N.D. Ga. 2011). After my bankruptcy in 2011 and while under stress, taking medication and the loss of my family business in addition to the terms of my chapter 7 discharged, I have been force by your company to continued to making mortgage payments to Carrington Mortgage in order to stay in my home even after discharge. See, **Exhibit "A"**.



DECEMBER 2ND, 2019
PAGE 2 OF 4
Letter to Bank of America, N.A.

On June 24, 2015, I was told by Bank of America's officers, agents, servants and employees, that I had to repay the discharged debt by completing BOA's application for a loan modification and Security Deed that will reaffirm my prior discharged debt that has been discharged in the U.S. Bankruptcy Court.

On June 24, 2015, Bank of America, N.A. (herein after referred to as "BOA"), did force, trick and mislead me into signing forms and other loan documents reaffirming the debt in clear violation of the Bankruptcy's discharged injunction. They kept threating me and my family with foreclosure and eviction. They used a Security Deed and Loan Modifications' agreements to place liens on my home concerning the same discharged debt. See, **Exhibits "B," "C," & "D"** attached.

I received a discharge from the Bankruptcy's Court. BOA and Carrington had no right to force me into signing these agreements. I signed the agreements under duress, while under tremendous stress. I did it under unreasonable terms and conditions by signing the Security Deed and loan modifications agreements.

I was very vulnerable at that time, I only wanted to keep my family safe, with a roof over their heads. Therefore, I was coerced and pressured by Bank of America and Carrington's officers, agents and employees, into signing the Security Deed over to HUD and the loan modification's mortgage documents that reaffirmed the original discharged debt. BOA and Carrington had complete knowledge of my situation and could have offered me a new mortgage loan based upon the home current market value. BOA had the option to simply pursuit it's foreclosure remedy, without having me reaffirm the discharged debt in violation of Federal law.

## II. BOA's TRANSER SERVICING RIGHTS TO CARRINGTON

On July 11th, 2017, Carrington Mortgage Services, LLC. took over the servicing rights to service my prior mortgage loan, that was clearly discharged in bankruptcy. See, **Exhibit "E"** attached hereto. That Carrington, either directly or indirectly, ratified the illegal and improper collection actions of BOA, by accepting to service a discharged debt and by pursuing collection practices in clear violation of the Bankruptcy's discharged injunction. See, 11 U.S.C. § 524.

From July 11th, 2017 until the date of this letter, Carrington Mortgage Services has been collecting payments from me, concerning my discharged debt in clear violation of the bankruptcy's discharged injunction under **11 U.S.C. § 524.** I have be harassed by BOA and I was coerced and force to pay BOA the discharged debt by signing the loan modification agreements and conveying a Security Deed over to HUD reaffirming the debt all in violation of **11 U.S.C. § 524.**

## III. FRAUD, MISPRESENTATION AND WILLFUL MISCONDUCT

I hereby make a claim of fraud, misrepresentation and willful misconduct against Bank of America, N.A. referred to herein as "BOA" and Carrington

Mortgage Services, LLC.   First, BOA and Carrington both committed fraud against me because they made a representation to me through the officers, agents, servants, employees and attorneys that I had to repay and reaffirm the discharged debt.

Both BOA and Carrington lead me to believe, that the only way I could keep my home, was to pay and reaffirm the debt through a loan modification agreement and to convey a Security Deed over to HUD.  This was false, because BOA could have entered into a new loan mortgage with me and or, it could have allowed me to take out a second mortgage to pay off the lien which BOA and Carrington claim to have on the real property.  Moreover, BOA and Carrington knew or should have known that it could not enter into a loan modification agreement with me and or for me to convey a Security Deed over to HUD when no consideration was paid in violation of the bankruptcy's discharged injunction. See, 11 U.S.C. § 524(c)(d).

BOA and Carrington both made false representations to me, that I had to reaffirm the discharged debt by entering into: (a) loan modification agreements; (b) I convey a Security Deed over to HUD without consideration based upon the prior discharged debt; and (c) that I am required by such agreements to pay the discharged debt in spite of my bankruptcy's discharged. See, **Exhibits "C" & "D"**.

That at the time BOA and Carrington made the false representations to me, both BOA and Carrington knew and or should have known them to be false.  That as a direct and indirect result of BOA and Carrington's false representations to me, I acted upon these false representations by (a) signing loan modification agreements; (b) I convey a Security Deed over to HUD without consideration based upon my prior discharged debt; and (c) I made mortgage payments for years based upon the loan modification agreements concerning the discharged debt in spite of my bankruptcy's discharged.  Therefore, as a direct and indirect result of BOA and Carrington's fraud, false representations and willful misconduct, I have been damaged and have sustain losses. See, **Exhibits "B," "C," & "D"** attached hereto.

The effect of a bankruptcy discharge is specified in **11 U.S.C. § 524**. This section, which is designed to protect a debtor only from in personal liability, specifies in relevant part that a discharge *"operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."* See, **11 U.S.C. § 524(a)(2)**.

The debtor, however, may enter into an agreement with a creditor to reaffirm an otherwise dischargeable debt. The agreement becomes binding only if made in compliance with Section 524(c) and (d). See, *Republic Bank of California, N.A.* v. *Getzoff* (In re Getzoff), 180 B.R. 572, 574 (9th Cir. BAP 1995); *In re Bowling*, 116 B.R. 659, 663 (Bankr.S.D.Ind.1990). Section 524(c) and (d) set out five criteria that must be satisfied to reaffirm a previously discharged debt: (1) the agreement must be made before discharge; (2) the agreement must advise the debtor that the reaffirmation may be rescinded either before discharge or within 60 days after the

DECEMBER 2ND, 2019
PAGE 4 OF 4
Letter to Bank of America, N.A.

agreement is filed with the court, whichever occurs later; (3) the agreement must be
filed with the court; (4) the debtor cannot already have rescinded the agreement
within the proper time frame; and (5) the agreement must be in the best interest of
the debtor. See, 11 U.S.C. § 524(c) and (d); *Getzoff*, 180 B.R. at 574.

## IV. DAMAGES AND LOSSES

As stated herein this letter, I have been damaged by Bank of America, N.A.
and Carrington Mortgage Services, LLC. due to their fraud, misrepresentation and
willful violation of the Bankruptcy's discharge injunction. My losses are not limited
to the following to wit: (1) Loss of money paid directly to BOA and Carrington
Mortgage Services; (2) Loss of Equity in home, because payments made cannot be
used for discharged bankruptcy's debt; (3) Loss of Credit due to erroneous loan
modification agreements and Security Deed to HUD on record with the Clerk of
Superior Court; (4) Loss of New Home and (5) Loss of New Business Opportunity.

## V. DEMAND FOR THE RETURN OF PAYMENTS

In August 2019, I requested payment histories from Bank of America, N.A.
and Carrington Mortgage Services, LLC., during and since my bankruptcy's
discharged. On August 21ST, 2019, I receive a detail accounting as to all payments I
made to Bank of America, N.A. See, **Exhibit "F"** attached hereto.

Based upon Bank of America's own payment history's statement, I made a
total of **$100,569.83** in improper mortgage payments to Bank of America, in
violation of the bankruptcy's discharged injunction. See, **11 U.S.C. § 524**. Since
these payments were in violation of the bankruptcy's discharged injunction, I
hereby make a demand for a full return of these payments, because the payments
was received in direct violation of the bankruptcy's discharged injunction.

Now therefore, within (7) days upon receipt of this letter, I hereby demand
that you return all payments, ($100,569.83) that was paid by me, to your company
according to the payment history you sent me on August 21st, 2019. See, **Exhibit
"F"** attached hereto. Your failure to comply with my request will result in me filing
a motion for contempt of Court concerning the bankruptcy's discharged injunction.

Respectfully yours,

*Mark A. Richards*

Mark A. Richards, Debtor

Attachments

cc:   Johnson, Jones, Watkins & Cooper, P.A.



```
CONYERS
1436 HIGHWAY 138 SE
CONYERS, GA 30013-9998
122046-0380
(800)275-8777
12/02/2019 01:24 PM

Product          Qty  Unit    Price
                      Price
First-Class Mail® 1   $2.20   $2.20
Large Envelope
(Domestic)
(WESTFIELD, IN 46074)
(Weight:0 Lb 9.00 Oz)
(Estimated Delivery Date)
(Thursday 12/05/2019)
Certified
(USPS Certified Mail #)         $3.50
(70181300000204380231)
Return Receipt
(USPS Return Receipt #)         $2.80
(9590940243668190854437)
First-Class Mail® 1   $2.65   $2.65
Large Envelope
(Domestic)
(TAMPA, FL 33631)
(Weight:0 Lb 11.20 Oz)
(Estimated Delivery Date)
(Thursday 12/05/2019)
Certified
(USPS Certified Mail #)         $3.50
(70181300000204380378)
Return Receipt
(USPS Return Receipt #)         $2.80
(9590940249888190854880)

Total:                         $17.45

Cash                    $20.00
Change                  ($2.55)
```

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Preview your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

HELP US SERVE YOU BETTER

TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE

Go to:
https://postalexperience.com/Pos

840-5300-0099-001-00058-03131-02

or scan this code with



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com

OFFICIAL USE

| | | 0380 |
| | | 73 |

Certified Mail Fee   $3.50

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $0.00
☐ Return Receipt (electronic)    $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required       $0.00
☐ Adult Signature Restricted Delivery $0.00

Postage   $2.20

Total Postage and Fees   $8.50          12/02/2019

Sent To   Carrington Mortgage Services,
Street and Apt. No.   Attention: Customer Service,
                      P.O. Box 5001
City, State, ZIP+4®   Westfield, Indiana 46074

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7018 1130 0000 2043 8023


**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com

OFFICIAL USE

| | | 0380 |
| | | 73 |

Certified Mail Fee   $3.50

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $0.00
☐ Return Receipt (electronic)    $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required       $0.00
☐ Adult Signature Restricted Delivery $0.00

Postage   $2.65

Total Postage and Fees   $8.95          12/02/2019

Sent To   Bank of America, N.A.
Street and Apt. No.   P.O. Box 31785
City, State, ZIP+4®   Tampa, Florida 33631

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7018 1130 0000 2043 8378

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

*In re: Richards, Debtor*, CIVIL ACTION FILE No. 11-51844-WLH (N.D. Ga. 2017)

# Debtor's

# EXHIBIT "M"

Attached hereto

**MR. MARK A. RICHARDS**
**1861 Windsor Creek Drive, S.W.**
**Conyers, Georgia 30094**
**(770) 688-4247 (Phone)**
**Email: mcrichards88@gmail.com**

<u>**VIA-U.S. CERTIFIED MAIL**</u>

December 2ND, 2019                                          Loan Number: 4000406704

Carrington Mortgage Services, LLC.
Attention: Customer Service
P.O. Box 5001
Westfield, Indiana 46074

Reference:   *In re Richards, Debtor* Civil Action No. 11-51844-WLH (N.D. Ga. 2011)

To Whom It May Concern:

### <u>NOTICE TO CEASE & DESIST AND DEMAND FOR RETURN OF FUNDS</u>

This letter shall serve as notice for you to cease and desist from further collection of my discharged debt in bankruptcy. Your company has been in violation of the bankruptcy Court's discharged injunction for the pass years. I was coerced and force through your company's threats of foreclosure and credit reporting to sign Loan Modification Agreements and a Security Deed that purports to reaffirm the debt in violation of **11 U.S.C. § 524(a)(2)**. See, **Exhibit "A"** attached hereto.

### I. FACTUAL BACKGROUND

On January 24th, 2011, I voluntary filed a petition (Chapter 7). I was represented by Ronica R. Scales of Robert J. Semrad & Associates as my attorneys who appeared in Court on my behalf as the Debtor. See, *In re Richard, Debtor* Civil Action No. 11-51844-WLH (N.D. Ga. 2011). See, **11 U.S.C. § 524(a)(2)**.

On March 3rd, 2011, the Chapter 7 Trustee in the above-styled case, reported that the Trustee was investigating, the possibility of the recovery of any assets in my case for the benefit of any creditor. No party at interest, in my case filed a request for an order of dismissal pursuant to **11 U.S.C. § 521(i)(2)**.

On July 19th, 2011, the Honorable Wendy L. Hagenau, Bankruptcy's Judge for the United States Bankruptcy's Court for the Northern District of Georgia entered a final order discharge injunction pursuant to **11 U.S.C. § 524**. See, *In re Richard, Debtor* Civil Action No. 11-51844-WLH (N.D. Ga. 2011). After my bankruptcy in 2011 and while under stress, taking medication and the loss of my family business in addition to the terms of my chapter 7 discharged, I have been force by your company to continued to making mortgage payments to Carrington Mortgage in order to stay in my home even after discharge. See, **Exhibit "A"**.



**DECEMBER 2ND, 2019**
**PAGE 2 OF 4**
**Letter to Carrington Mortgage Services, LLC.**

On June 24, 2015, I was told by Bank of America's officers, agents, servants and employees, that I had to repay the discharged debt by completing BOA's application for a loan modification and Security Deed that will reaffirm my prior discharged debt that has been discharged in the U.S. Bankruptcy Court.

On June 24, 2015, Bank of America, N.A. (herein after referred to as "BOA"), did force, trick and mislead me into signing forms and other loan documents reaffirming the debt in clear violation of the Bankruptcy's discharged injunction. They kept threating me and my family with foreclosure and eviction. They used a Security Deed and Loan Modifications' agreements to place liens on my home concerning the same discharged debt. See, **Exhibits "B," "C," & "D"** attached.

I received a discharge from the Bankruptcy's Court. BOA and Carrington had no right to force me into signing these agreements. I signed the agreements under duress, while under tremendous stress. I did it under unreasonable terms and conditions by signing the Security Deed and loan modifications agreements.

I was very vulnerable at that time, I only wanted to keep my family safe, with a roof over their heads. Therefore, I was coerced and pressured by Bank of America and Carrington's officers, agents and employees, into signing the Security Deed over to HUD and the loan modification's mortgage documents that reaffirmed the original discharged debt. BOA and Carrington had complete knowledge of my situation and could have offered me a new mortgage loan based upon the home current market value. BOA had the option to simply pursuit it's foreclosure remedy, without having me reaffirm the discharged debt in violation of Federal law.

## II. BOA's TRANSER SERVICING RIGHTS TO CARRINGTON

On July 11th, 2017, Carrington Mortgage Services, LLC. took over the servicing rights to service my prior mortgage loan, that was clearly discharged in bankruptcy. See, **Exhibit "E"** attached hereto. That Carrington, either directly or indirectly, ratified the illegal and improper collection actions of BOA, by accepting to service a discharged debt and by pursuing collection practices in clear violation of the Bankruptcy's discharged injunction. See, **11 U.S.C. § 524.**

From July 11th, 2017 until the date of this letter, Carrington Mortgage Services has been collecting payments from me, concerning my discharged debt in clear violation of the bankruptcy's discharged injunction under **11 U.S.C. § 524.** I have be harassed by Carrington and I was coerced and force to pay Carrington the discharged debt by signing the loan modification agreements and conveying a Security Deed over to HUD reaffirming the debt all in violation of **11 U.S.C. § 524.**

## III. FRAUD, MISPRESENTATION AND WILLFUL MISCONDUCT

I hereby make a claim of fraud, misrepresentation and willful misconduct against Bank of America, N.A. referred to herein as "BOA" and Carrington

Mortgage Services, LLC.   First, BOA and Carrington both committed fraud against me because they made a representation to me through the officers, agents, servants, employees and attorneys that I had to repay and reaffirm the discharged debt.

Both BOA and Carrington lead me to believe, that the only way I could keep my home, was to pay and reaffirm the debt through a loan modification agreement and to convey a Security Deed over to HUD.  This was false, because BOA could have entered into a new loan mortgage with me and or, it could have allowed me to take out a second mortgage to pay off the lien which BOA and Carrington claim to have on the real property.  Moreover, BOA and Carrington knew or should have known that it could not enter into a loan modification agreement with me and or for me to convey a Security Deed over to HUD when no consideration was paid in violation of the bankruptcy's discharged injunction.  See, 11 U.S.C. § 524(c)(d).

BOA and Carrington both made false representations to me, that I had to reaffirm the discharged debt by entering into: (a) loan modification agreements; (b) I convey a Security Deed over to HUD without consideration based upon the prior discharged debt; and (c) that I am required by such agreements to pay the discharged debt in spite of my bankruptcy's discharged.  See, **Exhibits "C" & "D"**.

That at the time BOA and Carrington made the false representations to me, both BOA and Carrington knew and or should have known them to be false.  That as a direct and indirect result of BOA and Carrington's false representations to me, I acted upon these false representations by (a) signing loan modification agreements; (b) I convey a Security Deed over to HUD without consideration based upon my prior discharged debt; and (c) I made mortgage payments for years based upon the loan modification agreements concerning the discharged debt in spite of my bankruptcy's discharged.  Therefore, as a direct and indirect result of BOA and Carrington's fraud, false representations and willful misconduct, I have been damaged and have sustain losses.  See, **Exhibits "B," "C," & "D"** attached hereto.

The effect of a bankruptcy discharge is specified in 11 U.S.C. § 524.  This section, which is designed to protect a debtor only from in personal liability, specifies in relevant part that a discharge *"operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."* See, 11 U.S.C. § 524(a)(2).

The debtor, however, may enter into an agreement with a creditor to reaffirm an otherwise dischargeable debt. The agreement becomes binding only if made in compliance with Section 524(c) and (d). See, *Republic Bank of California, N.A. v. Getzoff* (In re Getzoff), 180 B.R. 572, 574 (9th Cir. BAP 1995); *In re Bowling,* 116 B.R. 659, 663 (Bankr.S.D.Ind.1990).  Section 524(c) and (d) set out five criteria that must be satisfied to reaffirm a previously discharged debt: (1) the agreement must be made before discharge; (2) the agreement must advise the debtor that the reaffirmation may be rescinded either before discharge or within 60 days after the

**DECEMBER 2ND, 2019**
**PAGE 4 OF 4**
**Letter to Carrington Mortgage Services, LLC.**

agreement is filed with the court, whichever occurs later; (3) the agreement must be filed with the court; (4) the debtor cannot already have rescinded the agreement within the proper time frame; and (5) the agreement must be in the best interest of the debtor. See, **11 U.S.C. § 524(c)** and **(d)**; *Getzoff*, 180 B.R. at 574.

## IV. DAMAGES AND LOSSES

As stated herein this letter, I have been damaged by Bank of America, N.A. and Carrington Mortgage Services, LLC. due to their fraud, misrepresentation and willful violation of the Bankruptcy's discharge injunction. My losses are not limited to the following to wit: (1) Loss of money paid directly to BOA and Carrington Mortgage Services; (2) Loss of Equity in home, because payments made cannot be used for discharged bankruptcy's debt; (3) Loss of Credit due to erroneous loan modification agreements and Security Deed to HUD on record with the Clerk of Superior Court; (4) Loss of New Home and (5) Loss of New Business Opportunity.

## V. DEMAND FOR THE RETURN OF PAYMENTS

In August 2019, I requested payment histories from Bank of America, N.A. and Carrington Mortgage Services, LLC., during and since my bankruptcy's discharged. On August 7th, 2019, I receive a detail accounting as to all payments I made to Carrington Mortgage Services, LLC. See, **Exhibit "F"** attached hereto.

Based upon Carrington's own payment history's statement, I made a total of **$21,345.00** in improper mortgage payments to Carrington, in violation of the bankruptcy's discharged injunction. See, **11 U.S.C. § 524.** Since these payments were in violation of the bankruptcy's discharged injunction, I hereby make a demand for a full return of these payments, because the payments was received in direct violation of the bankruptcy's discharged injunction.

Now therefore, within (7) days upon receipt of this letter, I hereby demand that you return all payments, **($21,345.00)** that was paid by me, to your company according to the payment history you sent me on August 7th, 2019. See, **Exhibit "F"** attached hereto. Your failure to comply with my request will result in me filing a motion for contempt of Court concerning the bankruptcy's discharged injunction.

Respectfully yours,

*Mark A. Richards*

Mark A. Richards, Debtor

Attachments

cc:   Johnson, Jones, Watkins & Cooper, P.A.

CONVERS
1705 HIGHWAY 138 SE
CONVERS, GA 30013-9998
122046-0380
(800) 275-8777
12/02/2019 01:24 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| First-Class Mail® Large Envelope (Domestic) (WESTFIELD, IN 46074) (Weight:0 Lb 9.00 Oz) (Estimated Delivery Date) (Thursday 12/05/2019) Certified (USPS Certified Mail #) (70181130000204380231) Return Receipt (USPS Return Receipt #) (9590940249568819085544437) | 1 | $2.20 | $2.20 |
| | | | $3.50 |
| First-Class Mail® Large Envelope (Domestic) (TAMPA, FL 33631) (Weight:0 Lb 11.20 Oz) (Estimated Delivery Date) (Thursday 12/05/2019) Certified (USPS Certified Mail #) (70181130000204380378) Return Receipt (USPS Return Receipt #) (9590940249568819085544380) | 1 | $2.65 | $2.80 |
| | | | $2.65 |
| | | | $3.50 |
| | | | $2.80 |
| Total: | | | $17.45 |

Cash                          $20.00
Change                       ($2.55)

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Preview Your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

HELP US SERVE YOU BETTER

TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE

Go to:
tps://postalexperience.com/Pos
-5300-0099-001-00058-03131-02

or scan this
you

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com

OFFICIAL USE

Certified Mail Fee    $3.50
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $0.00
☐ Return Receipt (electronic)    $0.00
☐ Certified Mail Restricted Delivery  $0.00
☐ Adult Signature Required       $0.00
☐ Adult Signature Restricted Delivery  $0.00
Postage    $2.20
Total Postage and Fees    $8.50

12/02/2019

Sent To  **Carrington Mortgage Services,**
Street and Apt. No.  **Attention: Customer Service,**
**P.O. Box 5001**
City, State, ZIP+4  **Westfield, Indiana 46074**

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7018 1130 0000 2043 8023

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com

OFFICIAL USE

Certified Mail Fee    $3.50
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $0.00
☐ Return Receipt (electronic)    $0.00
☐ Certified Mail Restricted Delivery  $0.00
☐ Adult Signature Required       $0.00
☐ Adult Signature Restricted Delivery  $0.00
Postage    $2.65
Total Postage and Fees    $8.95

12/02/2019

Sent To  **Bank of America, N.A.**
Street and Apt. No.  **P.O. Box 31785**
City, State, ZIP+4  **Tampa, Florida 33631**

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7018 1130 0000 2043 8378